Aaron W. Baker, OSB #92222
650 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon 97204
Telephone: 503/ 234-8800
Facsimile: 503/ 525-0650
awblaw@earthlink.net

Tara Lawrence
Lawrence Law Office, P.C.
6915 SW Macadam Avenue
Suite 115
Portland, Oregon 97219
Telephone: 503.387.5571
Facsimile: 888.660.7336
tara@taralawrencelaw.com

Of Attorneys for Plaintiff

IN THE UNTIED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LINDA NOONAN,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>GOLDSTAR ESTATE BUYERS<br>CORPORATION,<br><br>　　　　　　　　　　　　Defendant. | Case No. 3:13-cv-00354<br><br>COMPLAINT<br><br>(Breach of Duty; Wrongful Discharge; IIED; Negligence)<br><br>**DEMAND FOR JURY TRIAL** |

Page 1 - COMPLAINT

## Nature of the Action

1.

Plaintiff brings this action for monetary relief, damages, costs, punitive damages and attorney fees to redress injuries done to her by Defendant or officers, employees or agents of said Defendant in violation of her state protected rights.

## Jurisdictional Allegations

2.

The court has jurisdiction over plaintiff's state claims pursuant to 42 U.S.C. § 1332 as the matter in controversy exceeds $75,000 and is between citizens of different States.

## General Factual Allegations

3.

At all material times herein Defendant was a foreign (Minnesota) corporation doing business in Multnomah County, Oregon. At all material times herein Plaintiff was a resident of Multnomah County, Oregon.

4.

At all material times herein, Plaintiff was supervised by Defendant's employees or agents and Plaintiff relied on the actual or apparent authority of supervisors and management.

5.

On or about May 9, 2011 Plaintiff contacted Defendant regarding a job opportunity and spoke with William Ulrich, the presumed owner of the company. On or about May 14, 2011 Plaintiff spoke with Donna Elliot who interviewed Plaintiff over the phone. Ms. Elliot informed Plaintiff she would send her an e-ticket for a flight to Detroit to work her first buying show.

Page 2 - COMPLAINT

6.

On or about May 16, 2011 Plaintiff flew to Detroit Michigan from Portland, Oregon with the ticket purchased by Defendant. Plaintiff arrived at the designated hotel at about 7:00 pm.

7.

At the hotel she met Ulrich and others at the bar. Ulrich ordered vodka drinks for Plaintiff over her protests. Ulrich, Plaintiff and others went to the hotel restaurant and ordered dinner. Ulrich led Plaintiff down a hallway and asked Plaintiff to have sex with him in his room. She refused. Ulrich and Plaintiff went back to the restaurant and Ulrich cancelled the dinner orders.

8.

Later the evening of May 16, 2011 Ulrich contacted Plaintiff and asked her to come to his room for some dinner. When Plaintiff arrived at his room Ulrich was naked in bed with a woman. Ulrich told Plaintiff to have sex with them and Plaintiff refused. Ulrich then told Plaintiff to give him oral sex and Plaintiff refused. Ulrich then threatened to send Plaintiff home the next day and she went back to her room.

9.

Plaintiff reported to work the next morning, May 17, 2011, and worked an entire shift. Ulrich called her after work hours and asked what she was doing. Plaintiff said her phone battery was low and they could talk later. Plaintiff reported to work on May 18, 19, and 20, 2011 and worked her entire shift each day. Plaintiff avoided Ulrich due to his earlier behavior. Plaintiff was told by management she was doing a good job.

Page 3 - COMPLAINT

10.

Plaintiff reported to work May 21, 2011 and worked her entire shift. Ulrich stopped Plaintiff as she was leaving the hotel bar after seeing him and asked why she was leaving so soon. Ulrich called Plaintiff's hotel room about an hour later. She did not answer the call.

11.

Plaintiff reported to work May 22, 2011. At about 11:00 am Elliot told Plaintiff she was being let go. Plaintiff was sent to an airport hotel for the night. At approximately 11:00 pm that night Ulrich called Plaintiff and said Plaintiff could come back to work if she became his girlfriend. Plaintiff declined and she took a flight back to Portland, Oregon the next day.

**First Claim For Relief**

(Breach of Duty of Good Faith and Fair Dealing)

12.

Plaintiff realleges paragraphs 1 through 11.

13.

