Christopher E. Hawk, OSB # 061635
chawk@gordonrees.com
Daniel J. Nichols, OSB #101304
dnichols@gordonrees.com
Kjersten Turpen, OSB # 025920
kturpen@gordonrees.com
Gordon & Rees LLP
121 SW Morrison St., Suite 1575
Portland, OR  97204
Telephone:  (503) 222-1075
Facsimile:  (503) 616-3600

Attorneys for Defendant
Goldstar Estate Buyers Corporation

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **KELLY KELSEY, CHRISTINE KOTROUS, LINDA NOONAN, CHRISTINE OTTENS, RITA ROBERTSON, KARYN SUGGS and SHERRY WICKLER,**<br><br>                              Plaintiffs,<br><br>        vs.<br><br>**GOLDSTAR ESTATE BUYERS CORPORATION, a Minnesota corporation, and WILLIAM ULRICH, an individual,**<br><br>                              Defendants. | Case No.  13-cv-00354-HU<br><br>**DEFENDANTS GOLDSTAR ESTATE BUYERS CORPORATION'S AND WILLIAM ULRICH'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**<br><br>**Fed. R. Civ. P. 12(b)(6)**<br><br>Request for Oral Argument |

## I.    INTRODUCTION

In their Amended Complaint, seven Plaintiffs use a scant 10 pages (doubled-spaced) to attempt to plead nine separate claims arising out of acts and occurrences that spanned nearly a decade. The vast majority of Plaintiffs' allegations are bare recitations of legal elements. The pleading sheds virtually no light on the basis of each of the

Plaintiff's claims. This kind of conclusory "hide-the-ball" pleading was unequivocally condemned by the Supreme Court in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). All of Plaintiffs' claims should be dismissed, and Plaintiffs should be required to assert well-pleaded facts to support each of their claims.

In addition, Plaintiffs' first four claims (for involuntary servitude, sex trafficking, forced labor, and human trafficking) are particularly deficient because they neither state well-pleaded facts to support a claim nor present the Court with a plausible theory of relief for those statutory claims. Plaintiffs' theory appears to be that threats of unemployment can satisfy the element of "coercion" or "force" necessary to state a claim for forced labor or sex trafficking. That theory is simply incompatible with both the plain language and purpose of the statutes at issue. Plaintiffs' first four claims should be dismissed with prejudice.

Plaintiffs' seventh claim (common law wrongful discharge) is precluded by the statutory scheme that addresses the same alleged misconduct. Plaintiffs' ninth claim (for breach of the covenant of good faith and fair dealing) is simply not permitted under applicable law.

## II.    ALLEGATIONS[1]

### A.    Parties and genesis of dispute

The disputes of the seven Plaintiffs stem from their employment at Defendant Goldstar and their work with Defendant Mr. Ulrich, a Goldstar executive. Plaintiffs are former employees of Defendant Goldstar, who worked "at various times, in various locations around the United States, between September 2004 through November 2012." Amended Complaint at ¶ 4. Goldstar is a buyer and seller of jewelry and other valuable items. Amended Complaint at ¶ 3. As part of that business, Goldstar employees regularly traveled to various cities around the country. Amended Complaint at ¶ 3. Plaintiffs' periods of employment ranged from seven days in 2011 (Ms. Noonan) to a few months in 2008 and 2011 (Ms. Ottens) to nearly eight years from 2004 to 2012 (Ms. Wickler). Amended Complaint at ¶ 5.

### B.    Alleged human trafficking and involuntary servitude (Claims 1-4)

Plaintiffs allege, as an undifferentiated group, that Defendants "knowingly, and without lawful authority, forced and/or attempted to force Plaintiffs to engage in … one or more [various sexual acts]." Amended Complaint at ¶ 7. While Plaintiffs allege sensational detail as to the types of sexual activities involved, they do not allege any particular incidents nor which Plaintiffs were involved in which alleged activities.

