Christopher E. Hawk, OSB # 061635
chawk@gordonrees.com
Daniel J. Nichols, OSB #101304
dnichols@gordonrees.com
Kjersten Turpen, OSB # 025920
kturpen@gordonrees.com
Gordon & Rees LLP
121 SW Morrison St., Suite 1575
Portland, OR  97204
Telephone:  (503) 222-1075
Facsimile:  (503) 616-3600

Attorneys for Defendant
Goldstar Estate Buyers Corporation

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **KELLY KELSEY, CHRISTINE KOTROUS, LINDA NOONAN, CHRISTINE OTTENS, RITA ROBERTSON, KARYN SUGGS and SHERRY WICKLER,**<br><br>                              Plaintiffs,<br><br>        vs.<br><br>**GOLDSTAR ESTATE BUYERS CORPORATION, a Minnesota corporation, and WILLIAM ULRICH, an individual,**<br><br>                              Defendants. | Case No.  13-cv-00354-HU<br><br>**REPLY IN SUPPORT OF DEFENDANTS GOLDSTAR ESTATE BUYERS CORPORATION'S AND WILLIAM ULRICH'S MOTION TO DISMISS**<br><br>**Fed. R. Civ. P. 12(b)(6)**<br><br>Request for Oral Argument |

## I.     INTRODUCTION

As to all of Plaintiffs' claims, their Amended Complaint fails "to raise a right to relief above the speculative level." *See Sanchez v. Purina Animal Nutrition, LLC*, 2013 U.S. Dist. LEXIS 171046, *3 (D. Or. Nov. 4, 2013), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007). The paucity of factual allegations falls below the minimum standard set forth by Rule 8.

In particular, Plaintiffs' allegations for their first four claims (for involuntary servitude and human sex trafficking) utterly fail to "permit the court to infer more than the mere possibility of misconduct." *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Plaintiffs' attempts to recast an alleged sexual harassment employment law claim as human trafficking should be rejected. Plaintiffs' seventh claim (for wrongful discharge) is clearly barred because an adequate statutory remedy exists. Finally, Plaintiffs simply cannot state a claim for breach of a covenant of good faith and fair dealing under Minnesota law for breach of an at-will employment contract.

## II.    ARGUMENT

### A.    Plaintiffs' Amended Complaint fails to adequately state a claim.

Plaintiffs concede a proper complaint must give a defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. Opposition at 4. Plaintiffs' complaint fails to meet that basic standard because it largely consists of amalgamated statements of bare legal elements. Defendants acknowledge that Plaintiffs have pled some sexual allegations, which must be assumed to be true at this stage. However, Plaintiffs have omitted factual allegations to support other critical elements of their individual claims (including, for example, the alleged threats or coercive acts to support the trafficking claims).

In their Opposition, Plaintiffs' recite the legal conclusions in their Complaint and attempt to recast them as well-pleaded facts. Opposition at 5-7. Even with bullet points, legal conclusions remain conclusory. In particular, other than the sexual activities alleged, Pages 6 and 7 of the Opposition quote, virtually verbatim, the relevant statutes.

The decision in *Iqbal* condemned this kind of pleading practice. Plaintiffs must allege their grounds to state a claim, not just the legal requirements set forth by the statute. Plaintiffs should be required to plead facts that support each of the essential elements for each of their claims.

**B.       Plaintiffs' human sex trafficking claims (Claims 1-4) are not plausible.**

The common critical element of Plaintiffs' first four claims is coercion.[1] "Involuntary" servitude under ORS 163.263 must be involuntary, and "forced" labor under 18 U.S.C. § 1589 must be forced. Further, under ORS 163.266 and 18 U.S.C. § 1591, whether one is a victim of human sex trafficking depends on the question of consent. The law protects minors (who cannot legally consent) and those victims forced into human sex trafficking through "force, threats of force, [and/or] coercion." Plaintiffs do not and cannot allege this critical element of force/coercion.

In their Response, Plaintiffs do not defend the theory of coercion most apparent from their complaint, i.e., Plaintiffs' involuntary servitude was secured by threats of unemployment. Rather, Plaintiffs shift focus to another theory: Plaintiffs were allegedly coerced to engage in human sex trafficking because Defendants paid for their travel,

---

[1] Under ORS 163.263 (involuntary servitude), to be held liable, a defendant must "knowingly and without lawful authority forces or attempts to force the other person to engage in services…." *See* Amended Complaint at ¶ 8. Under ORS 163.266 (trafficking in persons), a defendant is liable if he knowingly "recruits, harbors, [or] transports … another person knowing that the other person will be subjected to involuntary servitude" or benefits financially from it. *See* Amended Complaint at ¶¶ 14-15. Liability under 18 U.S.C. § 1591 (sex trafficking) requires knowledge or a reckless disregard that "means of force, threats of force, fraud, coercion … or any combination of such means will be used to cause the person to engage in a commercial sex act." *See* Amended Complaint at ¶ 17. Under 18 U.S.C. § 1589 (forced labor), liability attaches to a defendant who "obtain the labor or services of a person by … means of serious harm or threats of serious harm" or a scheme to cause a person to believe that "serious harm or physical restraint" will be used. *See* Amended Complaint at ¶ 22.

lodging, and food while on the road working for Defendants.[2] This theory does not state a plausible claim for involuntary servitude or sex trafficking.

