1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8                         DISTRICT OF OREGON

9                        PORTLAND DIVISION

10

11

12   KELLY KELSEY, CHRISTINE KOTROUS,          No. 3:13-cv-00354-HU
     LINDA NOONAN, CHRISTINE OTTENS,
13   RITA ROBERTSON, KARYN SUGGS, and          **OPINION AND**
     SHERRY WICKLER,                                    **ORDER**
14
              Plaintiffs,
15
         v.
16
     GOLDSTAR ESTATE BUYERS CORPORATION,
17   a Minnesota corporation, and
     WILLIAM ULRICH, an individual,
18
              Defendants.
19   _____

20   William A. Barton
     Brent Barton
21   THE BARTON LAW FIRM, P.C.
     214 S.W. Coast Highway
22   P.O. Box 870
     Newport, Oregon 97365
23
         Of Attorneys for Plaintiffs
24
25   Christopher E. Hawk
     Daniel J. Nichols
     Kjersten H. Turpen
26   GORDON REES LLP
     121 S.W. Morrison St., Suite 1575
27   Portland, Oregon 97204

28       Of Attorneys for Defendants


     Page 1 - OPINION AND ORDER

HUBEL, Magistrate Judge:

This matter comes before the Court on Defendants Goldstar Estate Buyers Corporation ("Goldstar") and William Ulrich's ("Ulrich") (collectively "Defendants") motion to dismiss Plaintiffs Kelly Kelsey ("Kelsey"), Christine Kotrous ("Kotrous"), Linda Noonan ("Noonan"), Christine Ottens ("Ottens"), Rita Robertson ("Robertson"), Karyn Suggs ("Suggs"), and Sherry Wickler's ("Wickler") (collectively "Plaintiffs") amended complaint, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), for failure to state a claim upon which relief can be granted. For the reasons that follow, Defendants' motion (Docket No. 25) to dismiss is GRANTED.

## I. FACTS AND PROCEDURAL HISTORY

The facts are drawn from the amended complaint. Plaintiffs are all former employees of Goldstar who worked under the direction of Ulrich, an owner, agent and employee of Goldstar.[1] Acting on behalf of Goldstar, Ulrich would travel to various cities throughout the United States to buy and sell jewelry and other valuable items. Ulrich operated Goldstar's business out of hotel rooms, and employees working alongside Ulrich at a given location were provided with overnight lodging, food and transportation.

Plaintiffs are residents of different states and were employed by Goldstar for varying durations, ranging from six days to nearly eight years, between September 2004 and November 2012. Wickler is

---

[1] Plaintiffs' claims against Defendants appear to be based solely on actions taken by Ulrich within the scope of his employment or agency. For convenience, the Court at times refers only to Ulrich when describing acts allegedly performed by both defendants.

Page 2 - OPINION AND ORDER

a Pennsylvania resident who worked for Goldstar from September 2004 to June 2012. Ottens is an Oklahoma resident who worked for Goldstar from January 2008 to March 2008, and April 2011 to June 2012. Robertson is an Arizona resident who worked for Goldstar from September 2009 to June 2012. Kelsey is a California resident who worked for Goldstar from January 2011 to November 2011. Suggs is a California resident who worked for Goldstar from February 2011 to June 2012. Kotrous is an Oregon resident who worked for Goldstar from March 2011 to November 2012. Noonan is an Oregon resident who worked for Goldstar from May 16, 2011, through May 22, 2011.

On a continuing basis throughout their periods of employment, it is alleged that Ulrich forced or attempted to force each of the seven female plaintiffs to engage in sexual intercourse, sometimes in exchange for an additional monetary incentive; group sex; anal sex; oral sex, sometimes in exchange for an additional monetary incentive; sexual acts while others observed; the procurement of sexual devices; the procurement of prostitution services; travel-related arrangements involving out-of-state prostitutes; and/or the procurement of sex partners. The amended complaint does not allege any specific incidents with reference to dates, times, the exact parties involved or locations where the incidents occurred. Plaintiffs allege Ulrich compelled compliance by instilling a fear that he would withhold from Plaintiffs the necessities of life, such as food, shelter, money, and/or continued employment.

