Philip R. Bennett, OSB #841687
pbennett@smithfreed.com
Chin See Ming, OSB #944945
cming@smithfreed.com
SMITH FREED & EBERHARD, P.C.
111 SW 5th Avenue, Suite 4300
Portland, OR  97204
Telephone:  (503) 227-2424
Facsimile:  (503) 227-2535
    Attorneys for Defendant
    William Ulrich

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **KELLY KELSEY, CHRISTINE KOTROUS, LINDA NOONAN, CHRISTINE OTTENS, RITA ROBERTSON, KARYN SUGGS and SHERRY WICKLER**, | Case No. 3:13-cv-00354-HU |
| Plaintiffs, | Defendant William Ulrich's **MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT AND SUPPORTING LEGAL MEMORANDUM; JOINDER IN DEFENDANT GOLDSTAR ESTATE BUYERS CORPORATION'S MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| v. | Pursuant to Fed. R. Civ. P. 12(b)(6) |
| **GOLDSTAR ESTATE BUYERS CORPORATION, a Minnesota corporation, and WILLIAM ULRICH, an individual**, | Request for Oral Argument |
| Defendants. | |

# TABLE OF CONTENTS

I.   MOTION ................................................................................................................... 1

II.  LEGAL MEMORANDUM ...................................................................................... 1

A.   Introduction ........................................................................................................ 1

B.   Allegations of Plaintiffs' Second Amended Complaint and Legal Standard .................. 2

C.   Discussion ........................................................................................................... 3

1.   Plaintiffs Fail to State a Claim for Involuntary Servitude and Trafficking in Persons under Oregon Law and Forced Labor and Sex Trafficking under Federal Law ............. 3

a.   The Oregon Statutes ................................................................................. 3

i.   Involuntary Servitude ......................................................................... 3

ii.  Trafficking in Persons ........................................................................ 4

b.   The Federal Statutes ................................................................................. 5

i.   Forced Labor ...................................................................................... 6

ii.  Sex Trafficking ................................................................................... 7

c.   Non-Consensual Sexual Activities Are Not Involuntary Servitudes for Purposes of Oregon Law or Forced Labor for Purposes of Federal Law ...................................... 9

i.   Oregon Involuntary Servitude and Trafficking in Persons ................. 9

ii.  Federal Forced Labor ........................................................................ 13

d.   Plaintiffs Fail to Plausibly Allege that Ulrich Forced Them to Perform Labor or Services or to Engage in Commercial Sex ............................................................... 14

i.   Kelsey .............................................................................................. 17

ii.  Kotrous .............................................................................................. 18

iii. Noonan .............................................................................................. 18

iv.  Ottens .............................................................................................. 19

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

       v.     Robertson ........................................................................................ 19

      vi.    Suggs ............................................................................................. 20

     vii.   Wickler .......................................................................................... 20

   2.     Plaintiffs Fail to State a Claim for Negligence ........................................ 21

    a.    Plaintiffs' Negligence Claims Are Barred by the Exclusive Liability Provision of the Workers' Compensation Law ..................................................................... 21

    b.    Alternatively, Noonan's Negligence Claim is Time-Barred .................................. 22

 D.    Conclusion .......................................................................................... 23

JOINDER ............................................................................................... 24

268178

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

# TABLE OF AUTHORITIES

**Cases**

*Ditullio v. Boehm*, 662 F.3d 1091 (9th Cir. 2011) ............................................................. 6

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568 (1988) ............................................................................................................................ 13

*Gaston v. Parsons*, 318 Or. 247, 864 P.2d 1319 (1994) ..................................................... 23

*Headley v. Church of Scientology Int'l*, 687 F.3d 1173 (9th Cir. 2012) .......................... 15

*Oregon Life & Health Ins. Guar. Ass'n v. Inter-Reg'l Fin. Grp., Inc.*, 156 Or. App. 485, 967 P.2d 880 (1998) .................................................................................................................... 23

*Pearson v. Reynolds Sch. Dist. No. 7*, 3:12-CV-01146-HU, 2014 WL 715510 (D. Or. Feb. 24, 2014) ............................................................................................................................. 22

*PGE v. Bureau of Labor and Industries,* 317 Or. 606, 859 P.2d 1143 (1993) ........................ 9, 10

*Salem Sand & Gravel Co. v. City of Salem,* 260 Or. 630, 492 P.2d 271 (1971) .......................... 23

*State v. Gaines,* 346 Or. 160, 206 P.3d 1042 (2009) ...................................................... 9

*United States v. Dann*, 652 F.3d 1160 (9th Cir. 2011) ............................................. 15, 16

*United States v. Morrison*, 529 U.S. 598 (2000) ...................................................... 13, 14

*United States v. Todd*, 627 F.3d 329 (9th Cir. 2010) ................................................. 16

*Verizon NW., Inc. v. Main St. Dev., Inc.*, 693 F. Supp. 2d 1265 (D. Or. 2010) ............................ 9

**Statutes**

18 U.S.C. § 1589 ............................................................................................ 5, 6, 7, 15

18 U.S.C. § 1591 ............................................................................................ 5, 7, 8, 16

18 U.S.C. § 1595 ............................................................................................ 1, 8, 13, 14

42 U.S.C. § 13981 ........................................................................................... 13, 14

ORS 12.110 .................................................................................................... 22

ORS 161.015 ................................................................................................... 4

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon 97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

ORS 163.261 ............................................................................................... 4, 10

ORS 163.263 ..................................................................................................... 3

ORS 163.264 ..................................................................................................... 3

ORS 163.266 ...................................................................................... 3, 4, 5, 10

ORS 163.355-ORS 163.375 ............................................................................ 11

ORS 163.385-ORS 163.405 ............................................................................ 11

ORS 163.408-ORS 163.411 ............................................................................ 11

ORS 163.415-ORS 163.427 ............................................................................ 11

ORS 174.010 ............................................................................................ 11, 12

ORS 181.805 .................................................................................................. 11

ORS 30.867 ................................................................................................... 1, 5

ORS 656.018 ............................................................................................ 21, 22

**Other**

Staff Measure Summary, Oregon Joint Committee on Ways and Means, S.B. 578, June 20, 2007 ................................................................................................................. 12

