William A. Barton, OSB #720209
Brent Barton, OSB #062698
attorneys@thebartonlawfirm.com
THE BARTON LAW FIRM, P.C.
214 SW Coast Highway
P.O. Box 870
Newport, Oregon 97365
Telephone: (541) 265-5377
Facsimile: (541) 265-5614

Tara Lawrence
tara@taralawrencelaw.com
LAWRENCE LAW OFFICE, P.C.
6915 SW Macadam Avenue, Ste. 115
Portland, Oregon 97219
Telephone: (503) 387-5571
Facsimile: (888) 660-7336

        Of Attorneys for Plaintiffs


UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


| | |
|---|---|
| KELLY KELSEY, CHRISTINE KOTROUS, LINDA NOONAN, CHRISTINE OTTENS, RITA ROBERTSON, KARYN SUGGS and SHERRY WICKLER<br><br>            Plaintiffs,<br><br>      v.<br><br>GOLDSTAR ESTATE BUYERS CORPORATION, a Minnesota corporation, and  WILLIAM ULRICH, an individual,<br><br>        Defendants. | Case No. 3:13-cv-00354-HU<br><br>PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS SECOND AMENDED COMPLAINT<br><br>Pursuant to Fed. R. Civ. 12(b)(6)<br><br>Request for Oral Argument |

## TABLE OF CONTENTS

**Page No.**

I.   INTRODUCTION ................................................................1

II.  LEGAL STANDARD ...........................................................2

III. ARGUMENT ......................................................................2

   A. Plaintiffs Have Stated a Claim for Involuntary Servitude and
      Trafficking in Persons Under Oregon Law and Forced Labor
      And Sex Trafficking Under Federal Law ...................................2

      1. Oregon Statutes ........................................................2

         a. Oregon Involuntary Servitude ......................................2
         b. Oregon Trafficking in Persons .....................................3

      2. Federal Statutes ........................................................4

         a. Forced Labor ........................................................4
         b. Sex Trafficking .....................................................7

      3. Non-Consensual Sex In Encompassed By Both the Oregon
         And Federal Forced Labor Statutes ...................................8

         a. Oregon Statutes .....................................................8
         b. Federal Forced Labor Statute ....................................12

      4. Plaintiffs Have Plausibly Alleged That Defendants Forced
         Them to Engage in Forced Labor and Sex Trafficking ..................15

         a. Plaintiff Kelsey ...................................................20
         b. Plaintiff Kotrous .................................................21
         c. Plaintiff Noonan ..................................................21
         d. Plaintiff Ottens ..................................................22
         e. Plaintiff Robertson ...............................................22
         f. Plaintiff Wickler .................................................23

   B. Plaintiffs Have Stated Claims For Negligence .........................24

      1. Plaintiffs' Negligence Claims Are Not Precluded by the
         Workers' Compensation Exclusivity Clause ..........................24

      2. All Plaintiffs Can Recover Under a Negligence Claim ................27

       a.  Four of the Six Plaintiffs Allege Physical Impact ........................27

       b.  Defendants' Employee Manual Creates a Duty That
            Allows All Plaintiffs to Allege Negligence ................................28

     3.  Noonan's Discovery of Legally Cognizable Harm is a
          Question of Fact ................................................................................29

IV.     CONCLUSION................................................................................................30

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page No.**

*Badger v. Paulson Investment Co., Inc.*,
   311 Or. 14, 803 P.2d 1178 (1991) ...............................................................8

*Burnett v. Ross Stores, Inc.*,
   857 F. Supp. 1434 (D. Or. 1994) .......................................................28, 29

*Carr v. US West Direct Co.*,
   98 Or. App. 30, 779 P.2d 154 (1989) ...........................................24, 25, 26

*Chouinard v. Health Ventures*,
   179 Or. App. 507, 39 P.3d 951 (2002) .................................................28

*David v. Signal Int'l., LLC*,
   2012 WL 10759668 (E.D. La. Jan. 4, 2012) .........................................16

*Doe 1 v. Lake Oswego School Dist.*,
   353 Or. 321, 297 P.3d 1287 (2013) .......................................................30

*Fuhrer v. Gearhart-by-the-Sea, Inc.*,
   306 Or. 434, 760 P.2d 874 (1988) .......................................................28

*Garcia v. Curtright*,
   2012 WL 1831865 (D. Or. May 17, 2012) .......................................18, 21

*Gaston v. Parsons*,
   318 Or. 247, 864 P.2d 1319 (1994) .......................................................29

*Goodman-Herron v. SAIF Corp.*,
   151 Or. App. 602, 950 P.2d 932 (1997) .................................................25

*Hanson v. Versarail Systems, Inc.*,
   175 Or. App. 92, 28 P.3d 626 (2001) .......................................................26

*Headley v. Church of Scientology Int'l.*,
   687 F.3d 1173 (9th Cir. 2012) .............................................15, 17, 18, 19

*Karsun v. Kelley*,
   258 Or. 155, 482 P.2d 533 (1971) .........................................................9

*Kaseberg v. Davis Wright Tremaine, LLP*,
   351 Or. 270, 265 P.3d 777 (2011) .......................................................30

*Kelsey v. Goldstar Estate Buyers Corp.*,
2014 U.S. Dist. LEXIS 37361 (D. Or. Mar.21, 2014) ...................................................2

*Koanui v. Cenveo Corp.*,
2004 U.S. Dist, LEXIS 24298 (D. Or. Nov. 18, 2004) .........................................28, 29

*Loosli v. City of Salem*,
215 Or. App. 502, 170 P.3d 1084 (2007) ..................................................................28

*McKean-Coffman v. Employment Div.*,
312 Or. 543, 824 P.2d 410 (1992) ...........................................................................8

*Nearing v. Weaver*,
295 Or. 702, 670 P.2d 137 (1983) .........................................................................28

*Panpat v. Owens-Brockway Glass Container, Inc.*,
334 Or. 342, 49 P.3d 773 (2002) .....................................................................24, 25

*Pearson v. Reynolds Sch. Dist. #7*,
2013 U.S. Dist. LEXIS 14792 (D. Or. 2013) ...........................................................27

*Portland State University Chapter of American Association of University*
*Professors v. Portland State University*,
352 Or. 697, 291 P3d 658 (2012) ...........................................................................8

*Redman Industries, Inc. v. Lang*,
326 Or. 32, 943 P.2d 208 (1997) ..........................................................................24

*Salem Sand & Gravel Co. v. City of Salem*,
260 Or. 630, 492 P.2d 271 (1971) .........................................................................30

*Shoemaker v. Management Recruiters Int'l.*,
125 Or. App. 568, 865 P.2d 1331 (1993) ..........................................................27, 28

*State v. Crotsley*,
308 Or. 272, 779 P.2d 600 (1989) ........................................................................11

*State v. Edwards*,
251 Or. App. 18, 281 P.3d 675 (2012) ..................................................................11

*State v. White*,
346 Or. 275, 211 P.3d 248 (2009) ........................................................................11

*United States v. Dann*,
652 F.3d 1160 (9th Cir. 2011) .....................................................5, 15, 17, 19, 21, 22

iv

*United States v. Kaufman*,
   546 F.3d 1242 (10th Cir. 2008) ............................................................9, 10, 13, 14, 15

*United States v. Kozminski*,
   487 U.S. 931, 108 S. Ct. 2751, 101 L.Ed. 2d 788 (1988) ....................5, 6, 13, 16, 17

*United States v. Marcus*,
   487 F. Supp. 2d 289 (E.D.N.Y. 2007) ......................................................9, 10, 14, 15

*United States v. Morrison*,
   529 U.S. 598, 120 S. Ct. 1740, 146 L. Ed. 658 (2000) .........................................12, 13

*United States v. Todd*,
   627 F.3d 329 (9th Cir. 2010) ..............................................................................13, 16

*United States v. Udeozor*,
   515 F.3d 260 (4th Cir. 2008) ..................................................................................9, 14

*United States v. Veerapol*,
   312 F.3d 1128 (9th Cir. 2002) ....................................................................................16

