Philip R. Bennett, OSB #841687
pbennett@smithfreed.com
Chin See Ming, OSB #944945
cming@smithfreed.com
SMITH FREED & EBERHARD, P.C.
111 SW 5th Avenue, Suite 4300
Portland, OR  97204
Telephone:  (503) 227-2424
Facsimile:  (503) 227-2535
    Attorneys for Defendant
    William Ulrich

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **KELLY KELSEY, CHRISTINE KOTROUS, LINDA NOONAN, CHRISTINE OTTENS, RITA ROBERTSON, KARYN SUGGS and SHERRY WICKLER**, <br><br>                Plaintiffs, <br><br>   v. <br><br>**GOLDSTAR ESTATE BUYERS CORPORATION, a Minnesota corporation, and WILLIAM ULRICH, an individual**, <br><br>                Defendants. | Case No. 3:13-cv-00354-HU <br><br> Defendant William Ulrich's **REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** |

Page 1 –    ULRICH'S REPLY IN SUPPORT OF MOTION TO
            DISMISS SECOND AMENDED COMPLAINT                                            268I78

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

## I. INTRODUCTION

Defendant William Ulrich ("Ulrich") respectfully submits this Reply in support of his Motion to Dismiss Plaintiffs' Second Amended Complaint.[1] Plaintiffs do not dispute that if the term "services," for purposes of the Oregon involuntary servitude statutes, is construed to include sex within its meaning, rape and other nonconsensual sex acts would violate those statutes. There is nothing to suggest that the Oregon legislature intended the involuntary servitude statutes to have such a broad sweep. As for the federal forced labor statute, none of the cases on which Plaintiffs rely address the constitutional questions that would be raised if the statute is interpreted to prohibit nonconsensual sex. Additionally, Plaintiffs' claims that Ulrich compelled them to work, or to engage in commercial sex against their will, defy common sense. Finally, their argument that their negligence claims fall outside the exclusivity provisions of the workers' compensation law is based on case law that has been rejected by the Oregon Supreme Court.

## II. DISCUSSION

A. **Sex is Not "Labor" or "Service" for Purposes of the Oregon Involuntary Servitude Laws and the Federal Forced Labor Statute**

   1. **The Oregon Legislature Did Not Intend to Include Nonconsensual Sex within the Scope of the Involuntary Servitude Laws**

Plaintiffs do not dispute that if the term "services" is construed to include sex within its meaning, for purposes of the Oregon involuntary servitude statutes, ORS 163.263-ORS 163.264,

---

[1] As noted by Plaintiffs Kelly Kelsey, Christine Kotrous, Linda Noonan, Christine Ottens, Rita Robertson, and Sherry Wickler ("Plaintiffs") in their Response to Defendants' Motions to Dismiss Second Amended Complaint, Plaintiff Karyn Suggs has accepted an Offer of Judgment from Defendant Goldstar Estate Buyers Corporation ("Goldstar") and Ulrich, and is no longer a

(continued)

Page 2 –   ULRICH'S REPLY IN SUPPORT OF MOTION TO
           DISMISS SECOND AMENDED COMPLAINT                                     268I78

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon 97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

rape, and other nonconsensual sex crimes such as sodomy, unlawful sexual penetration, and sexual abuse, would all automatically qualify as Oregon involuntary servitudes. There is nothing to suggest that the Oregon legislature intended those statutes to have such a sweeping effect when it enacted them in 2007.