Plaintiff and Defendant had a contractual relationship which applied to Plaintiff's employment with Defendant. The contractual relationship contains an implied covenant of good faith and fair dealing.

14.

Plaintiff performed all of her obligations under the agreement with Defendant. Defendant unfairly prevented Plaintiff from keeping her job by Ulrich insisting she have sex with him as a condition of her employment.

15.

Plaintiff has been damaged in an amount to be determined at trial.

**Second Claim For Relief**

(Wrongful Discharge)

16.

Plaintiff realleges paragraphs 1 through 15.

17.

Plaintiff pursued her private legal rights that are directly related to her role as an employee and is of important public interest as indicated by law during her employment by making comments and complaints to Defendant including but limited to the following:

    A.    Refusing to have sex with Ulrich;

    B.    Refusing to be Ulrich's "girlfriend."

18.

Plaintiff pursued her public, societal obligations recognized in the clear mandate of existing law during her employment by making comments and complaints to Defendant including but limited to the following:

    A.    Refusing to have sex with Ulrich;

    B.    Refusing to be Ulrich's "girlfriend."

19.

A substantial reason for Plaintiff's discharge was in retaliation for her pursuit of public, societal obligations and/or her pursuit private legal rights.

20.

As a result of Defendant's actions, Plaintiff has incurred economic damage including but not limited to lost wages and benefits in the amount to be proven at trial, and Plaintiff will continue to incur economic damage and lost income into the future.

21.

Defendant's conduct caused Plaintiff mental stress, humiliation, inconvenience and loss of enjoyment of life all to her nonpecuniary loss to be determined at trial.

22.

Defendant's acts are such an intentional or wanton disregard of the societal interest to prohibit wrongful discharge and done with deliberate disregard of Plaintiff's rights and public interest that Defendant should be assessed punitive damages.

**Third Claim For Relief**

(Intentional Infliction of Emotional Distress)

23.

Plaintiff realleges paragraphs 1 through 20.

24.

Defendant intended to inflict severe emotional distress on the Plaintiff.

25.

The Defendant's actions and inaction were the cause of the Plaintiff's severe emotional distress.

26.

The Defendant's actions and inaction constituted an extraordinary transgression of the bounds of socially tolerable conduct.

27.

As a result of Defendant's actions, Plaintiff has incurred economic damage to be proven at trial.

28.

Defendant's conduct caused Plaintiff mental stress, humiliation, inconvenience and loss of enjoyment of life all to her nonpecuniary loss to be determined at trial.

29.

Defendant's acts are such an intentional or wanton disregard of the societal interest to prohibit wrongful discharge and done with deliberate disregard of Plaintiff's rights and public interest that Defendant should be assessed punitive damages.

**Fourth Claim For Relief**

(Negligence)

30.

Plaintiff realleges paragraphs 1 through 29.

31.

Defendant had a duty to its employees, including Plaintiff, to behave as a reasonable employer would with training, supervision, discipline and retention of employees to prevent the threat of discrimination, harassment or retaliation in the workplace. Defendant had a duty to Plaintiff to provide a safe work environment.

32.

Defendant had a duty to act promptly and severely discipline and/or terminate agents and employees it knows or should have known had discriminated, harassed, or retaliated against employees while employed at defendant.

33.

Defendant was negligent, including but not limited to the following ways:

a. In failing to train employees and managers regarding discrimination, harassment, and/or retaliation in the workplace;

b. In failing to reasonably supervise their agents, employees and managers;

c. In failing to properly discipline their agents, employees and managers;

d. In failing to terminate agents, employees and managers;

e. By ignoring and/or minimizing discrimination, harassment and/or retaliation in the workplace.

34.

As a result of defendant's negligence plaintiff has suffered economic and noneconomic damages, in addition to those already alleged above, in an amount to be determined at trial.

**Prayer for Relief**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. Economic damages and future losses to be determined at trial;

2. Non-economic damages to be determined at trial;

3. Punitive damages in an amount to be determined at trial;

4. Reasonable costs;

5. For such other and further relief as the Court may deem just and equitable.

DATED this 1st day of March, 2013.

*/s/ Aaron W. Baker*
Aaron W. Baker, OSB No. 92222
Of Attorneys for Plaintiff
awblaw@earthlink.net
503-234-8800

Page 8 - COMPLAINT