---

[1] In ruling on a motion to dismiss, the Court should accept the well-pleaded facts in the complaint as true, and construe them in the light most favorable to Plaintiffs. *Moss v. US Secret Service*, 750 F. Supp. 2d 1197, 1211 (D. Or. 2010). "The court need not, however, accept legal conclusions 'cast in the form of factual allegations.'" *Id*.
Defendants anticipate that Plaintiffs may reach outside the pleadings under the guise of providing "context" for the motion. As with any employment matter, the parties have had prior dealings, and Defendants are obviously familiar with some of the events that gave rise to this case. However, Defendants are entitled to respond to a complaint in this case that gives Defendants fair notice of what the claim is and the grounds upon which it rests. Reference to documents outside this proceeding cannot satisfy that requirement.

Further, Plaintiffs do not elaborate on the alleged "force" or "coercion" threatened or

used. Rather, Plaintiffs simply allege (again, as an undifferentiated group), that

Defendants:

> Knowingly, and without lawful authority, forced and/or attempted to force
> Plaintiffs … by instilling in Plaintiffs a fear that, if they did not comply
> with Defendants' demands, Defendants would withhold from Plaintiffs the
> necessities of life, including but not limited to, food, shelter, money, and/or
> continued employment.

Amended Complaint at ¶8. Likewise, for their "trafficking in persons," "sex trafficking,"

and "forced labor" claims, Plaintiffs simply parrot the relevant statutes describing those

offenses without alleging any facts that would explain how Plaintiffs could possibly come

under the purview of the statutes.

**C.    Alleged sexual discrimination/harassment (Claims 5-9)**

Plaintiffs[2] variously allege claims for sexual discrimination[3] (ORS 659A.030 and

42 U.S.C. § 2000e, *et seq.*), wrongful discharge, negligence, and breach of the implied

covenant of good faith and fair of the employment relationship (Claims 5-9). In support

of those claims, Plaintiffs generally describe an environment where they were threatened

"with demotion and/or termination if Plaintiffs would not agree to engage in sex-related

services" and where sex with Defendant Ulrich, procuring prostitutes, and having sex for

money were conditions of employment. Amended Complaint at ¶¶ 24(c), 40. Plaintiffs

---

[2] All Plaintiffs appear to assert Claim 5 (Sex Discrimination – ORS 659A.030); Plaintiffs
Kotrous, Ottens, and Robertson assert Claim 6 (Sex Discrimination – 42 U.S.C. § 2000e, *et seq.*);
Plaintiffs Kotrous and Noonan assert Claim 7 (Wrongful Discharge); all Plaintiffs appear to
allege Claims 8 (Negligence) and 9 (Breach of Implied Covenant of Good Faith and Fair
Dealing).
[3] During meet and confer discussions for this motion, Plaintiffs conceded that claims by
Plaintiffs Noonan, Kelsey, Wickler, and Suggs for sex discrimination under ORS 659A.030 are
barred by the statute of limitations. Plaintiffs have indicated that they will withdraw that claim
for those Plaintiffs when they amend the complaint following the motion.

Kotrous and Noonan allege that, before they were fired, they refused to have sex with Defendant Ulrich, "resisted sexual harassment," and refused to accept money for sex or procure prostitutes for Defendant Ulrich. Amended Complaint at ¶ 30.

### III.   ARGUMENT

### A.   Each and every Plaintiff must make a short and plain statement of their claims

In order to adequately state a claim for relief, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8. This statement of the claim must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation and ellipses omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (brackets omitted). The standard under Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Further, allegations that "do not permit the court to infer more than the mere possibility of misconduct" are insufficient to state a claim. *Id.* at 679.

The Supreme Court in *Iqbal* applied these standards and held that the claim by the plaintiff in that case failed to state a claim. The Court began by "identifying the allegations in the complaint that are not entitled to the assumption of truth," and concluded that the following allegations were mere legal conclusions: "'[Defendants] knew of, condoned, and willfully and maliciously agreed to subject [plaintiff] to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest.'" 556 U.S. 662, 680. The Court held that these "bare assertions … amount[ed] to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim." *Id*. at 681.

Plaintiffs' entire Amended Complaint fails to satisfy the pleading standards set forth in *Iqbal* and *Twombly*. The complaint suffers from the fundamental defect of attempting to aggregate (vague and conclusory) allegations of all Plaintiffs without explaining which allegations are advanced by each Plaintiff. In so doing, Plaintiffs have deprived Defendants of fair notice of any of the Plaintiff's individual claims. There is no way for Defendants to intelligibly respond to the amalgamated statement of legal conclusions set forth by all Plaintiffs. For that reason alone, the Court should dismiss all of Plaintiffs' claims and require each Plaintiff to allege well-pleaded facts to support their individual claims.