Plaintiffs have not alleged *how* Plaintiffs were coerced to work for Defendants in the first instance. Plaintiffs argue (but do not allege in their complaint) that if they failed to engage in commercial sex, Defendants would no longer pay for Plaintiffs to take trips and stay in hotels. But Plaintiffs' argument begs the question: why did Plaintiffs travel from city to city and stay in hotels paid for by Defendants and eat food paid for by Defendants? If Plaintiffs objected to the work conditions, why did they not stay home? Why did they not leave and refuse to come back? Why did they not quit their jobs? In short, Plaintiffs must allege (in plain and simple terms): how Plaintiffs were coerced to labor or engage in commercial sex without their consent. The only answer apparent from the Amended Complaint is that they wanted to remain employed. However, fear of unemployment cannot satisfy the coercion requirement for a claim of involuntary servitude. Otherwise, every employment claim for workplace sexual harassment could be brought as a human sex trafficking/involuntary servitude claim.

Plaintiffs' argument suffers from another fallacy. Plaintiffs appear to argue that because food and housing, in general, are life necessities, any offer of food (such as a dinner at a restaurant) or housing (such as a hotel room) are also necessities of life that, if withdrawn, qualify as the coercion necessary to state a claim for human trafficking. This

---

[2] Plaintiffs did not actually allege this theory in their Amended Complaint. Rather, Plaintiffs alleged that they traveled from city to city as part of their jobs (paid for by Defendants) (Amended Complaint at ¶ 3). Later in the Amended Complaint, Plaintiffs recite the bare legal element of the statutory claims without identifying any facts that would support an allegation that they were threatened with the withholding of "food or housing." (Amended Complaint at ¶ 8.) Plaintiffs have not alleged any facts that would stitch together the bare legal element with the description of their travel for work.

contention fails to satisfy the legal element of coercion. The withholding of food and shelter becomes coercive when a plaintiff has no other options.

For example, for an undocumented immigrant, the withholding of food and shelter can be life-threatening and coercive. *See Ramos v. Hoyle*, 2008 U.S. Dist. LEXIS 102677, 12-13 (S.D. Fla. Dec. 19, 2008) ("in addition to keeping [the plaintiffs'] passports and immigration papers, Defendants, among other things, restricted their food … fail[ed] to pay them their promised wages, forced them to live in a converted closet … threatened to report [p]laintiffs for detention and deportation if they tried to escape, and threatened to encourage and urge law enforcement and immigration officials to pursue Plaintiffs if they ever escaped."). On the other hand, a citizen of the United States who travels for her employer can quit, attempt to collect unemployment, and find another job. If that citizen had to quit because she was threatened with unemployment for not having sex with her boss, she may have a sexual harassment claim; but she does not have a claim for involuntary servitude or sex trafficking.

Plaintiffs contend that this case is "unique" because it involves an employer that paid its employees' travel expenses. Opposition at 8. Plaintiffs are incorrect. Employers frequently pay for employees' expenses (including food and lodging) when they travel on business; there is nothing unique about such an arrangement. (Indeed, it would be odd if an employer did not pay for an employee's travel expenses). If Defendants threatened to fire Plaintiffs and to stop paying for such trips for an unlawful purpose, Plaintiffs might have an employment claim. However, terminating someone's employment (and

associated travel expenses) simply does not constitute a claim for "involuntary servitude."

The plain meaning of the statutes precludes Plaintiffs' claims. In this case, there is no ambiguity as to whether the human trafficking and slavery statutes apply to Plaintiffs' claims. They simply do not. Of note, Plaintiffs have not identified any cases that come anywhere close to supporting their theory that threats of unemployment and withdrawal of job-related travel expenses can constitute a claim for involuntary human sex trafficking.