The amended complaint alleges causes of action for (1) involuntary servitude in violation of ORS 30.867; (2) trafficking in persons in violation of ORS 30.867; (3) sex trafficking in

Page 3 - OPINION AND ORDER

violation of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595 (hereinafter "§ 1595 or "civil remedy provision"); (4) forced labor in violation of § 1595; (5) sex discrimination in violation of ORS 659A.030; (6) sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e to 2000e-17 (Kotrous, Ottens and Robertson only); (7) wrongful discharge under Oregon law (Kotrous and Noonan only); (8) negligence under Oregon law; and (9) breach of the implied covenant of good faith and fair dealing under Minnesota law.[2]

On January 21, 2014, Defendants filed a motion to dismiss Plaintiffs' amended complaint in its entirety, pursuant to 12(b)(6). The parties have consented to have their case heard by a United States Magistrate Judge. *See* 28 U.S.C. § 636(c)(1). Defendants' motion to dismiss was fully briefed as of February 24, 2014, and the Court heard argument on the pending motion on March 17, 2014.

## II. LEGAL STANDARD

A court may dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, the court must accept all of the claimant's material factual allegations as true and view all facts in the light most favorable to the claimant. *Reynolds v. Giusto*, No. 08-CV-6261, 2009 WL 2523727, at *1 (D. Or.

---

[2] Noonan filed the original complaint against Goldstar on March 1, 2013, alleging claims for breach of the implied covenant of good faith and fair dealing, wrongful discharge, intentional infliction of emotional distress, and negligence.

Page 4 - OPINION AND ORDER

Aug. 18, 2009).   The Supreme Court addressed the proper pleading standard under Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).   *Twombly* established the need to include facts sufficient in the pleadings to give proper notice of the claim and its basis: "While a complaint attacked [under] Rule 12(b)(6) . . . does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (brackets omitted).

Since *Twombly*, the Supreme Court has clarified that the pleading standard announced therein is generally applicable to all cases governed by the Rules, not only to antitrust cases. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).   The *Iqbal* court explained that *Twombly* was guided by two specific principles. First, although the court must accept as true all facts asserted in a pleading, it need not accept as true any legal conclusion set forth in a pleading.   *Id*.   Second, the complaint must set forth facts supporting a plausible claim for relief and not merely a possible claim for relief.   *Id*.   The court instructed that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1949-50 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)).   The court concluded: "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.   When there are well-pleaded factual allegations, a court should assume their veracity

Page 5 - OPINION AND ORDER

1    and then determine whether they plausibly give rise to an
2    entitlement to relief." *Id*. at 1950.

3        The Ninth Circuit further explained the *Twombly-Iqbal* standard
4    in *Moss v. U.S. Secret Service*, 572 F.3d 962 (9th Cir. 2009).  The
5    *Moss* court reaffirmed the *Iqbal* holding that a "claim has facial
6    plausibility when the plaintiff pleads factual content that allows
7    the court to draw the reasonable inference that the defendant is
8    liable for the misconduct alleged." *Moss*, 572 F.3d at 969 (quoting
9    *Iqbal*, 129 S. Ct. at 1949).  The court in *Moss* concluded by
10   stating: "In sum, for a complaint to survive a motion to dismiss,
11   the non-conclusory factual content, and reasonable inference from
12   that content must be plausibly suggestive of a claim entitling the
13   plaintiff to relief." *Moss*, 572 F.3d at 969.

14                          **III. DISCUSSION**

15   **A.   Claims Under ORS 30.867**

16       Plaintiffs' first two causes of action, which are predicated
17   on allegations of involuntary servitude and trafficking in persons,
18   are brought pursuant to ORS 30.867.  That statute provides, in
19   relevant part:

20           Irrespective of any criminal prosecution or the result of
             a criminal prosecution, a person injured by a violation
21           of ORS 163.263 (Subjecting another person to involuntary
             servitude in the second degree) . . . or [ORS] 163.266
22           (Trafficking in persons) may bring a civil action for
             damages against a person whose actions are unlawful under
23           [those statutes].