Staff Measure Summary, Oregon Senate Committee on Judiciary, S.B. 578, April 9, 2007 ....... 12

**Rules**

Fed. R. Civ. P. 12(b)(6) ..................................................................................... 1

LR 7-1(a)(1)(A) ................................................................................................. 1

**Constitutional Provisions**

U.S. Const. amend. XIV, § 5 ........................................................................... 14

**Laws**

Or. Laws 2007, ch. 811 ................................................................................. 3, 4

Or. Laws 2013, ch. 720 ................................................................................... 4

Page v – ULRICH'S MOTION TO DISMISS SECOND AMENDED COMPLAINT      268178

Trafficking Victims Protection Act of 2000, Pub. L. No. 106–386, 114 Stat 1466 ...................... 6

Violence Against Women Act of 1994, Pub. L. No. 103–322, 108 Stat. 1796 ........................... 13

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

# I.   MOTION

Defendant William Ulrich ("Ulrich") respectfully moves, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss with prejudice the following claims brought against Ulrich by Plaintiffs Kelly Kelsey ("Kelsey"), Christine Kotrous ("Kotrous"), Linda Noonan ("Noonan"), Christine Ottens ("Ottens"), Rita Robertson ("Robertson"), Karyn Suggs ("Suggs") and Sherry Wickler ("Wickler ") (Kelsey, Kotrous, Noonan, Ottens, Robertson, Suggs, and Wickler, collectively, "Plaintiffs") in their Second Amended Complaint ("SAC"), for failure to state a claim:

1.   Involuntary Servitude under ORS 30.867 (Claim One);

2.   Trafficking in Persons under ORS 30.867 (Claim Two);

3.   Sex Trafficking under 18 U.S.C. § 1595 (Claim Three);

4.   Forced Labor under 18 U.S.C. § 1595 (Claim Four)[1];

5.   Negligence (Claim Seven).

The undersigned attorney for Ulrich certifies pursuant to LR 7-1(a)(1)(A) that the parties made a good faith effort through telephone conferences to resolve the dispute and have been unable to do so.  This Motion is supported by the Legal Memorandum below.

# II.   LEGAL MEMORANDUM

## A.   Introduction

Plaintiffs seek to shoehorn what are straightforward employment claims, albeit ones based on egregious factual allegations, into claims that are based on state and federal criminal laws against modern-day slavery.  The Court should reject their attempts to do so.  Sexual activities are not "services" or "labor" for purposes of the Oregon involuntary servitude or the

---

[1] Noonan does not assert Claim Four.

Page 1 –   ULRICH'S MOTION TO DISMISS SECOND AMENDED COMPLAINT   268178

federal forced labor statute.  To construe the statutes otherwise would be to bring nonconsensual sex within the scope of the statutes.  This would render Oregon's involuntary servitude and non-consensual sex crime statutes redundant of each other, in violation of Oregon laws of statutory construction.  It would also place the constitutionality of the federal forced labor statute into question.  The Court should, therefore, dismiss with prejudice Plaintiffs' Oregon involuntary servitude and federal forced labor claims to the extent they are based on sexual activities.  In addition, the Court should dismiss with prejudice Plaintiffs' Oregon trafficking in persons claims, to that same extent, as involuntary servitude is a required element of a trafficking in persons claim.

The Court should also dismiss with prejudice Plaintiffs' Oregon involuntary servitude and trafficking in persons claims, as well as their federal forced labor and sex trafficking claims, for failure to plausibly allege that Ulrich compelled them to work or engage in commercial sex against their will.  The well-plead facts do not show they were forced to work.  To the contrary, they feared losing their jobs.  The well-plead facts also do not show that they were forced or coerced, or that attempts were made to force or coerce them, into accepting the alleged offers of money for sex.

Finally, the Court should also dismiss with prejudice Plaintiffs' claims for negligence.  Those claims are barred by the workers' compensation law's exclusive remedy provision.  Alternatively, the Court should dismiss with prejudice Noonan's negligence claim as time-barred under the applicable statute of limitations.

**B.**    **Allegations of Plaintiffs' Second Amended Complaint and Legal Standard**

In the interest of brevity, Ulrich adopts by reference Parts I (Legal Standard for Motion to Dismiss) and II (Allegations) from Goldstar's Motion to Dismiss (Doc. 46).

Page 2 –    ULRICH'S MOTION TO DISMISS SECOND AMENDED COMPLAINT    268178

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

**C.    Discussion**

**1.    Plaintiffs Fail to State a Claim for Involuntary Servitude and Trafficking in Persons under Oregon Law and Forced Labor and Sex Trafficking under Federal Law**

**a.    The Oregon Statutes**

Plaintiffs assert claims for violation of Oregon's laws against involuntary servitude,

ORS 163.263-ORS 163.264 (Claim One), and trafficking in persons, ORS 163.266 (Claim Two).

SAC ¶¶ 67-148.  The Oregon Legislature enacted both offenses in 2007 in a bill "[r]elating to

human trafficking."  Or. Laws 2007, ch. 811.[2]

**i.    Involuntary Servitude**

Under ORS 163.263(1), a person commits involuntary servitude in the second degree:

If the person knowingly and without lawful authority forces or attempts to force the other person to engage in services by:

(a) Abusing or threatening to abuse the law or legal process;

(b) Destroying, concealing, removing, confiscating or possessing an actual or purported passport or immigration document or another actual or purported government identification document of a person;

(c) Threatening to report a person to a government agency for the purpose of arrest or deportation;

(d) Threatening to collect an unlawful debt; or

(e) Instilling in the other person a fear that the actor will withhold from the other person the necessities of life, including but not limited to lodging, food and clothing.

Under ORS 163.264(1), a person commits involuntary servitude in the first degree:

if the person knowingly and without lawful authority forces or attempts to force

---

[2] Or. Laws 2007, ch. 811, may be found at https://www.oregonlegislature.gov/bills_laws/lawsstatutes/2007orLaw0811.html (last visited May 27, 2014).