*Von Heeder v. Safeway*,
   2001 U.S. Dist. LEXIS 19681, 169LRRM 2121 (D. Or. 2001) ...........................26, 27

*Wilson v. Tobiassen*,
   97 Or. App. 527, 777 P.2d 1379 (1989) .......................................................27, 28

**United States Constitution**

Commerce Clause ......................................................................................................12
Thirteenth Amendment ........................................................................................12, 14

**Statutes**

18 United States Code Section 241 ............................................................................13
18 United States Code Section 1584 ..............................................................13, 14, 16
18 United States Code Section 1589 ........................4, 5, 6, 7, 12, 13, 15, 16, 17, 21, 22
18 United States Code Section 1591 ..........................................4, 7, 8, 12, 13, 16, 17
18 United States Code Section 1595 ............................................................................4
42 United States Code Section 13981 ........................................................................13
Oregon Revised Statute Section 161.067(1) ..............................................................11
Oregon Revised Statute Section 30.867 .......................................................................2
Oregon Revised Statute Section 163.261 ...............................................................3, 10
Oregon Revised Statute Section 163.263 .................................2, 3, 4, 9, 10, 11, 12, 21, 23
Oregon Revised Statute Section 163.264 .................................2, 3, 4, 9, 10, 11, 12
Oregon Revised Statute Section 163.266 .................................2, 9, 10, 11, 12

Oregon Revised Statute Section 167.002 ....................................................10
Oregon Revised Statute Section 656.005(7)(a) ...............................24
Oregon Revised Statute Section 656.018(1) ...................................... 24
Oregon Revised Statute Section 656.156(2) ................................26

Victims of Trafficking and Violence Protection Act of 2000 (Trafficking
Victims Protection Act), Public Law 106-386, 114 Stat. 1464
(October 28, 2000) ..............................................................4, 12, 13, 14, 15, 17

Violence Against Women Act of 1994, Public Law 103-322, 108 Stat. 1941 .................12

## Rules

Federal Rule of Civil Procedure 12 ...............................................................2, 18

## Legislative Materials

2007 Oregon Law Chapter 811 (S.B. 578) §4 ..................................10

H.R. Conf. Report No. 106-939 at 101 (2000), 2000 SL 1479163
(October 5, 2000) .................................................................18, 20, 22

Staff Measure Summary, Oregon Joint Committee on Ways and
Means, S.B. 578, June 20, 2007 .......................................................11

Staff Measure Summary, Oregon Senate Committee on
Judiciary, S.B. 578, April 9, 2007 ....................................................11

Plaintiffs Kelly Kelsey, Christine Kotrous, Linda Noonan, Christine Ottens, Rita Robertson, and Sherry Wickler ("Plaintiffs")[1] hereby respond to both motions to dismiss filed by defendants Goldstar Estate Buyers Corporation ("Goldstar") and William Ulrich (collectively, "Defendants").[2]

## I.      INTRODUCTION

Defendants' motions to dismiss present variations of two basic arguments against Plaintiffs' Second Amended Complaint:  (1) *Forced Labor and Sex Trafficking*:  Defendants argue that Plaintiffs cannot state claims under state and federal forced labor and sex trafficking laws because they could have quit working for Defendants, who did not hold Plaintiffs in captivity or physically force them to work at Goldstar; and (2) *Negligence*:  Defendants argue that the workers compensation exclusive remedy bars Plaintiffs' negligence claims, or alternatively, that four of the six Plaintiffs cannot recover for negligence because they do not allege a physical injury.

Although Plaintiffs rebut each variation in detail below, Defendants' arguments share the same basic flaws.  With respect to the forced labor and sex trafficking claims, Defendants' arguments employ a much higher standard of force or coercion than is required by the relevant statutes.  With respect to the negligence claims, the workers compensation exclusive remedy does not apply to Plaintiffs' negligence claims because the injuries do not stem from the nature of Plaintiffs' employment, meaning the injuries are "not compensable" for purposes of workers

---

[1] Plaintiff Karyn Suggs accepted Defendants' Offer of Judgment on June 20, 2014 and is no longer a party to this lawsuit.

[2] Goldstar filed a motion to dismiss (Dkt. 46) ("Goldstar's Motion to Dismiss"); Defendant William Ulrich filed his own motion to dismiss (Dkt. 48) ("Ulrich's Motion to Dismiss") and also joined Goldstar's motion.  Plaintiffs file this brief in response to both motions.

compensation. But even if they were, Defendants' Employee Manual creates duties that Defendants violated, allowing Plaintiffs to bring claims for negligent breach of those duties.[3]

## II.    LEGAL STANDARD

This Court has already articulated the applicable legal standard when considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6) in this case. *Kelsey v. Goldstar Estate Buyers Corp.*, 2014 U.S. Dist. LEXIS 37361, * 5-7 (D. Or. Mar. 21, 2014) (Dkt. 36).

## III.    ARGUMENT

**A.    Plaintiffs Have Stated a Claim for Involuntary Servitude and Trafficking in Persons Under Oregon Law and Forced Labor and Sex Trafficking Under Federal Law.**

### 1.    Oregon Statutes

Plaintiffs bring two claims under Oregon law, one for involuntary servitude arising under ORS 163.263 and ORS 163.264 (Claim One), and the other for trafficking in persons arising under ORS 163.266 (Claim Two). ORS 30.867 creates a civil remedy against Defendants for violating these statutes.[4]

#### a.    Oregon Involuntary Servitude

Under ORS 163.263, a person commits the crime of involuntary servitude in the second degree if:

> the person knowingly and without lawful authority forces or attempts to force the other person to engage in services by:

---

[3] As detailed below, even if the physical injury rule applied to this case, four of the six Plaintiffs allege physical injuries, not just the two conceded by Defendants.

[4] That statute provides: "Irrespective of any criminal prosecution or the result of a criminal prosecution, a person injured by a violation of ORS 163.263, 163.264 or 163.266 may bring a civil action for damages against a person whose actions are unlawful under ORS 163.263, 163.264 or 163.266." ORS 30.867.

2 – PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS
SECOND AMENDED COMPLAINT

> (a) Abusing or threatening to abuse the law or legal process;
>
> (b) Destroying, concealing, removing, confiscating or possessing an actual or purported passport or immigration document or another actual or purported government identification document of a person;
>
> (c) Threatening to report a person to a government agency for the purpose of arrest or deportation;
>
> (d) Threatening to collect an unlawful debt; or
>
> (e) Instilling in the other person a fear that the actor will withhold from the other person the necessities of life, including but not limited to lodging, food and clothing.

ORS 163.263.

Pursuant to ORS 163.264, a person commits the crime of involuntary servitude in

the first degree if:

> the person knowingly and without lawful authority forces or attempts to force the other person to engage in services by:
>
> (a) Causing or threatening to cause the death of or serious physical injury to a person; or
>
> (b) Physically restraining or threatening to physically restrain a person.

ORS 163.264.

For the purpose of the involuntary servitude statute, "services" is defined as "activities

performed by one person under the supervision or for the benefit of another person."

ORS 163.261.

### b.    Oregon Trafficking in Persons

The version of Oregon's trafficking statute that applies to Defendants makes a criminal

offense of trafficking in persons if the defendant knowingly:

3 – PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS
SECOND AMENDED COMPLAINT

(a) Recruits, entices, harbors, transports, provides or obtains by any means, or attempts to recruit, entice, harbor, transport, provide or obtain by any means, another person knowing that the other person will be subjected to involuntary servitude as described in [ORS 163.263 or ORS 163.264]; or

(b) Benefits financially or receives something of value from participation in a venture that involves an act prohibited by this section or [ORS 163.263 or ORS 163.264].

2007 Or. Laws Ch. 811 (S.B. 578), § 4.

As noted by Ulrich, Oregon appellate courts have not yet construed either the involuntary servitude statutes or the trafficking in persons statute.  (Ulrich's Mot. to Dismiss at 5.)