Plaintiffs contend that the legislature did have that intent because federal case law provides that sex is within the meaning of "labor or services" covered by the parallel federal forced labor statute. Plaintiffs cite *United States v. Kaufman*, 546 F.3d 1242 (10th Cir. 2008), *United States v. Udeozor*, 515 F.3d 260, 266 (4th Cir. 2008), and *United States v. Marcus*, 487 F. Supp. 2d 289 (E.D.N.Y. 2007), *vacated on other grounds*, 538 F.3d 97 (2d Cir. 2008), *rev'd*, 560 U.S. 258 (2010). All of these opinions, however, postdate the enactment of the Oregon statutes and could not have informed the Oregon legislature's intent in 2007. *See* ORS 174.020(1)(a) ("In the construction of a statute, a court shall pursue the intention of the legislature if possible."). Secondly, the victims in all of these cases were forced not just to engage in sexual activities but to work as well. In *Kaufman*, the victims were residents of a group home for the mentally ill who were forced to work on the defendants' farm. 546 F.3d at 1246. In *Udeozor*, which was not a forced labor case at all but one that involved the federal involuntary servitude statute, the victim was a young foreign girl who the defendants brought into the country using another person's passport and who they forced to work as a childcare provider and cook, and in a medical office, all without compensation. 515 F.3d at 263. In *Marcus,* the defendant forced the victim to create and maintain a commercial bondage, dominance/discipline, submission/sadism, and masochism website that generated proceeds for the defendant. 487 F. Supp. 2d at 296. Even

---

party to this case. Plaintiffs' Response 1 n.1.

Page 3 –   ULRICH'S REPLY IN SUPPORT OF MOTION TO
           DISMISS SECOND AMENDED COMPLAINT                                                  268I78

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

if those cases were somehow available to the 2007 Legislative Assembly, it is by no means clear that they would have led the Assembly to believe that the involuntary servitude statutes capture singular acts of nonconsensual sex without anything more.

Plaintiffs argue that when the 2013 Legislature Assembly decided to add commercial sex to the trafficking of persons statute, which originally prohibited only the trafficking of victims of involuntary servitude, it left "open the interpretation that the involuntary servitude statutes can and do encompass forced sex that is not performed for monetary or other compensation." Plaintiffs' Response 10. This argument proves too much. If the term "services," for purposes of the involuntary servitude statutes, includes sex *not* performed for money, it would also surely include sex that *is* performed for money, so that the involuntary servitude portion of the trafficking in persons statute would also include within its scope commercial sex. If so, the 2013 Legislature Assembly performed a redundant act when it amended the trafficking in persons statute in 2013 to include within its prohibition commercial sex. In other words, the sex trafficking part of the statute would have to be read to prohibit the exact same conduct as the earlier enacted trafficking for involuntary servitude part of the statute. Such a reading would violate ORS 174.010, which requires courts to construe Oregon statutes to "give effect" to all of its "provisions or particulars."

Plaintiffs argue that it is not improper to read the state's involuntary servitude statutes so that they are redundant of the statutes against rape, sodomy, unlawful sexual penetration, and sexual abuse, because "criminal statutes often overlap and are even sometimes redundant" and because it is "hardly unusual for a criminal defendant to be convicted of multiple violations arising out of the same conduct." Plaintiffs' Response 10-11. This argument begs the question whether the

Page 4 –    ULRICH'S REPLY IN SUPPORT OF MOTION TO
            DISMISS SECOND AMENDED COMPLAINT                          268I78

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon 97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

legislature intended the involuntary servitude statutes to have such a broad effect in the first instance, so that the statutes capture every nonconsensual sex act within its ambit.  Ulrich respectfully suggests that the legislature did not have such an intent.  As discussed, if it did, the sex trafficking part of the trafficking in persons statute would cover the same ground as the earlier enacted trafficking for involuntary servitude part of the statute, in violation of ORS 174.010.

> **2.    None of the Cases Discussed by Plaintiffs Address the Constitutional Problems that Would be Raised if the Terms "Labor or Services" are Construed to Include Sexual Activities for Purposes of the Federal Forced Labor Statute**

Plaintiffs argue that there is no serious constitutional problem raised by construing the phrase "labor or services" to include sexual activities for purposes of the federal forced labor statute.  Plaintiffs suggest the Thirteenth Amendment provides the requisite authority for such a construction.[2]  Plaintiffs cite no case law that supports this suggestion.  Neither the *Kaufman case* nor the *Marcus* case discussed by Plaintiffs addressed the question of Congressional authority to enact a statute that would make rape, and other non-consensual sexual activities, into federal crimes, and to open up federal courts to civil actions to remedy those crimes.  To be sure, the U.S. Supreme Court has held that the enabling clause of the Thirteen Amendment "clothed 'Congress with power to pass all laws necessary and proper for abolishing all badges and incidents of slavery in the United States'" and that this power extends to private acts of racial discrimination.  *Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 439 (1968) (quoting *Civil Rights*