**B.     Claims 1-4 (involuntary servitude, forced labor, human trafficking, and sex trafficking) should be dismissed under the pleadings standards set forth in *Iqbal* and *Twombly***

Plaintiffs' human trafficking and forced labor claims (Claims 1-4) completely fail to adequately state a claim. Under Oregon and federal law, forced labor, involuntary

servitude, human trafficking, and sex trafficking are all prohibited. ORS 30.867; ORS

163.263; ORS 162.266; 18 U.S.C. §§ 1589; 1591. Victims of these crimes may bring

civil suits. ORS 30.867; 18 U.S.C. § 1595.

 In their Amended Complaint, Plaintiffs essentially parrot the legal standards under

those statutes:

| Statutes | Plaintiffs' Amended Complaint |
| --- | --- |
| **Involuntary Servitude** (ORS 30.867; 163.263)<br><br>"A person commits the crime of subjecting another person to involuntary servitude … if the person knowingly and without lawful authority forces or attempts to force the other person to engage in services by:<br>* * *<br>Instilling in the other person a fear that the actor will withhold from the other person the necessities of life, including but not limited to lodging, food and clothing." | **Claim One: Involuntary Servitude (ORS 30.867)**<br><br>"Defendants knowingly, and without lawful authority, forced and/or attempted to force Plaintiffs to engage in services … by instilling in Plaintiffs a fear that, if they did not comply with Defendants' demands, Defendants would withhold from Plaintiffs the necessities of life, including but not limited to, food, shelter, money, and/or continued employment." Amended Complaint at ¶ 8. |
| **Trafficking in Persons** (ORS.30.867; 162.266)<br><br>"A person commits the crime of trafficking in persons if the person knowingly: Recruits, harbors, [or] transports … another person knowing that the other person will be subjected to involuntary servitude  … or [b]enefits financially or receives something of value from participation in a venture that involves an act prohibited by this section or ORS 163.263 or 163.264." | **Claim Two: Trafficking in Persons** (ORS 30.867)<br><br>"Defendants recruited, hired, transported and/or harbored Plaintiffs with knowledge that Plaintiffs would be subject to [alleged involuntary servitude] … [E]ach Defendant benefitted financially and/or received something of value by virtue of their participation in the [alleged involuntary servitude]." Amended Complaint at ¶¶ 14-15. |
| **Sex Trafficking** (18 USC §§ 1595; 1591)<br><br>"Whoever knowingly … recruits … harbors [or] transports … or benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an [sex trafficking] | **Claim Three: Sex Trafficking** (18 U.S.C. § 1595)<br><br>"Defendants recruited, hired, transported and/or harbored Plaintiffs with knowledge and/or in reckless disregard that force, threat of force and/or coercion would be |

| | |
|---|---|
| knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion … or any combination of such means will be used to cause the person to engage in a commercial sex act … shall be punished ….” | used to cause Plaintiffs to engage in sex acts in exchange for employment and/or maintenance of job status.” Amended Complaint at ¶ 17. |
| **Forced Labor** (18 U.S.C. §§ 1595; 1589)<br><br>“Whoever knowingly …obtains the labor or services of a person by … means of serious harm or threats of serious harm to that person or another person … [or] by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint shall be punished ….” | **Claim Four: Forced Labor (18 U.S.C. § 1595)**<br><br>“Defendants knowingly obtained labor and/or services of Plaintiffs … by means of serious harm, threats of serious harm, and/or a scheme, plan, or pattern intended to cause Plaintiffs to believe that if they did not perform such labor or services, they would suffer serious harm.” Amended Complaint at ¶ 22. |

Other than their periods of employment (Amended Complaint at ¶ 5) and the sexual acts that Plaintiffs may have allegedly participated in (¶ 7), Plaintiffs have added virtually nothing to the bare legal elements of the claims. Plaintiffs' Amended Complaint is virtually devoid of substantive factual content.