**C.    Plaintiffs cannot maintain a claim for wrongful discharge (Claim 7)**

Plaintiffs Noonan and Kotrous claim they do not have an adequate statutory remedy because they are proceeding on a theory of retaliation for refusing to engage in unlawful activity, as opposed to harassment and discrimination. Plaintiffs are mistaken. Plaintiffs allege that they were terminated for refusing to have sex with Ulrich, refusing to accept money for sex, and/or participating in prostitution for or with Ulrich. Am. Complaint, ¶ 30. While Plaintiffs have agreed to strike the legal allegation that they were terminated for "resisting sexual harassment," the remaining factual allegations in paragraph 30 amount to assertions of sexual harassment in the workplace, for which an adequate statutory remedy exists.

As set forth in Defendants' opening memorandum, if statutes exist which protect the employment related right, then the courts will not recognize an additional common law remedy for wrongful discharge. *Whitley v. City of Portland,* 654 F Supp 2d 1194,

1224 (D. Or. 2009); *see also Delaney v. Taco Time Int'l*, 297 Or. 10, 16, 681 P.2d 114 (1984).

Plaintiffs first assert that "Title VII and ORS 659A.030 do not provide for a claim arising from retaliation for refusing to engage in unlawful activity." Opposition at 12. To the contrary, both of these statutes provide a remedy for retaliation claims. ORS 659A.030(f); 42 USC § 2000e-2. An employee who believes his or her employer has taken an adverse action against him or her because of his or her sex is entitled to bring a claim under these statutes. Plaintiffs allege they were retaliated against for refusing Ulrich's sexual advances, which allegedly included engaging in or participating in prostitution. The alleged unlawful activity is fairly described as alleged sexual harassment. If Plaintiffs Noonan or Kotrous believe they were retaliated against on the basis of these actions, the appropriate claim is under ORS 659A.030 and/or Title VII.

Ninth Circuit case law supports Defendants' position. Plaintiffs can obtain complete recovery under the applicable statutes. As in *Thomas v. City of Beaverton*, 379 F.3d 802, 813 (9th Cir. 2004), here Plaintiffs have not alleged they suffered "the kind of personal injury that would warrant providing a common law remedy of wrongful discharge *in addition* to the existing state and federal statutory remedies for retaliation." (emphasis added).

If Plaintiffs were alleging retaliation for exercising a right not otherwise covered by the sexual discrimination statutes—such as serving on jury duty—then they might have a wrongful discharge claim. The cases cited by Plaintiffs support this point. All of the cases cited allowed the plaintiffs to proceed upon claims where a plaintiff was

terminated after the plaintiff had exercised some right separate from refusing to succumb to alleged sexual advances by an employer.

Plaintiffs fail to address the many cases in which the judges in this district have held a wrongful discharge claim may not lie where the plaintiffs allege conduct for which an adequate statutory remedy exists, namely the sexual harassment alleged in paragraph 30 of the Amended Complaint. Plaintiffs' seventh claims for wrongful termination must be dismissed because Title VII and ORS Chapter 659A provide Plaintiffs with an adequate statutory remedy.

**D.      Plaintiffs cannot state a claim for breach of the covenant of good faith and fair dealing (Claim 9)**

While Plaintiffs argue that Minnesota law "recognizes [a claim for breach of the covenant of good faith and fair dealing] when the employment relationship is something *other than at-will*," (Opposition at 13, emphasis added), Plaintiffs have not alleged facts which might give rise to a finding that the relationship between the parties was something other than at-will. *See* Amended Complaint, ¶39. Plaintiffs point to the *Bratton* Court's finding that a question of fact existed as to whether the employee handbook there modified the employee's otherwise at-will employment. Plaintiffs' allegations are very different from the plaintiffs in *Bratton* and different than the allegations in the other cases cited by Plaintiffs, all of which similarly involve an implied duty arising from language in an employee handbook. Plaintiffs do not allege that some provision in an employee handbook altered their employment relationship. Plaintiffs allege they had an employment contract and that Defendants' breached an implied contractual duty inherent

in that contract – a duty which, as a matter of law, does not exist. *See Hunt v. IBM Mid America Employees Fed. Credit Union*, 384 N.W.2d 853 (1986).

### III.   CONCLUSION

For the reasons set forth above, Plaintiffs' claims should be dismissed. Defendants are entitled to answer a complaint that sets forth, for each Plaintiff, well-pleaded facts that state plausible claims for relief. As it stands now, Plaintiffs' Amended Complaint is utterly deficient.

Respectfully Submitted,

GORDON & REES LLP                          SMITH FREED & EBERHARD


/s/ *Daniel J. Nichols*                         /s/ *Philip R. Bennet*
Christopher E. Hawk, OSB # 061635          Philip R. Bennett, OSB # 841687
Daniel J. Nichols, OSB #101304             Chin See Ming, OSB # 944945
Kjersten Turpen, OSB # 025920              *Counsel for Defendant William Ulrich*
*Counsel for Defendant Goldstar Estate*
*Buyers Corporation*

Dated: February 24, 2014