24   OR. REV. STAT. § 30.867(1).  Under ORS 163.263, "[a] person commits
25   the crime of subjecting another person to involuntary
26   servitude . . . if the person knowingly and without lawful
27   authority forces or attempts to force the other person to engage in
28   services by," among other things, "[i]nstilling in the other person

Page 6 - OPINION AND ORDER

a fear that the actor will withhold from the other person the necessities of life, including but not limited to lodging, food and clothing." OR. REV. STAT. § 163.263(1). ORS 163.266 similarly provides that:

> A person commits the crime of trafficking in persons if the person knowingly:
>
> (a) Recruits, entices, harbors, transports, provides or obtains by any means, or attempts to recruit, entice, harbor, transport, provide or obtain by any means, another person knowing that the other person will be subjected to involuntary servitude as described in ORS 163.263 . . . or
>
> (b) Benefits financially or receives something of value from participation in a venture that involves an act prohibited by this section or ORS 163.263[.]

OR. REV. STAT. § 163.266(1).

In their first cause of action, Plaintiffs allege that Defendants "knowingly, and without lawful authority, forced and/or attempted to force [them] to engage in services including, but not limited to" one or more of the sex-related incidents previously described above. (Am. Compl. ¶ 8.) Mirroring ORS 163.263(1), Plaintiffs allege Defendants compelled compliance by instilling a fear that they "would withhold from Plaintiffs the necessities of life, including but not limited to, food, shelter, money, and/or continued employment." (Am. Compl. ¶ 8.) In their second cause of action, Plaintiffs allege that "Defendants recruited, hired, transported and/or harbored [them] with knowledge that [they] would be subject to" the aforementioned sex-related incidents, and that "Defendants benefitted financially and/or received something of value by virtue of their participation" in those incidents. (Am. Compl. ¶¶ 14-15.)

Page 7 - OPINION AND ORDER

1    The Court agrees with Defendants that Plaintiffs' allegations
2    fall short under the facial plausibility standard.  The allegations
3    pled in support of the first and second causes of action appear to
4    be conclusions (which the Court is not required to accept as true)
5    and are formulaic recitations of the language of the relevant
6    statutes.   While legal conclusions can provide the framework of
7    Plaintiffs' amended complaint, they must be supported by factual
8    allegations.    The Court grants Defendants' motion to dismiss
9    Plaintiffs' causes of action under ORS 30.867, with leave to
10   replead consistent with the discussion at oral argument.

11   **B.   Claims Under the TVPRA**

12       Plaintiffs' third and fourth causes of action, which are
13   predicated on allegations of forced labor and sex trafficking, are
14   brought pursuant to the TVPRA's civil remedy provision.  The civil
15   remedy provision provides:

16       An individual who is a victim of a violation may bring a
         civil action against the perpetrator (or whoever
17       knowingly benefits, financially or by receiving anything
         of value from participation in a venture which that
18       person knew or should have known has engaged in an act in
         violation of this chapter) in an appropriate district
19       court of the United States and may recover damages and
         reasonable attorneys fees.
20

21   18 U.S.C. § 1595(a); *see also Velez v. Sanchez*, 693 F.3d 308, 324
22   (2d Cir. 2012) ("amending the civil cause of action to remove
23   references to specific crimes and therefore expanding its scope to
24   include forced labor" (citing Pub. L. No. 110-457, § 221, 122 Stat.
25   5044, 5067 (2008))).

26       The federal forced labor statute provides:

27       Whoever knowingly provides or obtains the labor or
         services of a person by any one of, or by any combination
28       of, the following means——(1) by means of force, threats

Page 8 - OPINION AND ORDER

1    of force, physical restraint, or threats of physical
2    restraint to that person or another person; (2) by means
     of serious harm or threats of serious harm to that person
3    or another person; (3) by means of the abuse or
     threatened abuse of law or legal process; or (4) by means
4    of any scheme, plan, or pattern intended to cause the
     person to believe that, if that person did not perform
5    such labor or services, that person or another person
     would suffer serious harm or physical restraint, shall be
6    punished as provided under subsection (d).