Page 3 –    ULRICH'S MOTION TO DISMISS SECOND AMENDED COMPLAINT    268178

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

the other person to engage in services by:

>        (a) Causing or threatening to cause the death of or serious physical injury to a person; or

>        (b) Physically restraining or threatening to physically restrain a person.

"Services" is defined, under ORS 163.261, as "activities performed by one person under the supervision or for the benefit of another person," while "serious physical injury" is defined, under ORS 161.015(8), as "physical injury which creates a substantial risk of death or which causes serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ."

## ii.    Trafficking in Persons

The statute governing trafficking in persons is codified at ORS 163.266.  As stated above, ORS 163.266 was enacted in 2007.  Or. Laws 2007, ch. 811.  The state legislature amended the statute in 2013, to add sex trafficking to the scope of the statute.  Or. Laws 2013, ch. 720, § 1.[3] The amendment became effective on August 1, 2013, *id.,* after the latest date the events complained of by Plaintiffs could have occurred, November 2012, which is the latest date that any of the Plaintiffs allege they were employed by Defendants.  SAC ¶ 19.  The amendment also does not provide that it is retroactive.  Therefore, the 2013 amendment does not apply to Ulrich. *See Lovinger v. Lane County.*, 206 Or. App. 557, 567, 138 P.3d 51 (2006) ("[I]n the absence of any direct evidence of the legislature's intentions, the courts presume that statutes that are 'substantive' in nature are to apply prospectively.  In the context of retroactivity analysis, a

---

[3] Or. Laws 2013, ch. 720 may be found at
https://www.oregonlegislature.gov/bills_laws/lawsstatutes/2013orLaw0720.pdf (last visited May 27, 2014).

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

statute is 'substantive' if it 'modif[ies] a substantive right or duty." (internal quotation marks and citations omitted; second alteration in original)).  Unless indicated otherwise, this memo will refer to the 2007 version of ORS 163.266.

Under ORS 163.266, a person commits the crime of trafficking in persons in one of two ways.  First, under ORS 163.266(1)(a), a person commits trafficking in persons:

> if the person knowingly . . . [r]ecruits, entices, harbors, transports, provides or obtains by any means, or attempts to recruit, entice, harbor, transport, provide or obtain by any means, another person and . . . [t]he person knows that the other person will be subjected to involuntary servitude as described in ORS 163.263 or 163.264[.]

Second, under ORS 163.266(1)(b), a person also commits trafficking in persons "if the person . . . [k]nowingly benefits financially or receives something of value from participation in a venture that involves an act prohibited by this section or ORS 163.263 or 163.264 [*i.e.,* involuntary servitude]."

ORS 30.867 authorizes civil actions for the above discussed offenses.[4]  Oregon appellate courts have yet to construe these statutes.

### b.    The Federal Statutes

Plaintiffs also assert claims under the federal Trafficking Victims Protection Act ("TVPA") for violations of the laws against sex trafficking, 18 U.S.C. § 1591 (Claim Three), and, except for Noonan, forced labor, 18 U.S.C. § 1589 (Claim Four).  The TVPA's expressed

---

[4] ORS 30.867 provides:

> (1) Irrespective of any criminal prosecution or the result of a criminal prosecution, a person injured by a violation of ORS 163.263, 163.264 or 163.266 may bring a civil action for damages against a person whose actions are unlawful under ORS 163.263, 163.264 or 163.266.

Page 5 –    ULRICH'S MOTION TO DISMISS SECOND AMENDED COMPLAINT    268178

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

purpose is to "combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims." *Ditullio v. Boehm*, 662 F.3d 1091, 1094 (9th Cir. 2011) (quoting Pub. L. No. 106–386, § 102(a), 114 Stat 1466 (2000)).  In passing the Act, Congress found that, "[t]rafficking in persons is a modern form of slavery," and that "[a]t least 700,000 persons annually, primarily women and children, are trafficked within or across international borders" and "[a]pproximately 50,000 women and children are trafficked into the United States each year." Pub. L. No. 106–386, § 102(b)(1), 114 Stat at 1466.  "Many of these persons are trafficked into the international sex trade, often by force, fraud, or coercion," but [t]rafficking in persons is not limited to the sex industry." *Id.* § 102(b)(2)-(3), 114 Stat at 1466.  In addition to the sex industry, trafficking also "includes forced labor and involves significant violations of labor, public health, and human rights standards worldwide." *Id.* § 102(b)(3), 114 Stat at 1466.

### i.    Forced Labor

The forced labor statute, 18 U.S.C. § 1589, provides:

(a) Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means—

(1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;

(2) by means of serious harm or threats of serious harm to that person or another person;

(3) by means of the abuse or threatened abuse of law or legal process; or

(4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint,

Page 6 –   ULRICH'S MOTION TO DISMISS SECOND AMENDED COMPLAINT    268178

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

shall be punished as provided under subsection (d).

> (b) Whoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means, shall be punished as provided in subsection (d).

The term "abuse or threatened abuse of law or legal process" is defined, under 18 U.S.C.

§ 1589(c)(1), as:

> the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

The term "serious harm" is defined, under 18 U.S.C. § 1589(c)(2), as:

> any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

### ii.    Sex Trafficking

The sex trafficking statute, 18 U.S.C. § 1591, pertinently provides:

> (a) Whoever knowingly—

> > (1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person; or

> > (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

> knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, . . . shall be punished as provided in subsection (b).

Page 7 –    ULRICH'S MOTION TO DISMISS SECOND AMENDED COMPLAINT     268178

The terms "abuse or threatened abuse of law or legal process," "coercion," "commercial sex act,"

and "serious harm," are defined under 18 U.S.C. § 1591(e), as follows:

(1) The term "abuse or threatened abuse of law or legal process" means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

(2) The term "coercion" means—

(A) threats of serious harm to or physical restraint against any person;

(B) any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or

(C) the abuse or threatened abuse of law or the legal process.

(3) The term "commercial sex act" means any sex act, on account of which anything of value is given to or received by any person.

(4) The term "serious harm" means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm.