### 2.     Federal Statutes

Plaintiffs also bring two claims under the "Trafficking Victims Protection Act" ("TVPA") which is a subsection of the [Victims of Trafficking and Violence Protection Act of 2000.  Pub.L. 106–386, 114 Stat. 1464 (October 28, 2000).]  Plaintiffs' claims are for forced labor, a violation of 18 U.S.C. § 1589 (Claim Four), and for sex trafficking, a violation of 18 U.S.C. § 1591 (Claim Three).  Plaintiffs have civil claims against Goldstar and Ulrich for their violations of these sections pursuant to 18 U.S.C. § 1595.[5]

### a.     Forced Labor

The federal forced labor statute provides as follows:

(a) Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means—

    (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;

---

[5] That statute provides:  "An individual who is a victim of a violation may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees."  18 U.S.C. § 1595.

(2) by means of serious harm or threats of serious harm to that person or another person;

(3) by means of the abuse or threatened abuse of law or legal process; or

(4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint, shall be punished as provided under subsection (d).

(b) Whoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means, shall be punished as provided in subsection (d).

18 U.S.C. § 1589.  The term "abuse or threatened abuse of law or legal process" is defined as:

the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

18 U.S.C. § 1589(c)(1).  The term "serious harm" is defined as:

any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

18 U.S.C. § 1589(c)(2).

The Ninth Circuit analyzed this statute in *United States v. Dann*, 652 F.3d 1160 (9th Cir.

2011), which is probably the most important case for this Court to consider when deciding

Defendants' motions to dismiss.  The Ninth Circuit noted that "Congress passed [the TVPA] to

correct what they viewed as the Supreme Court's mistaken holding in *United States v.*

*Kozminski*, 487 U.S. 931, 108 S. Ct. 2751, 101 L. Ed. 2d 788 (1988)."  *Dann*, 652 F.3d at1169.

5 – PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS
SECOND AMENDED COMPLAINT

*Kozminski* had considered the scope of "involuntary servitude" and limited its reach to cases in which "the victim is forced to work for the defendant by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or legal process." *Kozminski*, 487 U.S. at 952, 108 S. Ct. at 2765. By contrast, Congress enacted the TVPA to criminalize conduct that falls short of threats of physical harm or force:

> Section 1589 is intended to address the increasingly subtle methods of traffickers who place their victims in modern-day slavery, such as where traffickers *threaten harm to third persons, restrain their victims without physical violence or injury, or threaten dire consequences by means other than overt violence*. Section 1589 will provide federal prosecutors with the tools to combat severe forms of worker exploitation that do not rise to the level of involuntary servitude as defined in *Kozminski*. Because provisions within section 1589 only require a showing of a threat of "serious harm," or of a scheme, plan, or pattern intended to cause a person to believe that such harm would occur, *federal prosecutors will not have to demonstrate physical harm or threats of force against victims*. The term "serious harm" as used in this Act refers to a broad array of harms, including both physical and nonphysical, and *section 1589's terms and provisions are intended to be construed with respect to the individual circumstances of victims that are relevant in determining whether a particular type or certain degree of harm or coercion is sufficient to maintain or obtain a victim's labor or services*, including the age and background of the victims.

H.R. Conf. Rep. No. 106–939 at 101 (2000), 2000 SL 1479163 (Oct. 5, 2000) (emphases added). This legislative history demonstrates the broad scope of section 1589, which Congress created to prohibit "subtle" coercion, including situations, such as Plaintiffs', that might not otherwise meet *Kozminksi*'s definition of "involuntary servitude."

In the case at bar, Defendants essentially urge this Court to apply the *Kozminski* standard to Plaintiffs' federal claims, but as the Ninth Circuit explained in *Dann,* Congress rejected that approach explicitly. This sleight of hand is perhaps the fundamental error in Defendants' motions to dismiss.

**b.    Sex Trafficking**

The federal sex trafficking statute provides, in relevant part:

(a) Whoever knowingly—

    (1) in or affecting interstate or foreign commerce . . ., recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person; or

    (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591.  The terms "abuse or threatened abuse of law or legal process,"

"coercion," and "serious harm" have the same definitions as they do in section 1589:

(e) In this section:

    (1) The term "abuse or threatened abuse of law or legal process" means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

    (2) The term "coercion" means—

        (A) threats of serious harm to or physical restraint against any person;

        (B) any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or

        (C) the abuse or threatened abuse of law or the legal process.

    ****

7 – PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS
SECOND AMENDED COMPLAINT

(4) The term "serious harm" means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm.

18 U.S.C. § 1591(e).  The term "commercial sex act" is defined as "any sex act, on account of which anything of value is given to or received by any person."  18 U.S.C. § 1591(3).

### 3.    Non-Consensual Sex Is Encompassed By Both the Oregon and Federal Forced Labor Statutes.

Each Plaintiff has alleged that Ulrich attempted to, and in some cases succeeded in, forcing or coercing them into having sex with him.  Ulrich counters this allegation by arguing that sex does not qualify as either "labor" or "services" under Oregon's involuntary servitude laws or the federal forced labor statute.  (Ulrich's Mot. to Dismiss at 9 – 14.)  Ulrich is incorrect.

### a.    Oregon statutes

As noted previously, Oregon courts have not yet construed Oregon's involuntary servitude and trafficking in persons statutes.  However, federal precedent regarding cases construing statutes that are nearly identical to Oregon's can be instructive in how an Oregon court would interpret the state laws.  *See Portland State University Chapter of American Ass'n of University Professors v. Portland State University*, 352 Or. 697, 710-11, 291 P.3d 658 (2012) (en banc) (Oregon courts may look to federal case law for contextual support when construing state laws that parallel a federal statute; *Badger v. Paulson Investment Co., Inc.,* 311 Or. 14, 21, 803 P.2d 1178 (1991) (when a state statute is based upon a similar federal statute, decisions from federal courts may provide guidance but are not binding); *McKean–Coffman v. Employment Div.,* 312 Or. 543, 550, 824 P.2d 410, (1992) (examining federal legislative history to analyze

8 – PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS
SECOND AMENDED COMPLAINT

Oregon statute that was "virtually verbatim" to federal statute); *Karsun v. Kelley,* 258 Or. 155, 161, 482 P.2d 533 (1971) (legislative history from a federal statute is helpful when Oregon statute is substantially similar).  Ulrich's argument that sex is neither "labor" nor "services" under Oregon's involuntary servitude laws withers in light of the many federal decisions that have expressly held that non-consensual sex is within the meaning of "labor or services" covered by the federal forced labor statute, discussed in detail below.  *See, e.g., United States v. Kaufman*, 546 F.3d 1242 (10th Cir. 2008), *United States v. Udeozor*, 515 F.3d 260, 266 (4th Cir. 2008) *United States v. Marcus*, 487 F. Supp. 2d 289 (E.D.N.Y. 2007), *vacated on other grounds*, 538 F.3d 97 (2d Cir. 2008), *rev'd*, 560 U.S. 258, 130 S. Ct. 2159, 176 L. Ed. 2d 1012 (2010)

Ulrich's textual arguments regarding Oregon's involuntary servitude statutes also fails. Ulrich first claims that the 2013 version of Oregon's trafficking in persons statute, ORS 163.266, "differentiates between forced service and forced sex," which he takes to mean that the involuntary servitude described in ORS 163.263 and ORS 163.264 cannot include forced sex. (Ulrich Mot. to Dismiss at 11.)  In fact, the trafficking in persons statute distinguishes between involuntary service and *prostitution*, not between involuntary servitude and compelled sexual contact:

> (1) A person commits the crime of trafficking in persons if the person knowingly recruits, entices, harbors, transports, provides or obtains by any means, or attempts to recruit, entice, harbor, transport, provide or obtain by any means, another person and:
>
> (a) The person knows that the other person will be subjected to involuntary servitude as described in ORS 163.263 or 163.264;
>
> (b) The person knows or recklessly disregards the fact that force, fraud or coercion will be used to cause the other person to engage in a *commercial sex act*; or

9 – PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS
SECOND AMENDED COMPLAINT

(c) The person knows or recklessly disregards the fact that the other person is under 15 years of age and will be used in a *commercial sex act*.