---

[2] The Thirteenth Amendment consists of two parts.  Section 1 provides:  "Neither slavery nor involuntary servitude, except as a punishment for crime whereby the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction."  Section
(continued)

Page 5 –   ULRICH'S REPLY IN SUPPORT OF MOTION TO
         DISMISS SECOND AMENDED COMPLAINT                                   268I78

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

*Cases*, 109 U.S. 3, 20 (1883)). Congress thus has the power, under that Amendment, to enact 42 U.S.C. § 1982 in order to end "all racial discrimination, private as well as public, in the sale or rental of property."[3] *Id..* at 413. Ulrich is unaware of any case, and Plaintiffs have pointed to none, that has held that Congress has the power to enact, under the Thirteenth Amendment, criminal laws against sexual offenses and to provide for private civil remedies in federal court for such offenses. Nonconsensual sex crimes are not inherently racial, and do not qualify as "badges or incidents" of slavery. The Thirteenth Amendment does not help Plaintiffs.

**B.       Plaintiffs Have Failed to Plausibly Plead That They Were Compelled to Perform Labor or Services or to Engage in Commercial Sex**

Plaintiffs rely on federal case law to argue that they have plausibly alleged that Defendants forced them to engage in forced labor and sex trafficking for purposes of both the state and federal statutes at issue. There is no question that, in order to establish a federal forced labor claim, Plaintiffs must plausibly allege that Defendants intended to cause each Plaintiff to "believe that if she does not continue to work, she will suffer the type of serious harm—physical or nonphysical, including psychological, financial, reputation harm—that would compel someone in her circumstances to continue working to avoid that harm." *United States v. Dann*, 652 F.3d 1160, 1170 (9th Cir. 2011). There is also no question that the same requirement applies for Plaintiffs' federal sex trafficking claims, due to the similarity in the statutory definitions for "serious harm" in the two sets of statutes. *Compare* 18 U.S.C. § 1591(e)(4) *with* 18 U.S.C. § 1591(c)(2).

---

2 provides: "Congress shall have power to enforce this article by appropriate legislation."
[3] 42 U.S.C. § 1982 provides: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell,
(continued)

Page 6 –    ULRICH'S REPLY IN SUPPORT OF MOTION TO
            DISMISS SECOND AMENDED COMPLAINT                                268I78

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

Ulrich respectfully submits that Plaintiffs simply have not set forth any well-plead, non-conclusory, facts that plausibly demonstrate that they were threatened with harm serious enough to compel them to work for Goldstar and Ulrich, regardless of whether that work includes sex or not, or whether that sex is commercial or otherwise. Goldstar's Reply to Plaintiffs' Response discusses each Plaintiffs' allegations in detail on this issue, and Ulrich incorporates that discussion by reference here. Ulrich adds only that that the Supreme Court has instructed that "determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). It is clear from the Second Amended Complaint that Plaintiffs all travelled from their homes to work at shows that were located all over the country. Second Amended Complaint ("SAC") ¶¶ 10, 13, 16, 21, 23, 24, 25, 27, 28, 31, 33, 40, 42, 43, 44. 50, 53, 56, & 57. Nothing in Plaintiffs' pleadings explain what harm they were threatened with that were serious enough to compel them to get into a vehicle, over and over again, to travel to each of these different shows. It defies common sense to conclude that they were threatened at all except by the fear of losing their jobs. Such a threat cannot, as a legal matter, be serious enough to satisfy the requirements of the statutes at issue. Otherwise, virtually every single employer in this country would be in violation of the law against forced labor.