Plaintiffs' style of generic allegations is the same that was rejected by the Supreme Court in *Iqbal*. Claims one through four of Plaintiffs' Amended Complaint amount to nothing more than "an unadorned, the-defendant-unlawfully-harmed-[us] accusation." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678. For example, Plaintiffs' allegation that "Defendants knowingly, and without lawful authority, forced and/or attempted to force Plaintiffs to engage in services …" is indistinguishable in substance from the rejected allegation in *Iqbal*: "defendants knew of, condoned, and willfully and maliciously agreed

to subject [plaintiff] to harsh conditions of confinement …" *See* 556 U.S. at 680. Like the

dismissed allegations in *Iqbal*, Plaintiffs here have only offered "bare assertions" that

"amount to nothing more than a 'formulaic recitation of the elements'" of the statutory

claim. *See id*. at 681.

Where courts have allowed claims for involuntary servitude/human trafficking, the

plaintiffs pleaded with substantial detail the condition of their enslavement. *See, e.g*.,

*Kiwanuka v. Bakilana*, 844 F. Supp. 2d 107, 115 (D.D.C. 2012) (plaintiff provided

"detailed descriptions of her alleged forced labor and condition of servitude," including

"involvement of the FBI and deportation"); *Ramos v. Hoyle*, 2008 U.S. Dist. LEXIS

102677, 12-13 (S.D. Fla. Dec. 19, 2008) ("in addition to keeping [the plaintiffs']

passports and immigration papers, Defendants, among other things, restricted their food

… fail[ed] to pay them their promised wages, forced them to live in a converted closet …

threatened to report [p]laintiffs for detention and deportation if they tried to escape, and

threatened to encourage and urge law enforcement and immigration officials to pursue

Plaintiffs if they ever escaped."). Plaintiffs' allegations do not come close to meeting the

applicable pleading standards.

**C.    Claims 1-4: Plaintiffs cannot state a claim for involuntary servitude, forced labor, human trafficking, or sex trafficking**

**1.    Plaintiffs' claims are not plausible based upon the plain language of the statutes**

In addition to being factually deficient, Plaintiffs' claims for involuntary servitude,

forced labor, human trafficking, and sex trafficking are implausible on their face and

should be dismissed. Plaintiffs have not alleged "sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678. Plaintiffs' Amended Complaint does "not permit the court to infer more than the mere possibility of misconduct." *See id.* at 679.

First, Plaintiffs cannot plead a claim for "involuntary servitude" based upon the fear of being fired. Plaintiffs allege that Defendants "instill[ed] in Plaintiffs a fear that, if they did not comply with Defendants' demands, Defendants would withhold from Plaintiffs the necessities of life, including but not limited to, food, shelter, money, and/**or continued employment**." Amended Complaint at ¶ 8 (emphasis added). The statute that Plaintiffs rely upon, ORS 163.263, does not include withholding of "continued employment" within the definition of the "force" used to keep a victim in involuntary servitude.

The Legislature obviously did not intend loss of employment to support a claim for involuntary servitude. Employment is, by definition, not "involuntary" if the consequence for failing to perform is termination of the employment. Otherwise, every terminated employee could bring a claim for involuntary servitude. Through the artful use of the conjunction "or" Plaintiffs attempt to manufacture a human sex trafficking claim out of an employment allegation and thus their allegations "do not permit the court to infer more than the mere possibility" of a forced labor or sex trafficking claim. *See Iqbal*, 556 U.S. 662, 679. Some or all of the Plaintiffs *might* be alleging that "Defendants would withhold from Plaintiffs the necessities of life, including but not limited to, food, shelter, money" or they *might* be alleging that Defendants only threatened their continued employment. If Plaintiffs' only fear was being fired for failing to perform sex acts with

their boss, then they were not victims of involuntary servitude; at most, they were employees who may have had claims for sexual discrimination.[4] There is no way from the Amended Complaint to conclude one way or the other for any of the Plaintiffs. Therefore, under *Iqbal*, the Court must dismiss the claims.