7    18 U.S.C. § 1589(a).   Section 1589(c) includes the following

8    definitions:

9        (1) The term 'abuse or threatened abuse of law or legal
         process' means the use or threatened use of a law or
10       legal process, whether administrative, civil, or
         criminal, in any manner or for any purpose for which the
11       law was not designed, in order to exert pressure on
         another person to cause that person to take some action
12       or refrain from taking some action.

13       (2) The term 'serious harm' means any harm, whether
         physical or nonphysical, including psychological,
14       financial, or reputational harm, that is sufficiently
         serious, under all the surrounding circumstances, to
15       compel a reasonable person of the same background and in
         the same circumstances to perform or to continue
16       performing labor or services in order to avoid incurring
         that harm.

17

18   18 U.S.C. § 1589(c).

19       The federal sex trafficking statute provides:

20       Whoever knowingly (1) in or affecting interstate
         commerce . . . recruits, entices, harbors, transports,
21       provides, obtains, or maintains by any means a person; or
         (2) benefits, financially or by receiving anything of
22       value, from participation in a venture which has engaged
         in an act described in violation of paragraph (1),
23       knowing, or in reckless disregard of the fact, that means
         of force, threats of force, fraud, coercion . . . or any
24       combination of such means will be used to cause the
         person to engage in a commercial sex act, or that the
25       person has not attained the age of 18 years and will be
         caused to engage in a commercial sex act, shall be
26       punished as provided in subsection (b).

27   18 U.S.C. § 1591(a); *see also United States v. Todd*, 627 F.3d 329,

28   335 (9th Cir. 2010) (Smith, J., concurring) ("Where a defendant

Page 9 - OPINION AND ORDER

engages in sex trafficking without the use of force, fraud, or coercion, or where children are not involved, his conduct is criminalized by a different set of statutes.").

Section 1591(e) includes the following definitions:

> (1) The term 'abuse or threatened abuse of law or legal process' means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

> (2) The term 'coercion' means: (A) threats of serious harm to or physical restraint against any person; (B) any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or (C) the abuse or threatened abuse of law or the legal process.

> (3) The term 'commercial sex act' means any sex act, on account of which anything of value is given to or received by any person.

> (4) The term 'serious harm' means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm.

> (5) The term 'venture' means any group of two or more individuals associated in fact, whether or not a legal entity.

18 U.S.C. § 1591(e).

In their third cause of action, Plaintiffs allege that "Defendants recruited, hired, transported and/or harbored [them] with knowledge and/or in reckless disregard that force, threat of force and/or coercion would be used to cause [them] to engage in sex acts in exchange for employment and/or maintenance of job status" (Am. Compl. ¶ 17), and that "Defendants benefitted

Page 10 - OPINION AND ORDER

financially and/or received something of value by virtue of their participation and/or knowledge and/or constructive knowledge in the conduct alleged in paragraph [seventeen] herein" (Am. Compl. ¶ 18). In their fourth cause of action, Plaintiffs allege that "Defendant knowingly obtained labor and/or services of Plaintiffs, [such as the sex-related incidents], by means of serious harm, threats of harm, and/or a scheme, plan, or pattern intended to cause Plaintiffs to believe that if they did not perform such labor or services, they would suffer serious harm." (Am. Compl. ¶ 22.)

These allegations are deficient.  They do not allege facts. They are simply a regurgitation of the statutes' wording woven together with conclusory statements and a generous use of "and/or." Accordingly, the Court grants Defendants' motion to dismiss Plaintiffs' third and fourth causes of action under the civil remedy provision, with leave to replead.  Whether it is ultimately sufficient to state a claim, it will only be so if sufficient factual allegations are made of the actual exercise of force, the threats made of the potential use of force, the physical restraints used or threatened, and what serious harm actually befell Plaintiffs or was threatened in sufficient detail to demonstrate a violation of the statutes relied upon.