Civil actions for violations of the forced labor and sex trafficking statutes are authorized

pursuant to 18 U.S.C. § 1595.[5]

---

[5] 18 U.S.C. § 1595 provides:

(a) An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees

Page 8 –    ULRICH'S MOTION TO DISMISS SECOND AMENDED COMPLAINT        268178

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

>      **c.**      **Non-Consensual Sexual Activities Are Not Involuntary Servitudes for Purposes of Oregon Law or Forced Labor for Purposes of Federal Law**

Sex is not "labor" or "service" for purposes of the Oregon involuntary servitude laws and the federal forced labor statute.  Otherwise, rape and other nonconsensual sex would automatically qualify as Oregon involuntary servitudes or federal forced labor.  This would render Oregon's involuntary servitude and non-consensual sex crime statutes, including rape, redundant of each other.  It would also place the constitutionality of the federal forced labor statute into question.  This memorandum will discuss the state and federal laws in turn, starting with the state statutes.

>      **i.**      **Oregon Involuntary Servitude and Trafficking in Persons**

In *Verizon NW., Inc. v. Main St. Dev., Inc.*, 693 F. Supp. 2d 1265, 1272 (D. Or. 2010), this Court recognized Oregon's method of statutory interpretation as follows:

> Traditionally, Oregon courts have followed a methodology for interpreting statutes "outlined in *PGE v. Bureau of Labor and Industries,* 317 Or. 606, 610–12, 859 P.2d 1143 (1993)."  This methodology
>
>> entails three sequential levels of analysis to determine the legislature's intent.  First, the court examines the text and context of the statute.  *Id.* at 610–11, 859 P.2d 1143.  If the legislature's intent is obvious from that first level of analysis, "further inquiry is unnecessary."  *Id.* at 611, 859 P.2d 1143.  "If, but only if," the legislature's intent is not obvious from the text and context inquiry, "the court will then move to the second level, which is to consider legislative history[.]"  *Id.* at 611, 859 P.2d 1143.  If the legislature's intent remains unclear after examining legislative history, "the court may resort to general maxims of statutory construction to aid in resolving the remaining uncertainty."  *Id.* at 612, 859 P.2d 1143.
>
> *State v. Gaines,* 346 Or. 160, 164–65, 206 P.3d 1042 (2009).  In 2009, however, the Oregon Supreme Court concluded:
>
>> [I]n light of the 2001 amendments to ORS 174.020, the appropriate

Page 9 –    ULRICH'S MOTION TO DISMISS SECOND AMENDED COMPLAINT        268178

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

methodology for interpreting a statute is as follows.  The first step
remains an examination of text and context.  *PGE,* 317 Or. at 610–
11, 859 P.2d 1143.  But, contrary to this court's pronouncement in
*PGE,* we no longer will require an ambiguity in the text of a statute
as a necessary predicate to the second step—consideration of
pertinent legislative history that a party may proffer.  Instead, a
party is free to proffer legislative history to the court, and the court
will consult it after examining text and context, even if the court
does not perceive an ambiguity in the statute's text, where that
legislative history appears useful to the court's analysis.  However,
the extent of the court's consideration of that history, and the
evaluative weight that the court gives it, is for the court to
determine.  The third, and final step, of the interpretative
methodology is unchanged.  If the legislature's intent remains
unclear after examining text, context, and legislative history, the
court may resort to general maxims of statutory construction to aid
in resolving the remaining uncertainty.

*Id.* at 171–72, 206 P.3d 1042.

Here, the text of Oregon's involuntary servitude statutes defines "services" as "activities

performed by one person under the supervision or for the benefit of another person."

ORS 163.261.  The context of these statutes includes the trafficking in persons statute, first

enacted in the same legislative bill.  The trafficking in persons statute today encompasses, but

also, differentiates between "involuntary servitude" and "commercial sex."  As mentioned above,

the Oregon legislature in 2013 added sex trafficking to the scope of the scope of ORS 163.266,

when it has previously only included trafficking persons for involuntary servitude within its

scope.  ORS 163.266 today provides:

(1) A person commits the crime of trafficking in persons if the person
knowingly recruits, entices, harbors, transports, provides or obtains by any means,
or attempts to recruit, entice, harbor, transport, provide or obtain by any means,
another person and:

(a) The person knows that the other person will be subjected to
*involuntary servitude* as described in ORS 163.263 or 163.264;

(b) The person knows or recklessly disregards the fact that *force,*

Page 10 –  ULRICH'S MOTION TO DISMISS SECOND AMENDED COMPLAINT    268178

*fraud or coercion* will be used to cause the other person to engage in a *commercial sex act*; or

(c) The person knows or recklessly disregards the fact that the other person is under 15 years of age and will be used in a *commercial sex act*.

(emphasis added).  The statue thus differentiates between forced service and forced sex. Further, only trafficking in persons involving commercial sex under subsections (1)(b) and (1)(c) are "sex crimes" for sex offender registration and other purposes in Oregon.  ORS 181.805(5)(u) ("'Sex crime' means . . . [t]rafficking in persons as described in ORS 163.266 (1)(b) or (c).").  Trafficking for involuntary servitude is, thus, *not* a "sex crime."  Nor is involuntary servitude. *See* ORS 181.805.  This context supports a conclusion that "services," for purposes of the involuntary servitude statutes, is different from, and does not include, sex.

The context of Oregon's involuntary servitude statutes also includes the state's statutes against non-consensual sex, including rape, ORS 163.355-ORS 163.375, sodomy, ORS 163.385-ORS 163.405, unlawful sexual penetration, ORS 163.408-ORS 163.411, and sexual abuse, ORS 163.415-ORS 163.427.  If "services" is defined to include sexual activities for purposes of the involuntary servitude statutes, those statutes would prohibit a person from forcing another person to engage in sexual activities.  That definition would render the involuntary servitude and the non-consensual sex statutes redundant of each other, as they will have the same effect, in violation of ORS 174.010 ("In the construction of a statute, . . . where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all.").  Therefore, "services," for purposes of the involuntary servitude statutes, cannot include sex.