ORS 163.266 (emphasis added).  The statute defines "commercial sex act" as "sexual conduct or sexual contact, as those terms are defined in ORS 167.002,[6] performed in return for a fee or anything of value."  ORS 163.266(3).  In other words, the 2013 legislature decided to add commercial sex, *i.e.*, prostitution, to the trafficking of persons statute.  That fact leaves open the interpretation that the involuntary servitude statutes can and do encompass forced sex that is not performed for monetary or other compensation.  Indeed, the definition of "services" that applies to ORS 163.263 and ORS 163.264 is "*activities performed by one person* under the supervision of or *for the benefit of another person*."  ORS 163.261 (emphasis added).  That definition is certainly broad enough to encompass forced sexual contact that was for Ulrich's "benefit" alone, and not in exchange for any monetary or other compensation.  Indeed, as analyzed in detail below, federal courts have used similar plain meaning definitions of the terms "labor" and "services" to conclude that the federal forced labor statute applies to forced sex.  *See United States v. Kaufman*, 546 F.3d 1242, 1260-62 (10th Cir. 2008); *United States v. Marcus*, 487 F. Supp. 2d 289, 301 (E.D.N.Y. 2007), *vacated on other grounds*, 538 F.3d 97 (2d Cir. 2008), *rev'd*, 560 U.S. 258, 130 S. Ct. 2159, 176 L. Ed. 2d 1012 (2010).

Ulrich next argues that the involuntary servitude statutes could not include forced sex because then they would be redundant of Oregon's rape, sodomy, unlawful sexual penetration, and sexual abuse statutes.  (Ulrich Mot. to Dismiss at 11.)  The problem with this argument is that criminal statutes often overlap and are even sometimes redundant.  It is hardly unusual for a

---

[6] ORS 167.002 defines "sexual conduct" as "sexual intercourse or deviate sexual intercourse" (ORS 167.002(4)); "sexual contact" means "any touching of the sexual organs or other intimate parts of a person not married to the actor for the purpose of arousing or gratifying the sexual desire of either party."  ORS 167.002(5).

10 – PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS
SECOND AMENDED COMPLAINT

criminal defendant to be convicted of multiple violations arising out of the same conduct, a situation that is governed by ORS 161.067(1)[7]:

> Separate convictions are appropriate under ORS 161.067(1) if the following conditions are met: "(1) the defendant engaged in acts that constituted 'the same conduct or criminal episode,' (2) the defendant's acts violated 'two or more statutory provisions,' and (3) each statutory provision requires 'proof of an element that the others do not.'" *State v. White,* 346 Or. 275, 279, 211 P.3d 248 (2009) (quoting *State v. Crotsley,* 308 Or. 272, 278, 779 P.2d 600 (1989)). If all three conditions are met, separate convictions are appropriate even when they arise out of a single criminal episode and involve a single victim.

*State v. Edwards*, 251 Or. App. 18, 22, 281 P.3d 675, rev. denied, 352 Or. 665, 293 P.3d 226 (2012).

Finally, Ulrich argues that the legislative history of the 2007 version of the involuntary servitude and trafficking in persons statutes supports his claim that forced sex is separate from involuntary servitude. Ulrich states that the "legislature's purpose was to combat human trafficking, the victims of which the legislature recognized 'are subjected to force, fraud, or coercion, for the purpose of sexual exploitation *or* forced labor.'" (Ulrich's Mot. to Dismiss at 12 (quoting Staff Measure Summary , Oregon Joint Committee on Ways and Means, S.B. 578, June 20, 2007; Staff Measure Summary, Oregon Senate Committee on Judiciary, S.B. 578, April 9, 2007).)[8] But the legislature's language actually supports the opposite conclusion. Recall that the 2007 versions of ORS 163.263, ORS 163.264 (involuntary servitude), and ORS 163.266 (trafficking in persons) do not refer to sex, commercial sex, or sex trafficking; rather, the earlier versions of the statutes instead targeted forcing or attempting to force a person to "engage in

---

[7] That statute provides: "When the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not, there are as many separately punishable offenses as there are separate statutory violations." ORS 161.067(1).

[8] Plaintiffs note that Staff Measure Summaries should generally not, in and of themselves, be considered legislative history or otherwise afforded particular deference.

11 – PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS
SECOND AMENDED COMPLAINT

services" (ORS 163.263; ORS 163.264—involuntary servitude) or for recruiting or transporting

another person knowing that the person will be "subjected to involuntary servitude."

(ORS 163.266—trafficking in persons).  Given that the legislature intended to combat human

trafficking by passing these statutes, it follows that it intended all three statutes to cover *both*

forced labor and sexual exploitation.  In short, both the Oregon involuntary servitude and

trafficking in persons statutes govern forced sex as well as forced labor.

### b.    Federal Forced Labor Statute

Ulrich's argument that sex is not within the meaning of the federal forced labor statute[9] is

premised on *United States v. Morrison*, 529 U.S. 598, 120 S. Ct. 1740, (2000).  *Morrison* held

that 42 U.S.C. § 13981, enacted as a part of the Violence Against Women Act of 1994

("VAWA"), Pub. L. 103-322, 108 Stat. 1941, was unconstitutional because, in enacting it,

Congress exceeded its authority pursuant to the Commerce Clause of the United States

Constitution.  Ulrich attempts to bootstrap the Supreme Court's comment that "[g]ender-

motivated crimes of violence are not, in any sense of the phrase, economic activity" into a reason

why the sex that he attempted to force upon Plaintiffs is not encompassed by the federal forced

labor statute.  *Morrison*, 529 U.S. at 613, 120 S. Ct. at 1751.  (Ulrich's Mot. to Dismiss at 14.)

This argument fails because Congress relied on the Thirteenth Amendment, not the

Commerce Clause, to enact Section 1589, so *Morrison* does not apply to the federal forced labor

statute.  Congress stated that its intention in passing the TVPA was "to combat trafficking in

persons, a contemporary manifestation of slavery whose victims are predominantly women and

---

[9] Neither Goldstar nor Ulrich appears to argue that non-consensual sex is beyond the scope of the federal sex trafficking statute, 18 U.S.C. 1591.

children . . . ."  Pub. L. 106-386, § 102, 114 Stat. at 1488 (2000); *see also United States v. Kozminski*, 487 U.S. 931, 108 S. Ct. 2751, 101 L. Ed. 2d 788 (1988) (construing predecessor statutes to the TVPA, 18 U.S.C. §§ 241 and 1584, both of which concerned "involuntary servitude" and were derived from the Thirteenth Amendment).  Further, with regard to section 1591's sex trafficking prohibition, the Ninth Circuit has expressly stated that, unlike VAWA, the TVPA does not violate the Commerce Clause:

> The TVPA is unlike the Violence Against Women Act of 1994, 42 U.S.C. § 13981, which sought to protect women by making gender-motivated crimes of violence actionable and was found to be beyond the power of Congress because its subject matter was not commerce.  *United States v. Morrison,* 529 U.S. 598, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000).  The TVPA deals with commerce within the power of Congress to regulate.

*United States v. Todd*, 627 F.3d 329, 333 (9th Cir. 2010).

Second, although the Ninth Circuit has not considered the question, other circuits have expressly held that the TVPA's forced labor provision is not limited to labor or services for an economic or business purpose but can also encompass non-consensual sex.  In *United States v. Kaufman*, 546 F.3d 1242 (10th Cir. 2008), the defendants ran a residential home for the chronically mentally ill.  They compelled several of the residents living at the home both to work on the defendants' farm and to perform a variety of sex acts, many of which were videotaped. On appeal, the defendants argued that "the involuntary servitude and forced labor statutes apply only to 'labor or services' that constitute 'work in an economic sense' … and the [sexual] acts on the videotapes cannot be fairly characterized as such work."  *Kaufman*, 546 F.3d at 1260.  The Tenth Circuit disagreed.  Noting that Congress intended in section 1589 to expand *Kozminksi*'s limited definition of coercion under section 1584 (involuntary servitude), the court held "[t]here is no indication that Congress sought to limit the scope of 'labor or services' in the manner

13 – PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS
SECOND AMENDED COMPLAINT

suggested by the [defendants]." *Id.* at 1261.  Moreover, the court pointed out that "the fact that

… various authorities describe slavery in economic terms does not mean that was all there was to

the institution or that the Thirteenth Amendment and the subsequent legislation implementing it

apply only to economic relationships." *Id.* at 1262; *see also United States v. Udeozor*, 515 F.3d

260, 266 (4th Cir. 2008) ("Sexual coercion and subordination have been among the worst indicia

of involuntary servitude.") (construing section 1584).