C.    **Plaintiffs Fail to State a Claim for Negligence**

1.    **Plaintiffs' Alleged Injuries Arose Out of and In the Couse of Their Employment and Are Therefore Barred by the Exclusive Liability Provisions of the Workers' Compensation Law**

Plaintiffs' argue that their negligence claims fall outside the scope of the workers'

---

hold, and convey real and personal property."

Page 7 –    ULRICH'S REPLY IN SUPPORT OF MOTION TO
            DISMISS SECOND AMENDED COMPLAINT                                          268178

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon 97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

compensation law's exclusive remedy provision, which reads:

> The liability of every employer who satisfies the duty required by ORS 656.017(1) is exclusive and in place of all other liability arising out of injuries, diseases, symptom complexes or similar conditions arising out of and in the course of employment that are sustained by subject workers, the workers' beneficiaries and anyone otherwise entitled to recover damages from the employer on account of such conditions or claims resulting therefrom . . . except as specifically provided otherwise in this chapter.

ORS 656.0108(1)(a). More specifically, Plaintiffs argue that their claimed injuries from Ulrich's alleged "sexual assault, battery and harassment" occurred outside of their "course of employment" with Goldstar and are therefore not subject to the exclusive remedy provision. Plaintiffs cite to *Carr v. US West Direct Co.*, 98 Or. App. 30, 35, 779 P.2d 154 (1989), a case in which the Oregon Court of Appeals held that, for purposes of the exclusive remedy provision, a claimant's injuries did not arise out of the course of her employment, even when those injuries were the result of a sexual assault by her supervisor while she was performing her job. Plaintiffs' reliance *Carr* is misplaced and their arguments are without merit. As will be discussed in greater detail below, the Oregon Supreme Court has rejected the principles of law on which the Court of Appeals had relied in *Carr* for its decision.

To recapitulate, an employer is exempt from liability for those of its workers' injuries that arise "out of and in the course of employment" except to the extent that remedies are available under the workers' compensation law.[4] ORS 656.018(1)(a). That exemption extends

---

[4] Contrary to Plaintiffs' suggestion, the exemption is not limited to liability for a "compensable injury" only. An injury that is compensable under the workers' compensation law and an injury for which an employer is exempted from liability under that law are both limited to injuries "arising out of and in the course of employment." *Compare* ORS 656.005(7)(a) (defining "compensable injury") with ORS 656.018(1)(a) (the exclusive remedy provision). However, a compensable injury is subject to other limitations as well, for instance, that it was "the major
(continued)

Page 8 –   ULRICH'S REPLY IN SUPPORT OF MOTION TO
           DISMISS SECOND AMENDED COMPLAINT                                    268I78

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

to the employer's employees. ORS 656.018(3). The Oregon Supreme Court has held that "the 'arise out of' prong" requires that a "causal link exist between the worker's injury and his or her employment." *E.g., Fred Meyer, Inc. v. Hayes,* 325 Or. 592, 596, 943 P.2d 197 (1997). The "requirement that the injury occur 'in the course of' the employment concerns the time, place, and circumstances of the injury." *Id.* The two prongs are "two parts of a single 'work-connection' inquiry" and both "must be satisfied to some degree; neither is dispositive." *Id.* This "work-connection" test "may be satisfied if the factors supporting one prong of the statutory test are minimal while the factors supporting the other prong are many." *Id.*

Here, Plaintiffs do not contend that their injuries did not arise "in the course" of their employment. Rather, they contend that their injuries did not "arise out of" their employment. Plaintiffs' Response 24-26. The Oregon Supreme Court has described the "arise out of" prong as follows:

> the inquiry into whether an injury "arises out of employment" tests the causal connection between the injury and the employment. A causal connection requires more than a mere showing that the injury occurred at the workplace and during working hours. A causal connection must be linked to a risk connected with the nature of the work or a risk to which the work environment exposed claimant.