Plaintiffs' second claim suffers from the same defects. Stripped of the bare legal conclusions and read in the context of Plaintiffs' remaining allegations, Plaintiffs completely fail to allege facts that raise their claims from possible to plausible. Plaintiffs' second claim merely incorporates the defective allegations from the first claim and adds the bare conclusion that "Defendants recruited, hired, transported and/or harbored Plaintiffs." Amended Complaint at ¶ 14. Again, Plaintiffs add an employment term not used in the statute—"hire"—and add the conjunction "or." Therefore, the Court and Defendants have no well-pleaded facts upon which to conclude that this is an alleged case of employment discrimination or human sex trafficking.

Likewise, Plaintiffs' third claim (sex trafficking under 18 U.S.C. § 1595) and fourth claim (forced labor under 18 U.S.C. § 1595) do nothing more than recite bare legal elements of the claims. Amended Complaint at ¶¶ 17-18, 22. Plaintiffs completely fail to allege what "force, threat of force and/or coercion" was used or what "serious harm" they feared. Amended Complaint ¶¶ 17, 22. And again, Plaintiffs intermix employment allegations, alleging that Defendants acted "with knowledge and/or in reckless disregard that force, threat of force and/or coercion would be used to cause Plaintiffs to engage in sex acts in exchange for **employment** and/or maintenance of **job status**." Amended

---

[4] For the reasons set forth above and below, Plaintiffs have not adequately stated a claim for sexual discrimination.

Complaint at ¶ 17 (emphasis added). Particularly in light of the remaining claims, there is no way for Defendants or the Court to conclude whether Plaintiffs are stating an employment claim or a forced sex trafficking claim.

### 2.     Plaintiffs' claims are not plausible based upon the purpose of the trafficking and forced labor statutes

The federal statute at issue (the Trafficking Victim's Protection Act (TVPA)) "is a new effort to deal with a social ill whose international as well as interstate dimensions have invited federal attention and action." *United States v. Todd*, 627 F.3d 329, 330 (9th Cir. 2010). "The statute focuses on those (usually men) who make money out of selling the sexual services of human beings (usually women) they control and treat as their profit-producing property." *Id.* at 330-331. "[T]he law strikes at two particularly vicious permutations of commercialized sex: at the exploitation of minors in the business of selling sex and at the use of criminal means to produce the product being sold." *Id.* at 331.

In general terms, sex trafficking occurs when people are forced or coerced into the commercial sex trade against their will. Real world examples of human sexual trafficking are both horrific and heart-breaking:

> *Todd and Kelsey Kirschman*. Just eighteen in January 2005, Kelsey was still in high school in Bellingham. Todd, age 26, was not working but had cash. They dated, going to dinner and to the movies. In May 2006, Todd suggested they get a place together. He also told her that they could get rich together if she worked as a prostitute. He would advertise her in the Seattle Weekly. She agreed. He ran the ad with a picture of her, offering "full service" for $200. Calls came in from men, and she responded to them. She gave up a job at Fred Meyer because Todd wanted her available for prostitution 24/7. Todd also arranged for her services to be posted on Craigslist. At Todd's direction, she also "walked the track," that is, she hung out in an area frequented by prostitutes and potential customers. Todd

laid down rules for her to obey. As she testified, "You had to, basically, do everything he wanted." Most basically, "You had to give him all the money." Todd allotted Kelsey $35 each day to pay for condoms, food, and gas.

Todd maintained his rules psychologically by making Kelsey feel that she was "nothing." He maintained his rules **physically by beating her "from head to toe,"** blacking one of her eyes and chipping one of her teeth. When she was 2 1/2 months pregnant, he demanded that she abort the child, and she complied. She tried to hide some of her earnings as a prostitute from Todd, but he found them and confiscated them. She did not leave him because she thought that she "**had nowhere else to go**," was "**scared**," and had lived "under this man's rules" for a year and a half.

*United States v. Todd*, 627 F.3d 329, 331 (emphasis added).

[T]he victims were all present in the United States illegally when they worked … "the bars" … [A]ll of the defendants knew that the victims were illegal aliens, and called them derogatory names, such as "whores," and "wetbacks" … [T]he waitresses who worked in the bars were required to dress in sexy, suggestive and/or revealing clothing, and to drink alcohol until drunk … [W]ithin the public areas and bathrooms of the bars, waitresses could be seen intoxicated, being touched sexually, fondled and/or groped by male customers, stripping, dancing topless, giving lap dances to customers and/or having sex with customers, and … waitresses also had sex with customers in cars outside the bars during their shifts …

[Defendant] Whaley would "keep an eye on" the waitresses who tried to quit working at the bars and would let [Defendant] Rivera know where they were so that Rivera could get them back to work at the bars …  and even went with Rivera to look for a waitress who had not shown up for work…. [M]ost of the **victims** who testified at trial were **scared of being deported or hurt** … if they quit and/or called the police….