**C.   Sex Discrimination Under Title VII**

Kotrous, Ottens and Robertson are the only named plaintiffs who bring a cause of action against Defendants for sex discrimination under Title VII.  Title VII makes it an unlawful employment practice "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment,

Page 11 - OPINION AND ORDER

because of such individual's . . . sex." 42 U.S.C. §
2000e-2(a)(1). "[A]n unlawful employment practice is established
when the complaining party demonstrates that . . . sex . . . was a
motivating factor for any employment practice, even though other
factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

"In order to state a claim for sex discrimination, [a]
[p]laintiff must establish that [he or] she was subject to adverse
employment action because of [his or] her sex." *Zamudio v. County
of Los Angeles*, No. CV 13-895, 2013 WL 3119178, at *5 (C.D. Cal.
May 16, 2013); *see also Jespersen v. Harrah's Operating Co., Inc.*,
392 F.3d 1076, 1079 (9th Cir. 2004) ("In order to prevail on a
Title VII disparate treatment sex discrimination claim, an employee
need only establish that, but for his or her sex, he or she would
have been treated differently.").

Defendants generally argue that the allegations pled in
support of Kotrous, Ottens and Robertson's Title VII sex
discrimination claim fail under Rule 8 and the facial plausibility
standard. The Court agrees. There is nothing in the amended
complaint describing any events that specifically occurred between
these three women and Ulrich. There are only general, conclusory
allegations pertaining to all seven women—all of whom claim that
one or more sex-related incidents took place during their
employment at unspecified dates, locations, etc. Accordingly, the
Court grants Defendants' motion to dismiss Kotrous, Ottens and
Robertson's sex discrimination claims under Title VII.

It should also be noted that Kostrous, Ottens and Robertson
fail to specify when they received their ninety-day right to sue
letters from the Equal Employment Opportunity Commission ("EEOC").

Page 12 - OPINION AND ORDER

They may either allege the date of that letter or attach it if they choose to amend this claim. *See generally Phi Cam Luong v. U.S. Bank Nat'l Ass'n*, No. 3:12-CV-01220-HU, 2013 WL 4431293, at *4 (D. Or. Aug. 14, 2013) (explaining that a plaintiff cannot evade dismissal by omitting the date of a right-to-sue letter from her complaint); *see also Boon v. Union Pac. R. Co.*, No. 3:10-cv-1044-HU, 2011 WL 7452732, at *5 (D. Or. Sept. 30, 2011).

**D.  Sex Discrimination Under ORS 659A.030**

All seven plaintiffs bring a cause of action against Defendants for sex discrimination under ORS 659A.030. Under the sex-based discrimination provision, it is an unlawful employment practice for an employer to discriminate against an individual in compensation or in terms, conditions or privileges of employment because of the individual's sex. OR. REV. STAT. § 659A.030(1)(b).

Plaintiffs' state law sex discrimination claim fails to give notice of each of the named plaintiff's claim and its basis.[3] The amended complaint is replete with general, conclusory allegations pertaining to all seven of the named plaintiffs, often times tied to together with the conjunction "and/or." In the Court's view, Plaintiffs' amended complaint alleges a possible claim for sex discrimination under ORS 659A.030, not a plausible claim. That is

---

[3] At minimum, Kotrous, Ottens and Robertson's state law sex discrimination claim fails for the reasons previously stated. *See Heller v. EBB Auto Co.*, 8 F.3d 1433, 1437 n.2 (9th Cir. 1993) (stating that a plaintiff's claim under ORS 659.030 "succeeds or fails with his Title VII claim" because courts construe Oregon's statutory counterpart as identical to Title VII); *Pullom v. U.S. Bakery*, 477 F. Supp. 2d 1093, 1100 (D. Or. 2007) ("Because ORS 659A.030 is modeled after Title VII, plaintiff's state law discrimination claim can be analyzed together with her federal discrimination claim.").

insufficient under *Twombly* and *Iqbal*.   Accordingly, the Court grants Defendants' motion to dismiss Plaintiffs' sex discrimination claim under ORS 659A.030, with leave to replead.   Any amendment must allege what happened to each plaintiff factually, a factual basis to conclude it was motivated by her gender, and resulted in an identified adverse action.