The same distinction between "service" and "sex is found in the legislative history of the

Page 11 –  ULRICH'S MOTION TO DISMISS SECOND AMENDED COMPLAINT          268178

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

involuntary servitude and trafficking in persons statutes.  The Oregon legislature's purpose was

to combat human trafficking, the victims of which the legislature recognized "are subjected to

force, fraud, or coercion, for the purpose of sexual exploitation *or* forced labor."  Staff Measure

Summary, Oregon Joint Committee on Ways and Means, S.B. 578, June 20, 2007 [hereinafter

"Joint Ways and Means Committee Measure Summary"]; Staff Measure Summary, Oregon

Senate Committee on Judiciary, S.B. 578, April 9, 2007 [hereinafter "Senate Judiciary

Committee Measure Summary"].[6]  These distinctions support a construction of "service" that

does not include sex; otherwise, they would be distinctions without a difference.  *See* ORS

174.010 (quoted above).  Plaintiffs' claims against Ulrich for involuntary servitude under Oregon

law are all based on allegations that Ulrich forced them to engage in sexually-related activities.

SAC ¶¶ 68-69, 76-77, 84, 91, 98-99, 106-07, & 114-15.  The court should dismiss those claims

with prejudice.

In addition, Plaintiffs' claims for trafficking in persons under the applicable 2007 Oregon

law are all based on allegations that Ulrich recruited, hired, transported and harbored them with

the knowledge they would be subjected to involuntary servitude, or that Ulrich benefitted

financially or received something of value from their involuntary servitude.  *Id.* ¶¶ 122-24, 126-

28, 130-32, 134-36, 138-40, 142-43, & 136-48.  Because Plaintiffs' claims for involuntary

servitude fail as a matter of law, their claims for trafficking in persons necessarily fail as well,

---

[6] A copy of each of those summaries may be found at
https://olis.leg.state.or.us/liz/2007R1/Downloads/MeasureAnalysisDocument/5261 (last visited
May 27, 2014) and
https://olis.leg.state.or.us/liz/2007R1/Downloads/MeasureAnalysisDocument/5260 (last visited
May 27, 2014).

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

and should be dismissed with prejudice.

ii.   **Federal Forced Labor**

The phrase "labor or services" also should not be construed to include sexual activities for purpose of the federal forced labor statute.  The U.S. Supreme Court has instructed that courts should construe a statute to avoid "serious constitutional problems" unless "such construction is plainly contrary to the intent of Congress."  *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 575 (1988).  If "labor or services" is construed to include sexual activities for purposes of the federal forced labor statute, that construction would not only make rape, and other non-consensual sexual activities, into federal crimes, but also open federal courts to civil actions to remedy those crimes, by virtue of 18 U.S.C. § 1595, which allows for civil actions for violations of the forced labor statute. Congress is without power to enact such a remedy.  The controlling case is *United States v. Morrison*, 529 U.S. 598 (2000).

The petitioner in *Morrison* brought suit, under 42 U.S.C. § 13981, against two respondents who had allegedly raped her.  529 U.S. at 604.  Section 13981 was a part of the Violence Against Women Act of 1994, Pub. L. No. 103–322, 108 Stat. 1796, and provided that "[a]ll persons within the United States shall have the right to be free from crimes of violence motivated by gender."  42 U.S.C. § 13981(b).  It also provided victims with civil remedies against the perpetrators of such crimes:

> A person (including a person who acts under color of any statute, ordinance, regulation, custom, or usage of any State) who commits a crime of violence motivated by gender and thus deprives another of the right declared in subsection (b) of this section shall be liable to the party injured, in an action for the recovery of compensatory and punitive damages, injunctive and declaratory relief, and such other relief as a court may deem appropriate.

Page 13 –   ULRICH'S MOTION TO DISMISS SECOND AMENDED COMPLAINT      268178

42 U.S.C. § 13981(c). The *Morrison* Court held that Congress did not have the power to enact § 13981. More specifically, the Court held that the Commerce Clause did not provide Congress with the requisite power because, "[g]ender-motivated crimes of violence are not, in any sense of the phrase, economic activity." *Morrison*, 529 U.S. at 613. The Court also held that § 5 of the Fourteenth Amendment[7] did not provide Congress with the requisite power either, because that section applies to state action only, whereas § 13981 "is directed not at any State or state actor, but at individuals who have committed criminal acts motivated by gender bias." *Id.* at 626.

Following *Morrison,* sexual activities, without more, are *not* economic activities. If "labor or services" within the meaning of the federal forced labor statute is construed to include such activities, nonconsensual sexual activities would be subject to the prohibition of that statute and to the civil remedies available under 18 U.S.C. § 1595. Under *Morrison,* such a construction will place those statutes outside of Congress' Commerce clause powers. It will also place those statutes outside of Congress' powers under § 5 of the Fourteenth Amendment, as those statutes are not directed at any State or state actor, but at individual perpetrators. Under the principle of constitutional avoidance, this Court may not construe "labor or services" to include sexual activities. The Court should, therefore, dismiss Plaintiffs' claims under the forced labor statute with prejudice, to the extent they base those claims on allegations that Ulrich forced them to engage in sexual activities.

### d.    Plaintiffs Fail to Plausibly Allege that Ulrich Forced Them to Perform Labor or Services or to Engage in Commercial Sex

The Court should also dismiss Plaintiffs' claims for involuntary servitude and trafficking

---

[7] Section 5 of the Fourteenth Amendment provides that that Congress "shall have power to enforce, by appropriate legislation, the provisions of this article."

Page 14 –  ULRICH'S MOTION TO DISMISS SECOND AMENDED COMPLAINT          268178

in persons under Oregon law and forced labor under federal law, as well as their claims for sex

trafficking under federal law, on the ground that they have failed to plausibly allege that Ulrich

compelled them to perform labor or services or engage in commercial sex though the means that

are proscribed in each of the relevant statutes.