Similarly, in *United States v. Marcus*, 487 F. Supp. 2d 289 (E.D.N.Y. 2007), *vacated on*

*other grounds*, 538 F.3d 97 (2d Cir. 2008), *rev'd*, 560 U.S. 258, 130 S. Ct. 2159, 176 L. Ed. 2d

1012 (2010), the court used the ordinary meaning of the terms "labor" and services"[10] to reject

the defendant's argument that the violence and coerced sex to which he had subjected the victim

in his "intimate personal relationship" based on bondage, dominance/discipline,

submission/sadism, and masochism ("BDSM") was not covered by the federal forced labor and

sex trafficking statutes, which he claimed intended the term "labor or services" to "mean only

those forms of work for which a person would ordinarily be compensated." *Id*. At 299.  The

court refused to accept that limitation, finding:

> While the legislative history of the TVPA undoubtedly focuses primarily on the
> need to combat international sex trafficking, the Congressional purpose and
> findings of the TVPA make clear the intended broad scope of the legislation. . . .
> Among the Congressional findings are the following:
>
> (3) Trafficking in persons is not limited to the sex industry.  This growing
> transnational crime also includes forced labor and involves significant violations
> of labor, public health, and human rights standards worldwide.

---

[10] The court noted the "ordinary meaning of the term 'labor' is an 'expenditure of physical or mental effort
especially when fatiguing, difficult, or compulsory;'" the definition of "services" is "'useful labor that does not
produce a tangible commodity.'"  *Marcus*, 487 F. Supp. 2d at 300 (quoting WEBSTER'S THIRD NEW INTERNATIONAL
DICTIONARY Unabridged (2002)).

(4) ... Traffickers lure women and girls into their networks through false promises of decent working conditions at relatively good pay as nannies, maids, dancers, factory workers, restaurant workers, sales clerks, or models.  Traffickers also buy children from poor families and sell them into prostitution or into various types of forced or bonded labor.

...

(6) Victims are often forced through physical violence to engage in sex acts or perform slavery-like labor.  Such force includes rape and other forms of sexual abuse, torture, starvation, imprisonment, threats, psychological abuse, and coercion.

*Id.* at 301 (quoting Pub. L. 106-386, § 102, 114 Stat. at 1466-67 (2000)).

It is therefore clear that "the involuntary servitude and forced labor statutes apply to coerced acts other than 'work in an economic sense'" and can, in fact, encompass non-consensual sex.  *Kaufman*, 546 F.3d at 1263.

**4.    Plaintiffs Have Plausibly Alleged That Defendants Forced Them to Engage in Forced Labor and Sex Trafficking**

As already mentioned, Oregon courts have not yet construed Oregon's involuntary servitude and trafficking in persons statutes.  However, to establish a plausible claim of forced labor based on federal precedent, Plaintiffs must plead facts that demonstrate the Defendants "intend[ed] to cause a person in [their] employ to believe that if she does not continue to work, she will suffer the type of serious harm—physical or nonphysical, including psychological, financial, reputation harm—that would compel someone in her circumstances to continue working to avoid that harm."  *Dann*, 652 F.3d at 1170 (threat to cause victim to have to return to her home country was sufficiently coercive under section 1589); *see also Headley v. Church of Scientology Int'l*, 687 F.3d 1173, 1180 (9th Cir 2012) (to establish a claim under section 1589, plaintiff must demonstrate that "serious harm [would] befall [her] 'if she did not continue to work' or a threat that 'compel[s] [her] to *remain*' with the employer) (quoting *Dann*, 652 F.3d at

15 – PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS
SECOND AMENDED COMPLAINT

1170) (emphasis in original).  Recall that the term "work" also includes being forced to

participate in sexual acts, which means that, every time Defendants used force, threats,

intimidation or other coercive techniques to either attempt to or require Plaintiffs to engage in

sexual activities, they violated the statute.

In considering Defendants' actions, the factfinder must take into consideration the unique

circumstances of the victim.  *See United States v. Veerapol*, 312 F.3d 1128, 1132 (9th Cir. 2002)

(noting that "threatening …an immigrant with deportation could constitute the threat of legal

coercion that induces involuntary servitude, even though such a threat made to an adult citizen of

normal intelligence would be too implausible to produce involuntary servitude.") (quoting

*Kozminski*, 487 U.S. at 948, 108 S. Ct. at 2751) (construing section 1584).  This sentiment was

articulated in *David v. Signal Int'l, LLC*, 2012 WL 10759668 at *20 (E.D. La. Jan. 4, 2012):

> Most human beings would likely choose to provide labor in lieu of receiving
> severe beatings or being tortured so with egregious forms of physical abuse the
> specific victim's vulnerabilities may become less important.  But with more subtle
> types of coercion, particularly psychological coercion, the vulnerabilities and
> characteristics of the specific victim become extremely important because one
> individual could be impervious to some types of coercion that cause another to
> acquiesce in providing forced labor.  This is exactly what § 1589 now recognizes.

To establish a claim for sex trafficking under section 1591, Plaintiffs need to plead that

Defendants knew that, "if things go as [they have] planned, force, fraud or coercion will be

employed to cause [their] victim[s] to engage in a commercial sex transaction."  *Todd*, 627 F.3d

at 334.  "Coercion" is defined as "threats of serious harm to or physical restraint" or "the abuse

or threatened abuse of law or the legal process."  18 U.S.C. § 1591(e)(2).  "Serious harm" means

exactly what it does under the forced labor statute, "any harm, whether physical or nonphysical,

including psychological, financial, or reputational harm, that is sufficiently serious, under all the

16 – PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS
SECOND AMENDED COMPLAINT

surrounding circumstances, to compel a reasonable person of the same background and in the

same circumstances to perform or to continue performing" commercial sex.

18 U.S.C. § 1591(e)(4); *cf.*18 U.S.C. § 1589 (c)(2) (definition of "serious harm" for forced

labor).

   Defendants essentially claim that Plaintiffs have not plausibly alleged that they were

compelled to work (which, under the statute, could also include forced sex) because they had

"innumerable opportunities to leave" (Ulrich's Mot. to Dismiss at 15; Goldstar's Mot. to Dismiss

at 14-15 (quoting *Headley*, 687 F.3d at 1180) and that the only "serious harm" they feared was

the loss of their jobs, which is not, according to Defendants, a harm that the forced labor or

involuntary servitude statutes contemplate.  (Ulrich's Mot. to Dismiss at 15-16).  Defendants are

incorrect on both counts.

   With respect to Plaintiffs' "ability to leave," Defendants would have the court believe, in

essence, that the forced labor and sex trafficking statutes do not apply except in situations where

the victim is either physically held captive by her employer or has her movements so restricted

that she is unable to physically leave or move away from her employer's vicinity.  As noted

previously, that has not been the law since "Congress passed [the TVPA] to correct what they

viewed as the Supreme Court's mistaken holding in *United States v. Kozminski*, 487 U.S. 931,

108 S. Ct. 2751, 101 L. Ed. 2d 788 (1988)."  *United States v. Dann*, 652 F.3d 1160. 1169

(9th Cir. 2011).  Although certainly the forced labor and sex trafficking statutes are designed to

curtail such egregious restrictions on liberty, the courts have recognized time and again that, in

enacting section 1589, Congress intended to broaden the scope of involuntary servitude to

account for the "increasingly subtle methods of traffickers who place their victims in modern-

17 – PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS
SECOND AMENDED COMPLAINT

day slavery, such as where traffickers threaten harm to third persons, restrain their victims without physical violence or injury, or threaten dire consequences by means other than overt violence." H.R. Conf. Rep. No. 106–939 at 101.