*Redman Industries, Inc. v. Lang*, 326 Or. 32, 36, 943 P.2d 208 (1997). The Oregon Supreme Court has consistently held in assessing such risks that, "[a]l risks causing injury to a claimant can be brought within three categories: risks distinctly associated with the employment, risks personal to the claimant, and "neutral" risks—*i.e.*, risks having no particular employment or

---

contributing cause of the consequential condition." ORS 656.005(7)(a)(A). Under ORS 656.018(7), the exclusive remedy provisions of the workers' compensation law apply to all injuries "whether or not they are determined to be compensable," so long as the injuries are ones "arising out of and in the course of employment."

Page 9 –   ULRICH'S REPLY IN SUPPORT OF MOTION TO
            DISMISS SECOND AMENDED COMPLAINT                                        268I78

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon 97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

personal character." *Phil A. Livesley Co. v. Russ,* 296 Or. 25, 29-30, 672 P.2d 337 (1983) (quoting Arthur Larson, 1 *Workmen's Compensation Law* § 7.00, 3-11 (1978)); *see also Panpat v. Owens–Brockway Glass Container,* 334 Or. 342, 349-50, 49 P.3d 773 (2002) (applying that formulation); *Redman Industries, Inc.,* 326 Or. at 36 (same). Risks that fall in the first category are deemed to be connected to the nature of the work or the work environment and "arise out of" employment, while risks that fall in second category are not. *See, e.g., Phil A. Livesley Co.,* 296 Or. at 30 (supporting proposition). As for the third category, "[t]he view that the injury should be deemed to arise out of employment if the conditions of employment put claimant in a position to be injured by the neutral risk is gaining increased acceptance." *Id.*

Here, Plaintiffs take the position that they do not allege a neutral risk, the third category.[5] Plaintiffs' Response 24-25. Ulrich agrees. The question, therefore, is whether the risk of Plaintiffs' alleged sexual assault, battery and harassment by Ulrich was "distinctly associated" with their employment, the first category, or whether the risk of those injuries was "personal" to them, the second category. In *Sisco v. Quicker Recovery*, 218 Or. App. 376, 390-91, 180 P.3d 46 (2008), the Oregon Court of Appeals summarized the Oregon Supreme Court's precedents on the question as follows:

> In sum, both *Redman Industries, Inc.* and *Panpat* endorse the general principle that, where the nature of the work necessarily exposes the employee to proximate interaction with third persons in the course of performing the work, the risk of injury-producing physical contact with such persons is sufficiently related to employment to satisfy the "arising out of" element. That is, in general, the risk of injury from such interaction "results from the nature of the claimant's work or from the work environment." *Redman Industries, Inc.,* 326 Or. at 39, 943 P.2d

---

[5] Examples of neutral risks include "an employee, who while working, is hit by a stray bullet, bitten by a mad dog, struck by lightning, or injured by debris from a distant explosion." *Phil A. Livesley Co.,* 296 Or. at 30 n.6.

Page 10 –   ULRICH'S REPLY IN SUPPORT OF MOTION TO
            DISMISS SECOND AMENDED COMPLAINT                                        268I78

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

208.

>The sole qualification to that general principle pertains to the *assailant's* motivation: If "the *motivation* for the assault * * * 'originated entirely separate from the workplace,'" then the risk of injury was "personal," not "work-related," and the injury did not "arise out of" the employment. *Panpat,* 334 Or. at 351, 49 P.3d 773 (quoting *Redman Industries, Inc.,* 326 Or. at 40, 943 P.2d 208) (emphasis in *Panpat*). The injured claimant's subjective state of mind, including with respect to engaging in conduct that precipitated the "assault"/injurious conduct is immaterial to the "arising out of" inquiry. *See, e.g., Redman Industries, Inc.,* 326 Or. at 41 n.4, 943 P.2d 208 (rejecting any consideration of the "reasonableness" of the claimant's use of racially derogatory language as "irrelevant" to the determination of compensability).