\* \* \*

[Defendants] all told the waitresses at the bars to keep drinking alcohol during their shift, to lie to the police if they came to the bar, that they could not go outside during their shift, and that they could not call the police, and **reminded any waitress who wanted to quit** working at the bars that **they were in the United States illegally**.

*United States v. Rivera*, 2012 U.S. Dist. LEXIS 85090 (E.D.N.Y. June 18, 2012)

(citations omitted, emphasis added).

L.F. testified that she sought employment as a prostitute for Townsend after seeing a help wanted advertisement he posted, but a few days after she met him, **he hit her, took away her passport, phone, and other personal belongings**, and told her that she would have to engage in prostitution to get her belongings back. Townsend also raped her, made her perform anilingus on him, and made her have sex with C.B. while he watched. L.F. testified that she felt she could not run away because he had her belongings. She testified that **he had threatened her**, and that **she thought he would hit her again** if she did not find customers.

\* \* \*

C.B. testified that when he was raping her, he told her that he was doing so because she was not bringing in enough prostitution money. She also said that **his raping, beating, and threatening her made her engage in more commercial sex acts**. L.F. testified that Townsend threatened her, that she did not feel she was able to leave him because he took her belongings, and that she engaged in prostitution when she did not want to because of Townsend's behavior towards her.

*United States v. Townsend*, 521 Fed. Appx. 904, 906-907 (11th Cir. Fla. 2013) (emphasis added).[5]

By contrast, Plaintiffs have utterly failed to set forth facts that would put them within reach of the federal and state anti-sex trafficking and involuntary servitude statutes. Setting aside the bare legal conclusions of Plaintiffs' Complaint (as the Court must), the following salient alleged facts remain:

- Plaintiffs worked for Defendant Goldstar, a jewelry buyer, at various times over the years. Amended Complaint at ¶¶ 3, 5.

- Defendants "insisted" that Plaintiffs have sex with Defendant Ulrich, procure prostitutes, and have sex for money as a condition of employment. Amended Complaint at ¶ 40.

---

[5] Defendants do not contend that claims for forced labor or sex trafficking are limited to the facts of the three examples set forth here. However, these are the kinds of claims that the statutes at issue were meant to address, and they are offered here as context in evaluating whether Plaintiffs have pled plausible claims.

- Plaintiffs were threatened by Defendant Ulrich with demotion and/or termination if Plaintiffs would not agree to engage in sex-related services. Amended Complaint at ¶ 24.

- Plaintiffs Kotrous and Noonan refused to have sex with Defendant Ulrich, resisted his advances, and refused to engage in unlawful activity, such as accepting money for sex. Amended Complaint at ¶ 30.

These alleged facts cannot state a plausible claim for forced labor, involuntary servitude, human trafficking, or sex trafficking. At a minimum, they lack facts to support the critical elements of coercion or force or threat of force. Merely being threatened with termination of employment for refusing to engage in sex is not forced/involuntary labor or human sex trafficking and clearly falls outside the scope of the misconduct addressed by the Oregon and federal statutes (ORS 30.867; 18 U.S.C. § 1595).

**D.    Claim 7 (Wrongful Discharge): Plaintiffs' claims are precluded by the statutory scheme addressing the same alleged misconduct**