**E.   Wrongful Discharge**

Kotrous and Noonan are the only named plaintiffs who bring a cause of action against Defendants for wrongful discharge.   To prevail on a claim of wrongful discharge under Oregon law, a plaintiff "must establish a 'causal connection' between a protected activity and the discharge." *Estes v. Lewis & Clark Coll.*, 152 Or. App. 372, 381 (1998) (quoting *Shockey v. City of Portland*, 313 Or. 414, 442 (1992)).   A "causal connection" requires a showing that "the employee's protected activity [was] a 'substantial factor' in the motivation to discharge the employee." *Id.* (citation omitted). "[T]o be a substantial factor, the employer's wrongful purpose must have been a factor that made a difference in the discharge decision." *Id.* (internal quotation marks omitted).

Defendants move to dismiss Kotrous and Noonan's wrongful discharge claims on the ground that Title VII and ORS 659A.030 provide Kotrous and Noonan with adequate statutory remedies. Kotrous and Noonan respond by arguing that their wrongful discharge claims arise from conduct that is not actionable under Title VII and ORS 659A.030——namely, a claim for retaliation for refusing to engage in unlawful activity.

During oral argument, Defendants challenged Kotrous and Noonan's assertion that their wrongful discharge claims arise from

Page 14 - OPINION AND ORDER

1   conduct not actionable under Oregon law, citing ORS 659A.030(1)(f).

2   Cases from this district appear to support Defendants' position.

3   One example is *Gladfelder v. Pacific Courier Services, LLC*, No.

4   3:12-cv-02161-SI, 2013 WL 2318840 (D. Or. May 28, 2013), where

5   Judge Simon dismissed a plaintiff's wrongful discharge on similar

6   grounds, stating:

> [ORS] 659A.885(3) applies to claims brought under [ORS]
> 659A.030. . . . [I]t appears to the Court, and was
> confirmed by Plaintiff's counsel during oral argument,
> that: (1) Plaintiff's fourth claim (alleging sex
> discrimination) is brought under [ORS] 659A.030(1)(b)
> (discrimination in conditions of employment); (2)
> *Plaintiff's fifth claim (alleging retaliation) is brought*
> *under [ORS] 659A.030(1)(f) (discrimination based on*
> *opposition to an unlawful practice)*; and (3) Plaintiff's
> sixth claim (alleging hostile work environment) is
> brought under [ORS] 659A.030(1)(b) (discrimination in
> conditions of employment because maintaining a hostile
> work environment is a subset of discrimination). In
> addition, although Plaintiff does not expressly invoke
> [ORS] 659A.030(1)(g) (aiding and abetting liability) but
> refers only to [ORS] 659A generally, it appears to the
> Court that Plaintiff relies upon [ORS] 659A.030(1)(g) as
> the basis for [the sole owner and chairman of the
> board]'s personal liability, in addition to [the
> company]'s alleged liability as Plaintiff's employer. In
> light of [ORS] 659A.885(3) inclusion of [ORS] 659A.030
> among the provisions giving rise to a personal claim for
> compensatory and punitive damages as well as a right to
> trial by jury, [the sole owner co-defendant] is correct
> when he argues that Oregon statutory law provides an
> adequate remedy for Plaintiff's claimed injury and
> damages.
>
>                . . . .
>
>      Because Plaintiff has the right to a jury trial and
> the right to seek compensatory and punitive damages for
> her fourth, fifth, and sixth claims, Oregon law provides
> an adequate remedy, and her ninth claim, alleging
> wrongful constructive termination, is dismissed.

*Id.* at *3-4 (internal citations omitted) (emphasis added).

     Consistent with Judge Simon's decision in *Gladfelder*, the

Court grants Defendants' motion to dismiss Kotrous and Noonan's

wrongful discharge claim.