Oregon courts have yet to construe the state's involuntary servitude and trafficking in

persons statutes.  However, the Ninth Circuit has recognized that the federal forced labor law

"bars an employer from obtaining another's labor 'by means of' force, physical restraint, serious

harm, threats, or an improper scheme."  *Headley v. Church of Scientology Int'l*, 687 F.3d 1173,

1179 (9th Cir. 2012).  A person is "guilty of forced labor if he intends to cause a person in his

employ to believe that if she does not continue to work, she will suffer the type of serious

harm—physical or nonphysical, including psychological, financial, reputation harm—that would

compel someone in her circumstances to continue working to avoid that harm."  *United States v.*

*Dann*, 652 F.3d 1160, 1169-70 (9th Cir. 2011).  The "threat of harm," considered from the

"vantage point of a reasonable person in the place of the victim, must be 'sufficiently serious' to

compel that person to remain.  *Id.* at 1170.  In addition, the employer must have "intended to

cause the victim to believe that she would suffer serious harm—from the vantage point of the

victim—if she did not continue to work.  *Id.*  Thus, the "linchpin of the serious harm analysis

under § 1589 is not just that serious harm was threatened but that the employer intended the

victim to believe that such harm would befall her."  *Id.*  In the absence of such a threat, a person

who is free to stop working and has not suffered forced labor.  *Headley*, 687 F.3d at 1180

(plaintiffs who had "innumerable opportunities to leave" did not suffered forced labor).  "Serious

harm" or the fear of it does not encompass, as is essentially alleged by Plaintiffs here, simply

Page 15 –  ULRICH'S MOTION TO DISMISS SECOND AMENDED COMPLAINT    268178

losing one's employment and the benefits of that employment.  If it did, every case involving termination or the fear of termination could potentially become a trafficking case.

As pertinent here, the federal sex trafficking statute requires proof that the perpetrator knew that "force, fraud, or coercion . . . *will be used* to cause the person to engage in a commercial sex act."  *United States v. Todd*, 627 F.3d 329, 336 (9th Cir. 2010) (Smith, J., concurring) (emphasis in original).  "Coercion" is defined in the statute to include "serious harm," which is in turn, defined identically to the same phrase in the forced labor statute.  *Compare* 18 U.S.C. § 1591(e)(4) *with* 18 U.S.C. § 1591(c)(2).  The above discussed analysis of the forced labor statute in *Dann*, therefore, applies equally to the sex trafficking statute.  To paraphrase *Dann*, for purposes of the sex trafficking statute, the threat of harm, considered from the vantage point of a reasonable person in the place of the victim, must be "sufficiently serious" to compel that person to engage in commercial sex, and the perpetrator must have intended to cause the victim to believe that she would suffer serious harm—from the vantage point of the victim—if she did not engage in commercial sex.

Here, none of the Plaintiffs have presented facts that plausibly show that means of serious harm were used to compel them to *stay* on the job at Goldstar or to engage in commercial sex. They may have allegedly been subjected to horrible working conditions, but a careful consideration of the well-plead non-conclusory facts that they have alleged, show that no force was used to make them stay on the job.  Indeed, many of them they feared losing their jobs. Ulrich may have allegedly offered some of them money for sex, but none of them allege that he forced or coerced, or tried to force or coerce, them into accepting.   Indeed, an offer of cash is an inducement, which is the very opposite of coercion.  This memo discusses each Plaintiffs'

Page 16 –  ULRICH'S MOTION TO DISMISS SECOND AMENDED COMPLAINT      268178

specific allegations in turn.

i.    **Kelsey**

Kelsey states that Defendants forced her to perform labor and service by use of physical force or harm or by physical restraint, but offers no facts in support of those conclusory allegations.  SAC ¶¶ 70(a) & 192(a)-(b).  She alleges she was threatened with eviction from her hotel rooms, "potentially" stranding her in unfamiliar cities (in the United States), refused food, and restricted in the times she could eat, what she could eat and required to consume alcohol.  *Id.* § ¶¶ 70(b) & (d)-(e) & 192(g).  None of this rises to the level of serious harm that could compel a reasonable person to stay on the job, as she fails to allege facts that show she was unable to simply go home or buy her own food or how being restricted in eating times or drinking alcohol compelled her to stay at Goldstar.  She also alleges that Goldstar and Ulrich instilled a fear in her that they would withhold payment for her legitimate services and threatened her with adverse employment action and financial harm.  *Id.* § ¶¶ 70(c) & 192(c)-(d).  While these are grounds for an employment claim, she alleges no facts to show how they were used to keep her employed *against* her will.  She further alleges that she was placed under unrelenting pressure to participate in Ulrich's "sexual escapades" and subjected to psychological abuse.  *Id.* §¶¶ 192(e)-(f).  Again, there is a lack of well-plead facts that show how these alleged acts compelled her to perform labor and services for Goldstar.  The fact of the matter is that she was not working at Goldstar against her will—she even alleges that before she left Goldstar's employ, she had asked the human resources manager why Goldstar was diverting her work to others and had sought meetings with Ulrich to discuss her job duties.  *Id.* ¶ 17.

With respect to sex trafficking, she alleges that at one point Ulrich offered her "$100,000 to be his 'girlfriend' for the year," and on other occasions, he had told her that "she could make

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

some good money if she wanted, which [she] understood meant receiving payment for sex."
*Id*. 13-14. She does not allege, however, that he forced or coerced her in accepting his offers or
that he made threats of serious harm if she did not accept.

### ii.    Kotrous

Kotrous alleges that Ulrich sexually harassed her throughout her employment at Goldstar.
SAC ¶ 20. However, she fails to allege that she was under any threats of serious harm that
compelled her to stay at Goldstar. *See id. ¶¶* 19-29. She had her own home, *id*. ¶ 27, but kept
returning to Goldstar's shows around the country when she had the opportunity to simply not
attend. *Id. ¶¶* 21 (Detroit), 23 (Delaware) & 25 (Oakland). She alleges she had a sexual
relationship with Ulrich which he maintained through violence and coercion. *Id.* ¶ 20. However,
she does not allege that she received anything of value for having sex with him. *See id. ¶¶* 19-
29. And, as discussed, she could have simply not attended Goldstar's shows and avoided him
altogether. She does not allege what serious harm she would have suffered if she had done so.
She has not plead plausible state claims of involuntary servitude or trafficking in persons or
federal claims of forced labor or sex trafficking.