For example, in *Garcia v. Curtright*, 2012 WL 1831865 (D. Or. May 17, 2012), the plaintiff alleged that the defendant forced her to take the defendant's mother into the plaintiff's home and care for her by threatening the plaintiff and her family with deportation. *Garcia*, 2012 WL 1831865 at *3. The defendant filed a Rule 12(b)(6) motion against the plaintiff's forced labor claim. Judge Hogan held that "the alleged threatened deportation of plaintiff and her family would on the face of the complaint, constitute sufficiently serious threatened harm to preclude dismissal of her [section 1589 forced labor] claim at this stage of litigation." *Id.* at *4. Judge Hogan reached this conclusion notwithstanding the fact that, in her complaint, the plaintiff also "admit[ted] she lived at and later worked from, her family home and had the means to drive to Albany six days each week to care for Curtright's mother prior to having her move in with them." *Id.* In other words, even though the plaintiff, like the plaintiffs in *Headley v. Church of Scientology Int'l*, 687 F.3d 1173 (9th Cir 2012), had "innumerable opportunities to leave the defendant," *Id.* at 1180, the nature of the coercive threat—deportation—was sufficient to state a forced labor claim because the coercion was what prompted the plaintiff to provide labor or services.

By contrast, in *Headley*, the plaintiffs could not show that the Church of Scientology obtained their labor by means of coercion because "the record overwhelmingly shows that that *Headleys* joined and voluntarily worked for the Sea Org because they believed it was the right thing to do, because they enjoyed it, and because they thought that by working they were

honoring the commitment that they each made and to which they adhered." *Headley*, 687 F.3d at

1179.  The same cannot be said about how the Plaintiffs in this case perceived Defendants'

attempts to force them to provide sex.

Defendants are also incorrect in arguing that the only "serious harm" that they threatened

Plaintiffs with was the loss of their employment.  In the first instance, "serious harm" is

"physical or nonphysical, including psychological, financial, reputation harm[,] that could

compel someone in [the plaintiff's] circumstances to continue working to avoid that harm."

*Dann*, 652 F.3d at 1170.  The loss of employment, or the threat to withhold payment for wages

already earned, can, in certain circumstances, present the type of financial harm that may prove

sufficiently serious to justify application of the statute (whether it does is a question of fact).  *See*

*Dann* at 1171.  That means that Defendants' threats to withhold payment from Plaintiffs can be

"serious harm" in the context of their coercive conduct.

But Plaintiffs allege that Defendants threatened more than just their wages; Plaintiffs also

allege that Defendants restricted Plaintiffs' food and movements, psychologically intimidated

them, and—in some instances—physically assaulted them.  Plaintiff Kotrous alleges that

Defendants threatened to abuse the legal process, SAC ¶¶ 78, 156, 194, and Plaintiff Wickler

alleges that Defendants illegally attempted to collect a debt.  SAC ¶¶ 116, 186, 202.  Moreover,

the court must consider whether, "from the vantage point of [a person] in [Plaintiffs'] position,"

the types of harms that Plaintiffs allege rise to the level of serious harm.  *Id.*  So when

Defendants attempt to gloss over Plaintiffs' allegations of serious harm, for example, by

wondering why—when Ulrich refused to allow them to eat—Plaintiffs didn't simply "return

home" or "buy [their] own food," (Ulrich's Mot. to Dismiss at 17; Goldstar's Mot. to Dismiss at

19), the court must take into consideration that Plaintiffs have very little money and, when they were on Goldstar business trips, relied entirely on Defendants to provide food and lodging.

### a.    Plaintiff Kelsey

Plaintiff Kelsey has pleaded adequate facts demonstrating that Ulrich forced or attempted to force her to engage in sex or sexual conduct, which is encompassed by both Oregon's involuntary servitude and the federal forced labor statute.  The most egregious example is when Ulrich approached Kelsey for a kiss, which she resisted; Ulrich then followed her into a hotel bathroom and tried to physically force himself on her by trying to kiss and fondle her. (SAC ¶¶ 17 – 18.)  But Ulrich constantly subjected Kelsey to sexual touches and leers, and forced Kelsey to watch him have sex with other women and search the internet looking for prostitutes for Ulrich.  SAC ¶¶ 9, 15.  To acquire Kelsey's compliance with his efforts to inflict forced sex on her, Ulrich used threats of serious harm, including physical harm, withholding food, restricting when and what she could eat, forcing her to consume alcohol, and withholding payment for her services.  SAC ¶¶ 70, 192(d).

With regard to sex trafficking, Kelsey has pleaded that several times Ulrich suggested that Kelsey could receive money in exchange for having sex with him, and once expressly offered her $100,000 in exchange for having sex with him.  SAC ¶¶ 13, 14.  These attempts to coerce Kelsey into commercial sex occurred at Goldstar shows, to which Defendants transported Kelsey with the knowledge that she would be subjected to their attempts to force her to engage in commercial sex.  SAC ¶151.  Defendants used the same coercive tactics and threats of serious harm that they did with respect to the involuntary servitude and forced labor claims, including physical force and threats of financial harm.  SAC ¶ 150(a), (c)-(d).)

20 – PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS
SECOND AMENDED COMPLAINT

b.    **Plaintiff Kotrous**

Ulrich regularly sexually and physically assaulted Kotrous.  SAC ¶¶ 21, 25, 27.  He also forced her to drink alcohol, and then—knowing that drinking alcohol violated the terms of Kotrous's DUII probation—threatened to report her drinking to Kotrous's probation officer and have her arrested for parole violation if she did not obey him.  SAC ¶ 26.  That conduct alone explicitly violates  ORS 163.263(a), 163.263(c), and section 1589(a)(3).  *See, e.g., Dann*, 652 F.3d at 1172 (threats to deport immigrant, or to cause immigrant to have to leave the country, is serious harm under section 1589); *Garcia*, 2012 WL 1831865 at *4 (allegation of threatened deportation sufficient to survive motion to dismiss).

Defendants' only argument related to Kotrous's allegations is that she was not "forced" by Ulrich's sexual assault to continue working for Goldstar and that she always had the ability to leave.  (Ulrich's Mot. to Dismiss at 18; Goldstar's Mot. to Dismiss at 20.)  Defendants' arguments might have merit if compelled sex were excluded from the involuntary servitude and forced labor statutes.  As this memorandum has already discussed at length, however, those statutes encompass forced sex.  Defendants coerced Kotrous to continue to submit to Ulrich's forced sexual assault by threatening to tell the police she was violating her probation by drinking, withholding payment for her work, refusing to provide food and restricting when and what she could eat.  SAC ¶¶78, 194.

c.    **Plaintiff Noonan**

Noonan alleges that Ulrich attempted to coerce her into having sex with him by cancelling Noonan's, Ottens's, and Kotrous's dinner order and refusing to allow any of them to eat.  SAC ¶¶ 32, 85.  Fear of harm to others is "squarely within the intent of Congress, which

enacted ¶ 1589 to address 'traffickers [who] use more subtle means designed to cause their

victims to believe that serious harm will result to themselves or others if they leave.'" *Dann*,

652 F.3d at 1172 (quoting H.R. Rep. No. 106-939 at 101).

       **d.**    **Plaintiff Ottens**

      Ulrich forced Ottens to engage in sex by drugging (or causing her to be drugged), and

having sex with her while she slept.  SAC ¶ 37.  He threatened to fire her if she did not comply

with his sexual demands and he forced her to engage in sex with him and other women.