Here, Plaintiffs allege in their Second Amended Complaint that, "[a]t all material times, Defendant Ulrich acted within the course and scope of his employment and/or his actual and/or apparent agency of Defendant Goldstar." SAC ¶ 2. They also aver that Ulrich's alleged negligent "acts, errors, and omissions . . . involve different employment practices, facts, circumstance, situations, events, and transactions." *Id.* ¶¶ 226, 232, 238, 244, 250, 256 & 262. By virtue of those allegations, which operate as admissions against Plaintiffs, this court cannot conclude that Ulrich's motivation for his alleged sexual assaults, batteries and harassment of Plaintiffs originated *entirely* separate from the workplace such that their alleged injuries were personal and not work-related. Accordingly, Plaintiffs' injuries arose out of their employment so that their negligence claims are barred by the exclusive liability provisions of the workers' compensation law.

Plaintiffs' reliance on *Carr v. US West Direct Co.* does not help them. In *Carr,* an employee was sexually harassed, assaulted and eventually raped by her supervisor while they made outside sales calls. 98 Or. App. at 32. Subsequently, the supervisor continued to sexually harass her in the office. *Id.* The Oregon Court of Appeals held that the employer was not

Page 11 –  ULRICH'S REPLY IN SUPPORT OF MOTION TO
            DISMISS SECOND AMENDED COMPLAINT                    268I78

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

exempt from liability for the employee's injuries under the workers' compensation law because there was "no evidence that the assaults were provoked by anything related to the work" and because there was "no evidence that the nature of the job or the job environment created or enhanced the risk of assault." *Id.* at 35. Following *Carr,* Plaintiffs argue here that they "have not pled that the injuries suffered at the hands of Defendant Ulrich were provoked by anything at work" or that "the nature of the job created or enhanced the risk of injury or harm." Plaintiffs' Response 26. However, the Oregon Court of Appeals has since recognized in *Goodman-Herron v. SAIF Corp.*, 151 Or. App. 602, 950 P.2d 932 (1997), that *Carr* is no longer good law.

The facts in *Goodman-Herron* are similar to those in *Carr*. The *Goodman-Herron* claimant was raped by her supervisor in her hotel room while they were both on a business trip. 151 Or. App. at 604. The supervisor continued to sexually harass her after their return from the trip. *Id.* The Workers' Compensation Board ("Board") followed *Carr* to conclude that her injuries did not "arise out of her employment." *Id.* at 605. On review, the Oregon Court of Appeals recognized that the Oregon Supreme Court had expressly "rejected the approach that [the Court of Appeals] had followed in *Carr*," and had rejected the Court of Appeals' "created or enhanced" test as well. *Id.* at 606-07. As in *Sisco,* the *Goodman-Herron* court further recognized that, under the proper test announced in *Redman*, an injury is deemed to "arise out of" the claimant's employment if the job places the claimant in proximity to the assailant, unless the assailant's motivation for the assault originated entirely separate from the workplace. 151 Or. App. at 607-08. The *Goodman-Herron* court thus reversed the Board's order and remanded the case for reconsideration under the proper test. *Id.* at 608. Plaintiffs' reliance on *Carr* is therefore misplaced. For the reasons already discussed above, under the applicable law and

Page 12 –   ULRICH'S REPLY IN SUPPORT OF MOTION TO
             DISMISS SECOND AMENDED COMPLAINT                                              268I78

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon 97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

based on Plaintiffs' pleadings, it is impossible to conclude that Ulrich's alleged motivation originated entirely separate from the workplace. Plaintiffs' negligence claims are consequently barred by the exclusive liability provisions of the workers' compensation law.