Plaintiffs Noonan and Kotrous (but no others) assert that they were wrongfully discharged because they refused to have sex with Mr. Ulrich, refused to accept money for sex, and refused to procure prostitutes for Mr. Ulrich. Amended Complaint ¶ 30. Plaintiffs may not assert a claim for wrongful discharge. The tort of wrongful discharge is intended to serve "as a narrow exception to the at-will employment doctrine in certain limited circumstances where . . . the reasons for the discharge are so contrary to public policy that a remedy is necessary . . . to deter such conduct." *Whitley v. City of Portland,* 654 F.Supp. 2d 1194, 1224 (D. Or. 2009). A discharge is wrongful in two circumstances: "(1) when the discharge is for exercising a job-related right that reflects an important

public policy; or (2) when the discharge is for fulfilling some important public duty."
*Babick v. Or. Arena Corp.*, 333 Ore. 401, 407, 40 P.3d 1059 (2002). If statutes exist
which protect the employment related right, then the courts will not recognize an
additional common law remedy for wrongful discharge. *Whitley,* 654 F.Supp. 2d at 1224*;
see also Delaney v. Taco Time Int'l,* 297 Or. 10, 16, 681 P.2d 114 (1984).

    For example, the Ninth Circuit has refused to allow a plaintiff to bring a wrongful
discharge claim in addition to his statutory retaliation claims because the plaintiff "did
not suffer the kind of personal injury that would warrant providing a common law
remedy of wrongful discharge **in addition** to the existing state and federal statutory
remedies for retaliation." *Thomas v. City of Beaverton*, 379 F.3d 802, 813 (9th Cir. 2004)
(emphasis added). The judges in this District concur. *See, e.g.*, *Gresham v. Safeway, Inc.*,
No. 08-6241-AA, 2010 U.S. Dist. LEXIS 9864, at *31-32 (D. Or. Feb. 3, 2010); *U.S. ex.
rel. Chartraw v. Cascade Healthcare Community, Inc.*, No. 05-708-AA, 2009 US Dist
LEXIS 17542, at *12 (D. Or. March 5, 2009); *Battan v. Allwest Underground, Inc.*, No.
08-CV-707-BR, 2008 US Dist LEXIS 68735, at *16-17, 2008 WL 4191467 (D. Or. Sept.
5, 2008).

    Here, Plaintiffs Kotrous and Noonan could assert claims of harassment and
discrimination under Title VII (42 U.S.C. 2000e, *et seq*.) or ORS 659A.030, *et seq.*, for
example. Those statutes allow for a wide range of damages which adequately compensate
a plaintiff for any alleged unlawful behavior arising out of an employee's discharge from
employment. Accordingly, the Court should dismiss Plaintiffs' seventh claim for

wrongful termination because Title VII and ORS Chapter 659A provide Plaintiffs with an adequate statutory remedy.

**E.      Claim 9 (breach of covenant of good faith and fair dealing): Plaintiffs' claims are not permitted under Minnesota law**

Plaintiffs assert a breach of the duty of good faith and fair dealing arising out of their employment agreement with Goldstar. Amended Complaint at ¶ 39.  Plaintiffs explicitly plead this claim under Minnesota law. Amended Complaint at p. 10. However, "Minnesota does not recognize an implied covenant of good faith and fair dealing in employment contracts." *Bratton v. Menard, Inc*., 438 N.W.2d 116, 118 (Minn. App. 1989); *Brozo v. Oracle Corp*., 324 F.3d 661, 668 (8th Cir. 2003) ("Minnesota does not recognize an implied duty of good faith and fair in employment contracts").

Under Minnesota law, Defendants did not owe Plaintiffs (or any employees) a contractual duty of good faith and fair dealing arising out of their employment relationships. Therefore, no duty could have been breached. Plaintiffs' claim is barred by black letter Minnesota law. The Ninth Claim for relief should be dismissed as to all Plaintiffs.

## V.    CONCLUSION

For the reasons set forth above, Plaintiffs' claims should be dismissed. Defendants are entitled to answer a complaint that sets forth, for each Plaintiff, well-pleaded facts that state plausible claims for relief. As it stands now, Plaintiffs' Amended Complaint is utterly deficient.

Respectfully Submitted,

GORDON & REES LLP                              SMITH FREED & EBERHARD


/s/ *Daniel J. Nichols*                        /s/ *Philip R. Bennet*
Christopher E. Hawk, OSB # 061635              Philip R. Bennett, OSB # 841687
Daniel J. Nichols, OSB #101304                 Chin See Ming, OSB # 944945
Kjersten Turpen, OSB # 025920                  *Counsel for Defendant William Ulrich*
*Counsel for Defendant Goldstar Estate*
*Buyers Corporation*

Dated: January 21, 2014