Page 15 - OPINION AND ORDER

**F.   Negligence**

"To state a claim for negligence under Oregon law, a plaintiff must allege a duty of care owed by the defendant, a breach of that duty, causation, and damages." *Nattell v. Curry County*, No. 1:11-cv-3161-CL, 2013 WL 5372539, at *8 (D. Or. Sept. 23, 2013). "If a plaintiff invokes a special status, relationship, or standard of conduct, that relationship may create, define, or limit the defendant's duty to the plaintiff." *Id.* Absent such circumstances, a defendant's liability for harm that his conduct causes is analyzed in terms of the concept of "reasonable foreseeability" or "general foreseeability." *Id.*

In their amended complaint, Plaintiffs allege that Defendants had a duty to their employees, including Plaintiffs, to: (1) "provide a safe workplace and to train, supervise and/or control its employees to prevent unlawful discrimination, harassment and/or retaliation in the workplace" (Am. Compl. ¶ 34), and (2) "promptly and effectively . . . discipline and/or terminate agents or employees they knew or should have known subjected employees, including Plaintiffs, to unlawful discrimination, harassment and/or retaliation in the workplace" (Am. Compl. ¶ 35).

Plaintiffs go on to allege that Defendants were negligent in one or more of the following particulars: (1) by failing to train employees, agents and/or managers not to unlawfully discriminate, harass and/or retaliate in the workplace; (2) failing to supervise their employees, agents and/or managers; (3) failing to properly discipline their employees, agents and/or managers; (4) failing to terminate the employment of any employees, agents and/or managers who Defendants knew or should have known engaged in unlawful

Page 16 - OPINION AND ORDER

conduct or failed to take the necessary preventative measures; and
(5) failing to prevent and/or remedy the aforementioned
discrimination, harassment and/or retaliation.

Defendants argue that the allegations pled in support of
Plaintiffs' negligence claim fail under Rule 8 and the facial
plausibility standard.  The Court agrees.  As with the other
claims, specific factual allegations for each plaintiff must be
made regarding what happened to them and how this conduct had come
to the corporate defendant and its managers' attention, but had not
resulted in any meaningful response.  That is to say, it's not
sufficient to allege whether directly, or by incorporation, that
generally all plaintiffs suffered a general list of harassing
situations.  While the employment relationship and the
discrimination statutes may be relied on to establish the duty to
Plaintiffs, general allegations the duty was breached is not
enough.  Nor is it sufficient to allege Defendants knew of the
problems without alleging a factual basis for the knowledge.
Accordingly, the Court grants Defendants' motion to dismiss
Plaintiffs' negligence claim, with leave to replead.

**G.    Breach of Good Faith and Fair Dealing**

Plaintiffs bring a cause of action against Defendant for
breach of the implied covenant of good faith and fair dealing under
Minnesota law.  Defendants move to dismiss the claim on the ground
that Minnesota law does not recognize an implied covenant of good
faith and fair dealing in employment contracts.  *See Brozo v.
Oracle Corp.*, 324 F.3d 661, 668 (8th Cir. 2003); *see also Bratton
v. Menard, Inc.*, 438 N.W. 2d 116, 118 (Minn. App. 1989).  Rather,

Page 17 - OPINION AND ORDER

absent a contrary contractual arrangement, employees serve at the will of their employer. *Id.*

Plaintiffs respond by relying on Minnesota cases where employee handbooks had modified the parties' employment contract to require good faith in discharge. Nothing in the amended complaint suggests the existence of an employment handbook, let alone a handbook that modified the at-will nature of their employment. Defendants' motion to dismiss Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is granted, with leave to replead in a manner consistent with Rule 11.

### IV. CONCLUSION

For the reasons stated, Defendants' motion (Docket No. 25) to dismiss is GRANTED. Plaintiffs are granted thirty days to replead.

Dated this  21st  day of March, 2014.

/s/ Dennis J. Hubel
_____
DENNIS J. HUBEL
United States Magistrate Judge