### iii.    Noonan

Noonan alleges that Goldstar and Ulrich forced her to work by instilling in her a fear that
they would evict "her from the hotel room she relied on for shelter, thereby leaving her homeless
and stranded in an unfamiliar city [in the United States] without resources" and refuse "to allow
her to eat, including denying her food when she was hungry." SAC ¶ 85. However, she fails to
allege facts that explain how these actions compelled her to work against her will. The facts she
actually plead are that she wanted to work, not that she was forced to work: she had "got down
on her knees and begged Defendant Ulrich to let her keep her job." *Id*. 33. She does not allege

Page 18 – ULRICH'S MOTION TO DISMISS SECOND AMENDED COMPLAINT        268178

that Ulrich offered her money for sex, or that he had forced or coerced, or tried to force or coerce, her into accepting.  She has, accordingly, failed to state plausible claims of involuntary servitude and trafficking in persons under state law and claims of forced labor and sex trafficking under federal law.

### iv.    Ottens

Ottens alleges she agreed to be his "girlfriend" while employed at Goldstar and that he had forced himself on her sexually.  SAC ¶¶ 37-38 & 40.  However, she fails to allege that she was forced or threatened with force to keep her working at Goldstar against her will.  Instead, she pled the opposite:  she was "desperate for a job."  *Id.* ¶ 38.  She does not allege that Ulrich offered her money for sex, or that he had forced or coerced, or tried to force or coerce, her into accepting.  She does not state plausible claims of involuntary servitude or trafficking in persons under Oregon law or claims of forced labor or sex trafficking under federal law.

### v.    Robertson

Robertson alleges that Goldstar and Ulrich obtained her labor and services by threatening to leave "her homeless and stranded in an unfamiliar city [in the United States]." SAC ¶ 100(a).  This fails to rise to the level of serious harm that could compel a reasonable person to stay on the job, as she fails to allege facts that show she was unable to simply go home.  She also alleges they threatened to withhold payment for legitimate services and with adverse employment action and financial harm.  *Id.* § ¶¶ 100(b) & 198(a)-(b).  However, she alleges no facts to show how they were used to keep her employed against her will.  She further alleges that she was placed under unrelenting pressure to participate in Ulrich's "sexual escapades" and subjected to psychological abuse.  *Id.* §¶¶ 198(c)-(d).  Again, there is a lack of well-plead facts that show how these alleged acts compelled her to perform labor and services for Goldstar.  She attended

Page 19 –  ULRICH'S MOTION TO DISMISS SECOND AMENDED COMPLAINT       268178

multiple shows even when she could have stayed home. *Id*. ¶¶ 42 (St. Louis), 44 (Bothell, Washington) & 46 (a "different Goldstar trip."). She fails to allege facts that show that Ulrich offered her money or other items of value for sex, or that he had forced or coerced, or tried to force or coerce, her into accepting. Therefore, she does not state plausible claims of involuntary servitude or trafficking in persons under Oregon law or claims of forced labor or sex trafficking under federal law.

### vi.    Suggs

Suggs' allegations are similar to Robertson's. She alleges that Goldstar and Ulrich Goldstar and Ulrich obtained her labor and services by threatening to leave her "homeless and stranded in an unfamiliar city," withhold payment for legitimate services and with adverse employment action" and "financial harm." SAC ¶¶ 108 & 200(a)-(b). She further alleges that she was placed under unrelenting pressure to participate in Ulrich's "sexual escapades" and subjected to psychological abuse. *Id*. § ¶¶ 200(c)-(d). Like Robertson, she fails to allege how these acts compelled her to perform labor and services for Goldstar against her will. She too attended multiple shows even when she could have stayed home. *Id*. ¶¶ 50 (Bothell, Washington), 53 (Clackamas, Oregon), 56 (Florida) & 57 (Scottsdale). She alleges Ulrich offered her money for oral sex, but does not allege he had forced or coerced, or tried to force or coerce, her into accepting. *Id*. ¶ 53. Therefore, she does not state plausible claims of involuntary servitude or trafficking in persons under Oregon law or claims of forced labor or sex trafficking under federal law.

### vii.    Wickler

Wickler alleges Ulrich's sexual harassment of her began with the first week of her employment. SAC ¶ 59. She alleges Ulrich would "verbally abuse her" and "throw objects" if

Page 20 –  ULRICH'S MOTION TO DISMISS SECOND AMENDED COMPLAINT          268178

"she resisted his sexual advances." *Id.*  She also alleges that he "removed her chair, forcing [her] to stand." *Id.* ¶ 65.  She does not allege that his actions forced her to work for Goldstar. She also alleges that he "demanded sex from [her] as payment for alleged interest that he claimed she owed him on a loan."  However, she does not allege, what, if any, threats of serious harm he made if she did not accept. *Id.* ¶ 63.

### 2.    Plaintiffs Fail to State a Claim for Negligence

For their Claim Seven, Negligence, Plaintiffs allege that Goldstar and Ulrich negligently failed to:  train and supervise their employees, including Ulrich himself; discipline Ulrich; terminate employees who engaged in unlawful conduct; prevent or remedy alleged discrimination, harassment or retaliation; and abide by the terms of Goldstar's Employee Manual.  SAC ¶¶ 225, 231, 237, 243, 249, 255 & 261.

### a.    Plaintiffs' Negligence Claims Are Barred by the Exclusive Liability Provision of the Workers' Compensation Law

Plaintiffs' negligence claims are barred by the workers' compensation law's exclusive remedy provision.  ORS 656.018(1)(a) provides:

> The liability of every employer who satisfies the duty required by ORS 656.017(1) is exclusive and in place of all other liability arising out of injuries, diseases, symptom complexes or similar conditions arising out of and in the course of employment that are sustained by subject workers, the workers' beneficiaries and anyone otherwise entitled to recover damages from the employer on account of such conditions or claims resulting therefrom . . . except as specifically provided otherwise in this chapter.