SAC ¶¶ 37, 40.  He controlled all aspects of her life when she was at Goldstar shows, including

food, television, to whom she could speak, and where she could go.  He would not allow her to

leave her hotel room and denied her meals.  SAC ¶ 39.  These allegations actually conform more

closely to Defendants' misinterpretation that the forced labor statute requires "slave-like"

conditions in order to be applied, and yet Defendants argue that the force and threats of force

they used against Ottens were not used to keep her employed at Goldstar.  (Goldstar's Mot. to

Dismiss at 21; Ulrich's Mot. to Dismiss at 19.)  Given that forced sex is squarely within both

Oregon's involuntary servitude and the federal forced labor statute, it is clear that Ottens has

plausibly alleged facts that she was compelled to provide services—forced sex—to Ulrich

through his threats of serious harm, including through sexual and physical assault, drugging her,

withholding payment for work services or firing her, and controlling her access to food.

SAC ¶¶ 91, 92, 196.

       **e.**    **Plaintiff Robertson**

      Ulrich attempted to assault Robertson in her hotel room.  SAC ¶ 44.  He repeatedly called

her in the middle of the night while at a Goldstar show, then knocked on her door and, when

Robertson still did not respond, attempted to break into her hotel room by obtaining a key from the front desk.  The only reason he did not gain access to her room was because Robertson got up and latched the security lock on the hotel door.  SAC ¶ 44.  This pattern of physical and psychological intimidation was a threat of serious harm that coerced Robertson to provide sex to Ulrich.  On multiple occasions, Ulrich compelled Robertson to watch him having sex with prostitutes by threatening to send her home from the gold show and thereby causing her financial harm.  SAC ¶ 43.

    **f.**  **Plaintiff Wickler**

   Ulrich used verbal abuse, threats of force, and threw objects at Wickler or around the room to coerce her into having sex with him.  SAC ¶ 59.  When Wickler once refused Ulrich's demand for sex, the next morning he forced her to stand throughout the entire day while at work and did not allow her to sit down.  SAC ¶ 65.  Ulrich attempted to force Wickler to have sex with him as "interest" on a loan that he had made to her, which violates ORS 163.263(d).  SAC ¶ 63.  Wickler has alleged that Defendants accomplished this coercion through the threat of serious harm, including physical force and threats of physical force, financial harm, withholding of payment for work performed, and attempts to collect an unlawful debt.  SAC ¶¶ 116, 202.

   Defendants' only argument is that Wickler has not pleaded how these actions forced her to work for Goldstar, or kept her from leaving Goldstar.  (Ulrich's Mot. to Dismiss at 21; Goldstar's Mot. to Dismiss at 22.)  Of course, because forced sex is included in the services that Oregon's involuntary servitude statutes and the federal forced labor covers, Wickler' s allegations are more than sufficient.

**B.      Plaintiffs Have Stated Claims For Negligence.**

**1.   Plaintiffs' Negligence Claims Are Not Precluded by the Workers' Compensation Exclusivity Clause.**

Workers compensation is only exclusive with respect to liability as to *compensable* injuries.  ORS 656.018(1); *Carr v. U.S. West Direct Co*., 98 Or. App. 30, 34, 779 P.2d 154 (1989).  A compensable injury is one "arising out of and in the course of employment."  *Panpat v. Owens-Brockway Glass Container, Inc*., 334 Or. 342, 349, 49 P.3d 773 (2002) (citing ORS 656.005(7)(a)).  If an injury did not occur during the "course of employment," it cannot be compensable, meaning workers compensation is not the exclusive remedy.  *Id*.  "An employer is not subject to the workers' compensation law for all injuries to an employee irrespective of the cause merely because the employee is injured while working at the place of employment.  There must be some causal link between the occurrence of an injury and a risk connected with the employment."  *Carr*, 98 Or. App. at 35.  A causal link requires more than a mere showing the injury occurred at the workplace during working hours, it also must be linked to a risk connected with the nature of the work or a risk to which the work environment exposed claimant.  *Panpat*, 334 Or. at 349 (citing *Redman Industries, Inc. v. Lang*, 326 Or. 32, 36, 943 P.2d 208(1997)).

In categorizing risks associated with the work environment, risks distinctly associated with employment are universally compensable, risks personal to the plaintiff are universally non-compensable, and neutral risks are compensable only if the conditions of employment put claimant in a position to be injured.  *Id*. at 349-50.  A neutral risk occurs when there is an unexplained accident, or where the identity and motive of the person responsible for the injury is unknown, such as where an employee is hit by a stray bullet.  *Id*. at 350.  In the case at bar, Plaintiffs' Second Amended Complaint does not allege Plaintiffs were injured by an unexplained

24 – PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS
SECOND AMENDED COMPLAINT

accident, or that the motive and identity of the wrongdoer –Ulrich – are unknown.  Thus,

Plaintiffs' Second Amended Complaint does not allege a neutral risk.  Rather, the Second

Amended Complaint alleges that Plaintiffs were variously subjected to sexual assault, battery

and harassment, which are risks that are wholly unconnected to Plaintiffs' employment.  Indeed,

it cannot be said that sexual assault, battery, and harassment are risks distinctly associated with

any legitimate employment.  In other words, Plaintiffs' Second Amended Complaint alleges

injuries that are distinctly personal and, therefore, not compensable.  Thus, Plaintiff's claims are

not precluded by the workers' compensation statute.

        Defendants' argument that Plaintiffs' claims are "barred on their face" ignores Oregon

law. (Goldstar's Mot. to Dismiss at 22.)  The Oregon Supreme Court, in *Panpat*, rejected the

contention that harm inflicted by a coworker arises out of employment *per se*.  *Panpat*, 334 Or.

at 350.  By contrast, the Court held that when the motivation for the harm is an event or

circumstance that originated separate from the workplace and the only contribution made by the

workplace is to provide the venue for the incident at issue, then it does not arise out of

employment and is not compensable.  *Id.*; *Goodman-Herron v. SAIF*, 151 Or. App. 602, 608, 950

P.2d 932 (1997).  Here, the fact that the employment placed Plaintiffs and Defendant Ulrich

together is not enough to bar Plaintiffs' negligence claims because the injuries alleged by

Plaintiffs were unconnected with the duties Plaintiffs' were hired and paid to perform.  *Id.* at

349.

        In *Carr*, the plaintiff alleged that the defendant was negligent in retaining a manager who

maintained a sexually hostile workplace. *Carr*, 98 Or. App. at 37.  The Court of Appeals held the

claim was not barred by workers compensation statutes because there was no causal link between

25 – PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS
SECOND AMENDED COMPLAINT

the sexual assault on the plaintiff and a risk connected with employment. *Id.* at 35. The determinative factor is the motivation for the assault and whether that motivation originated from the workplace—whether it was a personal risk rather than a risk "distinctly associated with the workplace." *Id.* at 35. As in *Carr*, Plaintiffs in this case have not pled that the injuries suffered at the hands of Defendant Ulrich were provoked by anything at work. Nor have Plaintiffs pled that the nature of the job created or enhanced the risk of injury or harm. Thus, Plaintiffs' claims are not barred because, as in *Carr*, there is no causal link between the injuries suffered by Plaintiffs and any risk connected with their workplace duties.

The cases cited by Defendants are inapposite. *Hanson v. Versarail Systems, Inc.* considered only the issue of whether the doctrine of respondeat superior was applicable to ORS 656.156(2). 175 Or. App. 92, 94, 28 P.3d 626 (2001). The court in *Hanson* did not engage in the compensability analysis applicable in this case. Plaintiffs do not allege a claim premised on vicarious liability. Plaintiffs allege, rather, that Defendants are liable for failing to train, control, or supervise Defendant Ulrich and that it was negligent in retaining him and maintaining a sexually hostile workplace. SAC ¶¶ 225, 231, 237, 243, 249, 255, 261. The issues presented in this case and *Hanson* are distinct, and the court's holding in that case is inapplicable here.

*Von Heeder v. Safeway* is also unhelpful to Defendants. In that case, there is no reference made to the basis for the plaintiffs' negligence claim and the plaintiffs voluntarily dismissed that claim based on *Hanson*. *Von Heeder*, 2001 U.S. Dist LEXIS 19681, at *11 (D. Or. Nov. 11, 2001). Notably, the court in *Von Heeder* held that workers compensation exclusivity was not a bar to the plaintiff's sexual harassment claims and that *Hanson* was inapplicable where the

plaintiff alleged the employer was directly liable for the harassment.  *Von Heeder*, 2001 U.S. Dist. LEXIS 19681 at *17.