### 2. Alternatively, Noonan's Negligence Claim is Time-Barred

Plaintiff Linda Noonan ("Noonan") does not dispute that, on the face of her pleadings, she failed to file her negligence claim within two years after the date of her termination, which is the latest date on which Ulrich's alleged negligence could have occurred. Instead, she argues that it is an open question when she reasonably should have discovered she had suffered a legally cognizable harm in order to start the period of limitations running. Plaintiffs' Response 29-30. However, under *Salem Sand & Gravel Co. v. City of Salem,* 260 Or. 630, 637, 492 P.2d 271 (1971), when the pleadings show that an action was not commenced within the period of limitations after the tort occurred, the claimant is required to "negative lack of diligence" and forth in the pleadings why he or she did not discover the tort earlier. Noonan argues that that requirement applies to fraud claims only, the tort that was at issue in *Salem Sand & Gravel Co.*, on the ground that fraud and deceit claims are subject to elevated pleading standards under Oregon law. Respectfully, Noonan is mistaken. Claims for fraud and deceit are subject to elevated pleading standards under Rule 9(b) of the Federal Rules of Civil Procedure,[6] but no such parallel requirement exists under Oregon law. There is nothing in *Salem Sand & Gravel Co.* that suggests that its requirement regarding the discovery rule is limited to fraud claims only and not to other causes of action that are subject to the discovery rule.

---

[6] Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of
(continued)

Page 13 –   ULRICH'S REPLY IN SUPPORT OF MOTION TO
            DISMISS SECOND AMENDED COMPLAINT                                      268178

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon 97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

### III.   CONCLUSION

For all the reasons discussed above in Ulrich's opening Memorandum, the court should grant this Motion and dismiss Plaintiffs' claims at issue in this Motion with prejudice.

DATED:  July 11, 2014.

>Respectfully submitted,
>
>SMITH FREED & EBERHARD, PC
>
>By:   *s/ Chin See Ming*
>   Phillip R. Bennett, OSB #841687
>   E-mail: pbennett@smithfreed.com
>   Chin See Ming, #944945
>   E-mail: cming@smithfreed.com
>
>Attorneys for Defendant William Ulrich

---

a person's mind may be alleged generally."

Page 14 –   ULRICH'S REPLY IN SUPPORT OF MOTION TO
         DISMISS SECOND AMENDED COMPLAINT                                          268I78

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon  97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535

# CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2014, I caused to be served a true and correct copy of the foregoing DEFENDANT WILLIAM ULRICH'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT on the following counsel of record through the Court's CM/ECF system:

William A. Barton, OSB #720209
Email: attorneys@thebartonlawfirm.com
Brent Barton, OSB #062698
Email: brent@thebartonlawfirm.com
THE BARTON LAW FIRM, P.C.
P.O. Box 870
Newport, OR 97365
Telephone: 541-265-5377
Facsimile: 541-265-5614
    Attorneys for Plaintiffs

Kevin T. Lafky, OSB#852633
klafky@lafky.com
LAFKY & LAFKY
429 Court Street NE
Salem, OR 97301
Telephone: 503.585.2450
Facsimile: 503.585.0205
    Excess Counsel for Defendant William Ulrich

Christopher E. Hawk, OSB #061635
Email: chawk@gordonrees.com
Daniel J. Nichols, OSB # 101304
Email: dnichols@gordonrees.com
Kjersten Turpen, OSB # 025920
Email: kturpen@gordonrees.com
GORDON & REES LLP
121 SW Morrison Street, Suite 1575
Portland, OR 97204
Telephone: 503-222-1075
Facsimile: 503-616-3600
    Attorneys for Defendant Goldstar Estate Buyers Corporation

Tara R. Lawrence, OSB #990581
Email: tara@taralawrencelaw.com
LAWRENCE LAW OFFICE PC
6915 SW Macadam Avenue, Suite 115
Portland, OR 97219
Telephone: 503-387-5571
Facsimile: 888-660-7336
    Attorney for Plaintiffs

SMITH FREED & EBERHARD, PC

By:     s/ Chin See Ming
    Phillip R. Bennett, OSB #841687
    E-mail: pbennett@smithfreed.com
    Chin See Ming, OSB #944945
    E-mail: cming@smithfreed.com

Attorneys for Defendant William Ulrich

Page i –  CERTIFICATE OF SERVICE                                                                                                    268I78

SMITH FREED & EBERHARD P.C.
111 S.W. Fifth Avenue, Suite 4300
Portland, Oregon 97204
Telephone: (503) 227-2424
Facsimile: (503) 227-2535