Thus, an employer is exempt from liability for those its workers' injuries that arise out of and in the course of employment, except to the extent of the remedies available under the workers' compensation law.  Under ORS 656.018(3), that exemption "is also extended to the employer's . . . employees[.]"  This court has recognized that a claim for negligent supervision arising out of

Page 21 –  ULRICH'S MOTION TO DISMISS SECOND AMENDED COMPLAINT                    268178

race and gender discrimination in the workplace is as barred by this exclusive remedy provision.

*Pearson v. Reynolds Sch. Dist. No. 7*, 3:12-CV-01146-HU, 2014 WL 715510 (D. Or. Feb. 24,

2014).  Here, for purposes of their negligence claims, Plaintiffs each allege that Goldstar's and

Ulrich's "acts, errors, and omissions . . . involve different employment practices, facts,

circumstance, situations, event, and transactions."  SAC ¶¶ 226, 232, 238, 244, 250, 256 & 262.

Based on those allegations, their alleged injuries necessarily arose out of the course of their

employment.  Their negligence claims are therefore barred by the exclusive remedy provision of

the workers' compensation law.

**b.      Alternatively, Noonan's Negligence Claim is Time-Barred**

Even if Noonan's claim for negligence is not barred by the workers' compensation law, it

is time-barred by the statute of limitations.  The statute of limitations for negligence in Oregon is

two years.  ORS 12.110(1).[8]  Noonan alleges she was employed and then terminated in May

2011.  SAC ¶ 30.  This was therefore the latest date in which the negligence she alleges could

have occurred.  She did not file any of her against Ulrich until she and the other Plaintiffs filed

their Amended Complaint on November 15, 2013, more than two years after May 2011.

The statute of limitations for negligence under ORS 12.110(1) is subject to the discovery

rule:  it begins to run when the claimant "knew or, in the exercise of reasonable care, should have

known 'facts which would make a reasonable person aware of a substantial possibility that each

of the three elements [of legally cognizable harm] (harm, causation, and tortious conduct)

exists.'"  *Oregon Life & Health Ins. Guar. Ass'n v. Inter-Reg'l Fin. Grp., Inc.*, 156 Or. App. 485,

---

[8] ORS 12.110(1) pertinently provides, "An action for . . . for any injury to the person or rights of
another, not arising on contract, and not especially enumerated in this chapter, shall be
commenced within two years[.]"

Page 22 –  ULRICH'S MOTION TO DISMISS SECOND AMENDED COMPLAINT      268178

492, 967 P.2d 880, 883 (1998) (quoting *Gaston v. Parsons*, 318 Or. 247, 256, 864 P.2d 1319 (1994)) (alteration in original).  However, when the pleadings show that an action was not commenced within the period of limitations after the tort occurred, the claimant must "negative lack of diligence" and forth in the pleadings why he or she did not discover the tort earlier.  *See Salem Sand & Gravel Co. v. City of Salem,* 260 Or. 630, 637, 492 P.2d 271 (1971) (discussing requirement with respect to fraud).  In this case, Noonan failed to plead why she did not discover Ulrich's alleged negligence earlier.  Her negligence claim against Ulrich is therefore time-barred.

**D.    Conclusion**

For all the reasons discussed above, the court should grant this Motion and dismiss Plaintiffs claims at issue in this Motion with prejudice.

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

**JOINDER**

In addition to the above Motion, Ulrich also adopts and joins in Goldstar 's Motion to Dismiss Second Amended Complaint and its supporting Memorandum, filed concurrently with this Motion.

DATED:  June 6, 2014.

Respectfully submitted,

SMITH FREED & EBERHARD, PC

By: _____*s/ Chin See Ming*_____
  Phillip R. Bennett, OSB #841687
  E-mail: pbennett@smithfreed.com
  Chin See Ming, #944945
  E-mail: cming@smithfreed.com

Attorneys for Defendant William Ulrich

Page 24 –  ULRICH'S MOTION TO DISMISS SECOND AMENDED COMPLAINT  268178

**CERTIFICATE OF SERVICE**

I hereby certify that on June 6, 2014, I caused to be served a true and correct copy of the foregoing DEFENDANT WILLIAM ULRICH'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT AND SUPPORTING LEGAL MEMORANDUM; JOINDER IN DEFENDANT GOLDSTAR ESTATE BUYERS CORPORATION'S MOTION TO DISMISS SECOND AMENDED COMPLAINT on the following counsel of record through the Court's CM/ECF system:

William A. Barton, OSB #720209
Email:  attorneys@thebartonlawfirm.com
Brent Barton, OSB #062698
Email:  brent@thebartonlawfirm.com
THE BARTON LAW FIRM, P.C.
P.O. Box 870
Newport, OR  97365
Telephone:  541-265-5377
Facsimile:  541-265-5614
    Attorneys for Plaintiffs

Kevin T. Lafky, OSB#852633
klafky@lafky.com
LAFKY & LAFKY
429 Court Street NE
Salem, OR 97301
Telephone:  503.585.2450
Facsimile:  503.585.0205
    Excess Counsel for Defendant William
    Ulrich

Christopher E. Hawk, OSB #061635
Email:  chawk@gordonrees.com
Daniel J. Nichols, OSB # 101304
Email:  dnichols@gordonrees.com
Kjersten Turpen, OSB # 025920
Email:  kturpen@gordonrees.com
GORDON & REES LLP
121 SW Morrison Street, Suite 1575
Portland, OR 97204
Telephone:  503-222-1075
Facsimile:  503-616-3600
    Attorneys for Defendant Goldstar
    Estate Buyers Corporation

Tara R. Lawrence, OSB #990581
Email:  tara@taralawrencelaw.com
LAWRENCE LAW OFFICE PC
6915 SW Macadam Avenue, Suite 115
Portland, OR  97219
Telephone:  503-387-5571
Facsimile:  888-660-7336
    Attorney for Plaintiffs

SMITH FREED & EBERHARD, PC

By:       *s/ Chin See Ming*
    Phillip R. Bennett, OSB #841687
    E-mail:  pbennett@smithfreed.com
    Chin See Ming, OSB #944945
    E-mail:  cming@smithfreed.com

Attorneys for Defendant William Ulrich

Page i –  CERTIFICATE OF SERVICE

268178