Finally, *Pearson v. Reynolds Sch. Dist #7* is inapposite because, in that case, the plaintiff conceded that her physical injury claim was covered by workers compensation.  *Pearson*, 2013 U.S. Dist. LEXIS 185436, at *55 (D. Or. Nov. 18, 2013).  The court in that case was not required to apply a compensability analysis.  Here, application of the appropriate compensability analysis shows that Plaintiffs' injuries, as alleged in their Second Amended Complaint, did not arise out of the nature of their employment with Defendant.

### 2.  All Plaintiffs Can Recover Under a Negligence Claim.

#### a.  Four of the Six Plaintiffs Allege Physical Impact.

Defendant Goldstar argues that only two of the Plaintiffs, Kotrous and Ottens, satisfy the "physical impact rule" by alleging "repeated sexual assaults." (Goldstar's Mot. to Dismiss at 25, n.7.)  As a threshold matter, Goldstar is mistaken in that four of the six Plaintiffs allege physical injuries: Kelsey, Kotrous, Ottens, and Wickler.  SAC ¶¶ 225, 231, 243, 255, 261.

Among other allegations, Kelsey alleges "assault" and "unwanted touching of a sexual nature," and Wickler alleges "sexual assault" and "unwanted touching of a sexual nature."  SAC ¶¶ 225(a), 261(a).  Under Oregon law, offensive touching or touching without consent constitutes a "physical impact."  *Wilson v. Tobiassen*, 97 Or. App. 527, 532 (1989) (offensive touching constitutes physical impact); *Shoemaker v. Management Recruiters Int'l*, 125 Or. App. 568, 573 (1993) (physical impact included uninvited rubbing of shoulders, uninvited rubbing of crotch against the plaintiff's back, uninvited touching of breasts, and uninvited kissing of the plaintiff).  There is no requirement, as Defendant suggests, that the impact must "rise to the level

required by the physical impact rule." (Goldstar's Mot. to Dismiss at 25.) To the contrary,

Oregon courts have not defined the minimum amount necessary to constitute a physical impact.

*Chouinard v. Health Ventures*, 179 Or. App. 507, 514, 39 P.3d 951 (2002). There is no

requirement that unwanted sexual touching must rise to a certain level; rather the occurrence of

offensive touching adequately alleges physical impact. *Wilson*, 97 Or. App. at 532; *Shoemaker*,

125 Or. App. at 573. Thus, four Plaintiffs have adequately pled physical impact.

> ### b. Defendants' Employee Manual Creates a Duty That Allows All Plaintiffs to Allege Negligence.

Regardless of physical impact, all Plaintiffs can state claims for negligence because

Defendants breached a duty created by their Employee Manual. An employer can be liable for

negligence in failing to abide by employment laws where a plaintiff alleges a duty imposed by

statute or by contract. *Burnett v. Ross Stores, Inc.*, 857 F. Supp. 1434, 1440 (1994) (citing

*Fuhrer v. Gearhart-by-the-Sea, Inc.*, 306 Or. 434, 439, 760 P.2d 874 (1988)); *see also Loosli v.*

*City of Salem*, 215 Or. App. 502, 506, 170 P.3d 1084 (2007) (considering a legally protected

interest provided by statute); *Nearing v. Weaver*, 295 Or. 702, 707, 670 P.2d 137 (1983) (citing

cases of legally protected interests of duties imposed by ordinance and court order).

An employee handbook can create a duty on the part of the employer where it provides

policies that place the employer under an obligation to refrain from unlawful employment

practices. *Id.*; *Koanui v. Cenveo Corp.*, No. 04-6326-TC, 2004 US Dist LEXIS 24298, at *2-3

(D. Or. Nov. 18, 2004) (employee properly alleged a negligence claim against employer based

on duty provided in employee handbook). An employee handbook does not need to create a

contract of employment in order for the policies in the handbook to impose a duty on the

employer. *Id.* In *Burnett*, this Court held that a plaintiff stated a claim for negligence when she

28 – PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS
SECOND AMENDED COMPLAINT

alleged she was constructively discharged due to her disability.  The plaintiff in that case alleged a duty on the employer based on the anti-discrimination provisions of an employee handbook, even though the handbook did not constitute a binding contract of employment.  *Id.*

Similarly, all Plaintiffs in this case allege that Defendants owed Plaintiffs a duty of care as outlined in their Employee Manual, which provides that "Goldstar Estate Buyers is committed to providing a workplace free of discrimination and unlawful harassment." Employee Manual, Section 4.3.  The section also states that "Actions [constituting discrimination or harassment] will not be tolerated."  *Id.*  Further, this section places a duty on supervisors who become aware of any possible harassment to "handle the matter in a timely and confidential manner."  *Id.*  The language of Defendant's manual imposes a duty on Defendants to keep the workplace free of harassment and discrimination and to take action on any reports of possible prohibited actions. Therefore, even without the presence of a physical impact, all Plaintiffs have stated a claim for negligence by pleading that Defendants' conduct infringed on a legally protected interest.  *See Burnett*, 857 F. Supp. at 1440; *Koanui*, 2004 US Dist LEXIS 24298, at *2-3.

### 3.  Noonan's Discovery of Legally Cognizable Harm is a Question of Fact

Defendant Ulrich (but not Goldstar) argues that Plaintiff Noonan's negligence claim is time-barred, but the discovery rule undermines this argument at this stage of litigation.  A legally cognizable harm is discovered when a plaintiff knows or should have known of three elements: (1) harm, (2) causation, and (3) tortious conduct.  *Gaston v. Parsons*, 318 Or. 247, 255, 864 P.2d 1319 (1994).  Whether a plaintiff knew or should have known of the harm and tortious nature of the conduct is a question of fact determined by an objective standard—whether a reasonable person in the same or similar situation would be aware the elements of a claim exist.  *Gaston*,

29 – PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS
SECOND AMENDED COMPLAINT

318 Or. at 256; *Doe 1 v. Lake Oswego School District*, 353 Or. 321, 332-333, 297 P.3d 1287

(2013) (citing *Kaseberg v. Davis Wright Tremaine*, LLP, 351 Or. 270, 278, 265 P.3d 777

(2011)).  Defendant Ulrich ignores these factors by assuming that Plaintiff Noonan must have

known at termination that she suffered a legally cognizable harm.  In the course of this litigation,

Defendant will have the opportunity to challenge the timing related to Plaintiff Noonan's

discovery that she suffered a legally cognizable harm, and to argue about the reasonableness of

that timing; but these present questions of fact.  As such, it is premature at this stage to dismiss

Plaintiff Noonan's claim on the pleadings.

Defendant Ulrich's contention that Plaintiff Noonan must plead why she did not discover

Defendants' negligence earlier is unfounded.  The case cited by Defendant, *Salem Sand &*

*Gravel Co. v. City of Salem*, 260 Or. 630, 637, 492 P.2d 271 (1971), is inapposite.  That case is

one in a line of cases specifically dealing with the discovery rule as applied to fraud and deceit

claims, which require elevated pleading standards under Oregon law.  This case does not present

such a claim, and Plaintiff Noonan must be given the opportunity to develop a record as to the

reasonableness of the timing involved here.[11]

**IV.**

**CONCLUSION**

For the reasons stated above, Defendants' Motions to Dismiss Plaintiffs' Second

Amended Complaint should be denied.

---

[11] Should this Court disagree, Plaintiff Noonan requests leave to replead and amend the complaint as to her allegations on this limited issue.

30 – PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS
SECOND AMENDED COMPLAINT

DATED this 27th day of June, 2014.


                                    THE BARTON LAW FIRM, P.C.


                                    /s/ William A. Barton_____
                                    William A. Barton, OSB #720209
                                    Brent Barton, OSB #062698
                                    attorneys@thebartonlawfirm.com

                                    Tara Lawrence, OSB #990581
                                    tara@taralawrencelaw.com

                                    Attorneys for Plaintiffs

31 – PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS
SECOND AMENDED COMPLAINT